GERALD L. BURNETT                          NUMBER: 146,202

VERSUS                                     26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED,
MICHAEL L. MARKUSEWSKI, and
BRIAN J. BENDA                             BOSSIER PARISH, LOUISIANA

**NOTICE TO ADVERSE PARTIES
AND STATE COURT OF REMOVAL**

ARCCA INCORPORATED, MICHAEL L. MARKUSEWSKI and BRIAN J. BENDA,

defendants herein, give notice that this action has been removed to the United States District Court

for the Western District of Louisiana, Shreveport Division, pursuant to defendant's Notice of

Removal, a copy of which is attached hereto for filing in this Court and which has been served by

mail on plaintiffs.

> PETTIETTE, ARMAND, DUNKELMAN,
> WOODLEY, BYRD /&/ CROMWELL L.L.P.
>
> BY: _____
>      Donald Armand, Jr. #4444
>      Trey W. Carter # 35075
>
> 400 Texas Street, Suite 400
> Post Office Box 1786
> Shreveport, Louisiana 71166-1786
> (318) 221-1800; (318) 226-0390
> ATTORNEYS FOR ARCCA INCORPORATED,
> MICHAEL L. MARKUSEWSKI and BRIAN J. BENDA

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Notice of Adverse Parties and

State Court has been served upon Mr. Trey Morris, 509 Milam Street, Shreveport, Louisiana 71101,

by placing same in the United States Mail, with adequate postage prepaid thereon.

Shreveport, Louisiana, this _____ day of April, 2015.

> _____
>              Of Counsel

FILED AND RECORDED
BOSSIER PARISH, LA

2015 JAN 26   P 12: 33

*Cynthia J. Johnston*

CLERK & EX-OFFICIO
RECORDER

146202

GERALD L. BURNETT                    DOCKET NUMBER:_____

VS.                                  26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED, ET AL            BOSSIER PARISH, LOUISIANA

                                     DIV. E. - NERREN

                                     Assigned _____


## PETITION


The Petition of Gerald L. Burnett [hereinafter referred to as Plaintiff and/or as Burnett],

a resident and domiciliary of the State of Louisiana,  who with respect shows as follows, to-wit:


1.

The Defendants herein are:

[A]  ARCCA INCORPORATED,  a foreign corporation, who upon information and
belief has done and is doing business within the State of Louisiana and has over a course
of years, such as to grant long-arm jurisdiction over the corporation, its officers and
employees, and whose state of incorporation is presently unknown, but which may
possibly be the  State of Pennsylvania; and

[B] MICHAEL L. MARKUSHEWSKI, a person of the full age of majority and possibly
a resident of the State of Pennsylvania, whose  address is presently unknown; and

[C] DR. BRIAN J. BENDA, a person of the full age of majority and possibly a resident
of the State of Pennsylvania, whose address is presently unknown; and

[D]  "ABC" insurance company, or nominee, who upon information and belief issued
and/or caused to be issued a policy of insurance, who will be named herein with
specificity upon discovery of the name and policy information related thereto, and who
are for purposes hereof  referred as 'Insurance Company[s]'; and

[E]  Such other and additional parties, individuals, companies, corporations, limited
liability companies, partnerships et al, as discovery discloses are proper party defendants,
and who are for purposes hereof referred to as 'John Doe[s]'; and

[F]  Such  other parties against whom causes and/or rights of action may be asserted if
any, as become known to Plaintiff, who does expressly reserve the right to amend and
name same herein as proper named party Defendant[s], and/or otherwise plead thereto.

A TRUE COPY - ATTEST

DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

FILED

JAN 26 2015

EXHIBIT
A

146202

All of whom by virtue of doing business within the State of Louisiana, at multiple points in time,  when not authorized for same, may be served by service of process upon the Louisiana Secretary of State and/or by service of process under the Louisiana long arm statute, as such available information as to appropriate addresses becomes available to Plaintiff .

2.

Upon information and belief, at all times relevant hereto, Defendants were acting within the course and scope of the employment by Defendant-ARCCA and under the direct authority, supervision and direction of Alan Cantor, who may be included herein as a named·party Defendant, upon completion of discovery herein and for which said reservation and notice is given.

3.

Plaintiff shows that upon information and belief, that Defendant-ARCCA represents, advertises and provides professional services via itself and/or its employees, that include but is not limited to litigation services and expert[s] services within various areas of purported expertise, including seat belt and restraint systems for automobiles, biomechanics, structural and engineering related services and who solely upon their own, conduct necessary investigations, inspections and investigative engineering functions, for purposes of being the foundation for and the basis of their Reports, expert opinions and trial testimony.

4.

More specifically, via the internet, a website  [hereinafter sometimes referred to for reference purposes as 'ARCCA-website aka arcca.com'], which is maintained such  that apparently it  is available and accessible to anyone desiring to gain access thereto, from any location within the United States of America and possible other countries, with internet access, and which based upon its content and marketing thereof, including but not limited to parties and persons within the State of Louisiana, it is seeking commercial and proprietary gain from business resulting therefrom as is set forth herein as it purported to provide.  Said website is apparently owned, operated and managed by ARCCA's agents, representatives and possibly employees, whose names, addresses and relevant information is unknown to Plaintiff at this time.

5.

Plaintiff was counsel for petitioners in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and Jimmy Lou Reeves Allred vs.  John Parker et al [Honda/Takata]", docket # 117886, which was a products liability lawsuit, resulting from the death of their child in a motor vehicle accident in Bossier City, Bossier Parish, Louisiana, based upon a defective seatbelt system, safety restraint system, and the existence of 9-10 inches of seatbelt webbing slack resultant from the defective seatbelt safety system and specifically the emergency locking retractor, which enabled Paul Day Allred, Jr. to strike his head and receive a fatal head injury, based upon what Defendants herein advised Plaintiff and their Report, testimony and position herein.

6.

Burnett learned of Defendant-ARCCA and its website, the contents thereof and contacted ARCCA.

7.

A review of the ARCCA website reflects that they have testified in over forty-five [45] states, over 1000 times,  by many of their experts, and which they designate as "ARCCA

146202

Advantage:  Experience, Service, Expertise and Credibility" and for which they provide same, as is more fully referenced therein, and for which they state and  represent that ARCCA and their experts can perform their litigation role,  preparation of expert reports, depositions, and trial testimony, which they did for Plaintiff, as will be set forth herein. ARCCA and its experts have participated and appeared in other Louisiana court cases upon information and belief.

8.

On or about 18 May 2010, ARCCA-expert, Michael Markushewski performed in Bossier Parish, Louisiana,  his and ARCCA's initial incident vehicle inspection, on the subject Allred's 1995 Honda Accord which had been secured by the Bossier City Police Department at its Impound Yard after the motor vehicle accident, and upon release to Plaintiff, was immediately secured and stored inside a storage facility unit, where it has remained, in Bossier Parish, Louisiana.

9.

Thereafter, a Joint Restraint System removal of the driver's side seat belt assembly including the seat belt and Emergency Locking Retractor, etc. was conducted on or about 19 July 2011 by ARCCA Expert Michael Markushewski and Honda/Takata's expert, under agreed protocol, in Bossier Parish, Louisiana.

10.

An Agreed Joint Laboratory Inspection was conducted by ARCCA Expert-Michael Markushewski  and Honda/Takata's expert on or about 16 November 2011 upon the removed seat belt assembly and including specifically the seatbelt webbing and the Emergency Locking Retractor.

11.

ARCCA expert-Dr. Brian Benda conducted an inspection of the Allred 1995 Honda Accord on or about 8 May 2013 in Bossier Parish, Louisiana.

12.

ARCCA and its experts conducted what they reference as a 'surrogate fit-check' by Michael Markushewski and Brian Benda on 18 May 2013 and a subsequent surrogate fit-check on 29 August 2013

13.

Two [2] depositions [video and/or live] were conducted of ARCCA experts-Michael Markushewski and Brian Benda on 29-30 May 2013 and 29 October 2013 by Honda/Takata.

14.

Honda/Takata at all times maintained that its safety restraint system, including the seatbelt, and the emergency locking retractor worked as designed and intended, that it was not defective and functioned  properly, without any slack therein.

15.

Honda/Takata objected to the testing, surrogate fit-checks and measurements in various pleadings, took multiple depositions thereon, and continued to advance their defense theory of the case, that their and its safety systems functioned as intended and designed without any defects.

146202

16.

A civil jury trial was conducted in the Allred case commencing on 27 January 2014, and in which ARCCA experts-Michael Markushewski and Brian Benda did function as testifying experts on 28th and 29th January 2014 respectively.

17.

On 31 January 2014 a Bossier Parish jury found the existence of no defect and returned a verdict in favor of defendants-Honda/Takata, and for which a Judgment was entered on 19 February 2014, thereby rejecting ARCCA's experts' opinions, findings and conclusions.

18.

The Allred case was dismissed by Order of 6 May 2014.

17.

As is or may be appropriate, Plaintiff does incorporate herein in toto, the entire record in the Allred case.

18.

In connection with their role as testifying experts, ARCCA and its experts-Michael Markushewski and Brian Benda did prepare and sign their respective Reports dated 29 May 2013 styled "Biomechanical Analysis Report" by Dr. Brian J. Benda and "Preliminary Analysis Report" by Michael L. Markushewski dated 28 May 2013, each of which was addressed to Plaintiff-Burnett and which were filed into the record in the Allred proceeding, and which were in part the subject of deposition testimony as were their two [2] 'surrogate-fit checks' and of Motion practice, which purported to demonstrate based upon their independent examination and findings,  the existence of a defective seatbelt/safety restraint system with resultant "slack"; and responsible for the fatal head injury received by Paul Day Allred, Jr.,  but which was rejected by the jury, upon information and belief, was made upon actionable errors committed by Defendants in performing services for which they were hired and which they failed to provide .

19.

Plaintiff shows that if no defect was present, that Defendants individually and collectively owed a duty to him to so advise him, which they failed to do.

20.

The Louisiana Supreme Court has held that testifying retained experts have no immunity from suit, whether under  theories of malpractice liability, unjust enrichment, breach of contract, negligence, et al, and where the retained expert made errors in performing services by retained experts for which they were hired, including litigation services, formulating opinions, and recommendations, and giving testimony before or during trial, can be held liable and including but not limited to damages and professional negligence actions and/or for tort claims.

21.

More specifically, the Supreme Court stated, "...we hold that claims in connection with a retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity."  Further, "an expert witness hired to perform litigation support services but who performs those services in a negligent

146202

manner, cannot hide from civil liability to his client behind the shield of witness immunity." Marrogi vs. Howard, #2001-CQ-1106, 805 So.2d 1118 [La. 2002].

22.

Plaintiff shows that a letter agreement was entered on or about 13 April 2010, whereby ARCCA and its experts were retained and a retainer paid by Plaintiff.  Said letter agreement provided in part that "Either party may suspend services or terminate the Contract at any time upon written notice to the other', said termination notice has been given by Plaintiff-Burnett.

23.

Plaintiff shows that the letter agreement fails to contain any post-termination survival provisions of any kind, nature and description, and that none therefor survive termination.

24.

Having come into the State of Louisiana to practice their trade-craft and profession, both physically on separate occasions, and via the internet solicitation, and by functioning as testifying experts at the trial, Defendant-ARCCA and its experts-Michael Markushewski and Brian Benda et al cannot now be heard to complain as to subject matter jurisdiction and personal jurisdiction over them as defendants herein in this Honorable Court.

25.

 Plaintiff further pleads compensation and set-off as to any monies if any, determined to be owed by him to ARCCA, which is expressly denied, and to a full and complete accounting and strict proof thereof, including the reasonableness and benefit-value ratio thereof, as to any monies he paid, owed or may owe, and for  the full refund of all monies paid to ARCCA et al, in addition to damages to be awarded herein to him after and upon trial hereof, together with interest and reasonable attorney fees, as appropriate.

26.

Plaintiff does hereby expressly reserve the right to supplement and amend this Petition as events, fact and circumstances arise.

WHEREFORE, PLAINTIFF-GERALD L. BURNETT, prays that after all due consideration, that there be judgment in his favor and against Defendants-ARCCA, Michael Markushewski and Brian Benda and such other responsible parties, in the full amount to be determined at trial thereby, for damages under any and all theories of recovery,  and together with interest thereon, and to attorney fees, costs and expenses resultant therefrom, and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
B. Trey Morris
LSBA # 28162
509  Milam Street
Shreveport, LA  71101
Phone: 318.221.1507
Fax: 318.221.4560

Clerk:  Please hold service pending notice

146202

State of Louisiana

Parish of Caddo

## Affidavit of Verification and Correctness

BEFORE ME, the undersigned Notary Public, duly sworn and to me well known, came and appeared Gerald L. Burnett, a person of full age and majority, who did depose and state that he is the Plaintiff in the above styled and captioned matter, that he has read and reviewed this Petition and, that the contents hereof are true and correct to the best of his information, knowledge and belief.

GERALD L. BURNETT

Thus done and signed before me, Notary Public, on this the __24th__ day of January 2015.

B Trey Morris, Notary Public

My Commission expires:  at death.  SEAL:

B. TREY MORRIS
NOTARY PUBLIC
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE
NOTARY ID 65555

D3129103

# CITATION

| GERALD L. BURNETT | TWENTY-SIXTH JUDICIAL DISTRICT |
|---|---|
| VS | PARISH OF BOSSIER |
| ARCCA INCORPORATED ET AL | STATE OF LOUISIANA |
| DOCKET NUMBER: C-146202 | |

TO:  DR. BRIAN J. BENDA
    THROUGH LOUISIANA LONG ARM STATUTE
    2288 SECOND STREET PIKE
    NEWTOWN, PA 18940

in the County of _____

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said petition in the office of the Clerk of the 26th Judicial District Court in the Bossier Parish Court House in the Town of Benton in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

    EXPLANATION...................................

    You have received a law suit which states why you are being sued.  You ( as defendant ) will have thirty (30) days after you receive this petition to either file an answer ( in writing ) with the Bossier Parish Clerk of Court in Benton, Louisiana, or retain an attorney of your choice to act in your behalf.  If you do nothing within the said time period, then a judgment could be rendered against you.

    Attached hereto are:

PETITION

    Witness the Honorable Judges of our said Court on the 26TH DAY OF MARCH, 2015.

                   CYNTHIA J. JOHNSTON, CLERK OF COURT

                   DEPUTY CLERK

ATTORNEY:
GERALD L. BURNETT
318-929-7620

COPY D3129103

# CITATION

| GERALD L. BURNETT | TWENTY-SIXTH JUDICIAL DISTRICT |
|---|---|
| VS | PARISH OF BOSSIER |
| ARCCA INCORPORATED ET AL | STATE OF LOUISIANA |
| DOCKET NUMBER: C-146202 | |

TO:  DR. BRIAN J. BENDA
      THROUGH LOUISIANA LONG ARM STATUTE
      2288 SECOND STREET PIKE
      NEWTOWN, PA 18940

in the County of _____

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said petition in the office of the Clerk of the 26th Judicial District Court in the Bossier Parish Court House in the Town of Benton in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

EXPLANATION....................................

You have received a law suit which states why you are being sued.  You ( as defendant ) will have thirty (30) days after you receive this petition to either file an answer ( in writing ) with the Bossier Parish Clerk of Court in Benton, Louisiana, or retain an attorney of your choice to act in your behalf.  If you do nothing within the said time period, then a judgment could be rendered against you.

Attached hereto are:

PETITION

Witness the Honorable Judges of our said Court on the 26TH DAY OF MARCH, 2015.

CYNTHIA J. JOHNSTON, CLERK OF COURT

LAUREN S. FELLER

_____
DEPUTY CLERK

ATTORNEY:
GERALD L. BURNETT
318-929-7620

A TRUE ATTEST COPY

_____
DEPUTY CLERK

ClerkConnect Document Viewer                              http://209.209.204.34/ImageViewer/PrintImage.aspx



**GERALD L. BURNETT**
ATTORNEY AT LAW
P. O. BOX 78307
SHREVEPORT, LOUISIANA 71137

Phone: (318) 929-7620                                                    Fax: (318) 929-4625

8 April  2015

Ms. Lauren Feller
Deputy Clerk to Hon. Michael Nerren
Bossier Parish 26th Judicial District Court
P O Box  430
Benton, LA  71006

     RE:    Burnet vs. ARCCA,  # 146202

VIA  HAND DELIVERY

Dear Ms. Feller,

    Please find enclosed the original and ten (10) copies of Plaintiff's First Amended Petition
with attachments.  We ask that you do the following:

    (1) Two  (2) Certified copies be returned to us; and
    (2) Two (2) Stamped copies be returned to us; and
    (3) That six (6) copies be certified and used for the issuance of Citation for Service under
       the Louisiana Long Arm Statute.
       The addresses as before , are as follows:

    ✓ ARCCA Incorporated
      c/o  Alan Cantor
      2288 Second Street Pike
      Newtown, PA  18940

    ✓ Michael L. Markushewski
      c/o  ARCCA, Incorporated
      2288 Second Street Pike
      Newtown, PA  18940

    ✓ Dr. Brian Benda
      c/o ARCCA,  Incorporated
      2288 Second Street Pike
      Newtown, PA  18940

OK
400⁰⁰



FILED
APR 9 2015
DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

ARCCA Incorporated
c/o Alan Cantor
P O Box 78
Penns Park, PA 18943-0078

Mr. Michael Markushewski
c/o ARCCA, Inc.
P O Box 78
Penns Park, PA 18943-0078

Dr. Brian Benda
c/o ARCCA, Inc.
P O Box 78
Penns Park, PA 18943-0078

If you will call me at 318.929.7620 when they are ready, I will pick them up so that we may attempt Louisiana Long Arm Service on these Pennsylvania parties. Anytime next week would be great, as I will be out of the office on Thursday and Friday of this week.

We, as always appreciate your prompt and professional handling of these matter and are

Very truly yours,

Retha M. Brown
Secretary to Gerald L. Burnett

GERALD L. BURNETT                         DOCKET # 146202

VS.                                       26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED ET AL                  BOSSIER PARISH, LOUISIANA

## PLAINTIFF'S FIRST AMENDED PETITION

Now into court through undersigned counsel, comes the Plaintiff herein,
Gerald L. Burnett, who with respect does file "Plaintiff's First Amended Petition" herein as
follows, to-wit:

1.

Plaintiff does restate, reurge, reiterate, and incorporate in toto herein, in any and all
regards, the Original Petition filed herein including but not limited to any and all contents
thereof, a copy of which is attached hereto as Exhibit "A".

2.

Plaintiff shows that the Defendants have not answered the original Petition as of the date
of filing of this First Amended Petition, and that under the express provisions of LSA-CC Art.
1151 he may file this amended petition as is provided therein that "A plaintiff may amend his
petition without leave of court at any time before the answer thereto is served".

3.

Plaintiff shows that the original Defendants herein are ARCCA Incorporated,
Michael L. Markushewski and Dr. Brian J. Benda, who are named herein as defendants in this
First Amended Petition, and who are outside the State of Louisiana and who are within the State
of Pennsylvania.

4.

Plaintiff shows that in the original Petition, that in paragraph 5 thereof that it is shown
that he was counsel of Record in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and
Jimmy Lou Reeves Allred vs. John Parker et al [Honda/Takata], Docket #117886; and further
that in paragraph 17 that it was provided and pled,

"As is or may be appropriate, Plaintiff does incorporate herein in
toto, the entire record in the Allred case".

5.

Plaintiff shows that he does amend the original petition to expressly incorporate herein in
toto the entire record in the Allred case, #117886.

FILED

APR - 9 2015

DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

6.

Plaintiff shows that service of citation has been achieved upon the three [3] Defendants herein as is shown more fully by Plaintiff's pleading herein styled "Notice of Louisiana Long Arm Jurisdiction Service of Process and Filing of the Affidavit of the Person Performing Said Function" and no answer or appearance by Defendants has been filed herein.

7.

And now amending the original petition filed herein, Plaintiff shows that the amendment[s] are made thereto as follows:

\*\*\*\*\*\*\*\*\*\*\*

"27.

Plaintiff shows that as the original Petition states and as the Allred record demonstrates, that Honda/Takata's counsel deposed Defendants herein on two [2] separate occasions, [a] the first deposition of 29-30 May 2013 concerning ARCCA's two [2] Reports dated 28 May 2013 and 29 May 2013 addressed to Plaintiff-Gerald L. Burnett and ARCCA's first surrogate fit check of 18 May 2013; and [b] the court having granted a continuance and thereafter reset the civil jury trial, the second deposition of Defendants was taken on 29 October 2013 concerning an ARCCA second surrogate fit-check of 29 August 2013.

"28.

Plaintiff shows that the Allred-Defendants [Honda/Takata] did through its counsel and experts, challenge and object to the ARCCA Reports, surrogate fit-checks, opinions and conclusions that seatbelt slack was present and further, the Allred-Defendants [Honda/Takata] did show that no slack was present, due to errors made by ARCCA, Markushewski and Benda in their calculation mismeasurements and that said errors were shown and demonstrated by the findings of and confirmed by Allred-Honda/Experts' testing, who further demonstrated the absence of seatbelt slack in the Allred vehicle.

"29.

More specifically and non-exclusively, Plaintiff shows that the Allred-Defendants [Honda/Takata] did file on or about 13 June 2013, its pleading styled "Defendants' Supplemental Memorandum In Support of Motion in Limine to Exclude Plaintiff's Surrogate Testing", and which included their experts testing [Dr. McNish], as well as his "recreation of the ARCCA surrogate fit check", and included Exhibits "A-T", a copy of which is attached hereto and incorporated herein by reference in all regards herein as Burnett's Exhibit "B".

"30.

Plaintiff shows that Allred-Defendants stated,
"The above photographs show the identical excess "slack" shown in Plaintiff's surrogate study and conclusively establish that the excess slack was generated as a result of the **incorrect** measurement of the approximately 64.5 inches of webbing from **the top of the sleeve** rather than from the outboard anchor point, resulting in an additional 8-9 inches of webbing not present at the accident scene." [CF attached pg. 11 to Exhibit "B"

"31.

Plaintiff shows further that as shown by Exhibit "B" that Allred-Defendants and their experts stated,

"There can be no credible argument but that Plaintiffs' expert Mr. Markushewski and Dr. Benda utilized the wrong measurement in their May 17 surrogate work. They measured 64.5 inches of webbing from the top of the 9 inch sleeve to the extrication cut instead of 57 inches of webbing from the top of the 9 inch sleeve to the extrication cut. The result is an erroneous addition of 8-9 inches of "slack" that was not present in this accident. Not surprisingly, when the proper undisputed measurements are utilized and appropriately documented on the same size surrogate used by Plaintiff [sic Allred] the belt fits snugly and demonstrates no excess webbing or slack as was also seen in Markushewski's initial May 2010 fit check. See Exhibits D and E.

"The flaw in Plaintiff's surrogate work is readily understood and observed. It is consistent with the Markushewski's earlier shifting from one reference point [the top of the sleeve] in his first inspection in May 2010 to another reference point [the end of the webbing at the outboard anchor] in his second inspection in November 2011. Markushewski erroneously used the 64.5 inch measurement from the second inspection and the top of the sleeve reference point from the first inspection, resulting in a crucial and outcome determinative fatal mistake. This flawed measurement forms the entire foundation for Plaintiff's defect theory in this matter. Absent this flawed surrogate study, there is no evidence to support Plaintiff's unsupportable theory that there was 8-9 inches of excess webbing or slack in Mr. Allred's belt during the crash that caused his fatal injuries. To the contrary, the only credible evidence is that there was no excess slack and if Plaintiff had used the correct and undisputed measurement, his surrogate study would have reflected this undeniable fact."

"III. Conclusion

Plaintiffs' expert's clearly erroneous measurement and failure to document his surrogate study renders the study irrelevant, unreliable, and inadmissible. For these reasons, as well as those previously identified in Defendants' initial motion, Defendants respectfully request that this Court exclude all evidence of Plaintiff's surrogate study because it has no probative value, is unreliable, was not conducted under conditions substantially similar to those of the subject accident, and is unfairly prejudicial." Exhibit "B" @ pg. 12.

"32.

Plaintiff-Burnett shows that both fraud and misrepresentation were additionally committed by Defendants-ARCCA, Markushewski and Benda, in addition to the actionable errors referenced in the original Petition, and by their failure to provide competent litigation support services, and including formulating opinions and recommendations and giving testimony before and/or during trial, they should be held liable to include but not limited to damages, tort, attorney fees, tort claims, et al.

"33.

Plaintiff-Burnett shows that Louisiana civil law fraud under LSA-CC Art. 1953 that was perpetrated by Defendants-ARCCA, Markushewski and Benda upon him, in their misrepresentation and/or suppression of the truth, and/or their silence and inaction, as is more fully shown by the civil jury verdict and the studies, etc. by Allred-Defendants-Honda/Takata

that demonstrate same. As a matter of Louisiana law, under LSA-CC 1957, "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."

"34.
Plaintiff-Burnett shows that the opinions and testimony of Defendants-ARCCA, Markushewski and Benda were rejected by the Bossier Parish 26th JDC civil jury. Further, they were the opinions, representations, findings and contents of which they sought to substantiate with their second surrogate fit-check of 29 August 2013 and for which they purported 'confirmed' the first surrogate fit-check of 8 May 2013, both of which repeated the errors, miscalculations, fraud and contents of Defendants.

"35.
Defendants-ARCCA, Markushewski and Benda sought to obtain, achieve and benefit from billings for professional expert witness services and litigation support services in an amount of approximately $247,000 to which they are not entitled and which should be forfeited, set-aside and vacated in favor of Plaintiff, in addition to such other damages relief and recovery sought herein.

WHEREFORE Plaintiff-Burnett prays that this First Amended Petition be filed herein, and that after all due delays, consideration and legal proceedings, that there be judgment in his favor and against Defendants-ARCCA Incorporated, Michael L. Markushewski and Brian J. Benda, and such other responsible parties, in the full amount to be determined at trial hereof, for damages, under any and all theories of recovery, interest thereon and for reasonable attorney fees, costs and expenses resultant therefrom and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
B. Trey Morris
LSBA 28162
509 Milam Street
Shreveport, La. 71101
Phone: 318.221.1507
FAX: 318.221.4560

CLERK:
Please issue citation as per record:

ARCCA Incorporated
2288 Second Street Pike
Newtown, PA 18940

ARCCA
P O Box 78
Penns Park, PA 18943-0078

Michael L. Markushewski
2288 Second Street Pike
Newtown, PA 18940

Michael Markushewski
P O Box  78
Penns Park, PA  18943-0078

Dr. Brian J. Benda
2288 Second Street Pike
Newtown, PA  18940

Dr. Brian J. Benda
P O Box  78
Penns Park, PA  18943-0078

FILED AND RECORDED
BOSSIER PARISH, LA                    146202

GERALD L. BURNETT          2015 JAN 26  P 12:33   DOCKET NUMBER:_____

VS.                        CLERK & EX-OFFICIO
                           RECORDER  26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED, ET AL        BOSSIER PARISH, LOUISIANA

                                      DIV. E. - NERREN
                           Assigned _____

## PETITION

The Petition of Gerald L. Burnett [hereinafter referred to as Plaintiff and/or as Burnett],

a resident and domiciliary of the State of Louisiana, who with respect shows as follows, to-wit:

1.

The Defendants herein are:

[A]  ARCCA INCORPORATED, a foreign corporation, who upon information and
belief has done and is doing business within the State of Louisiana and has over a course
of years, such as to grant long-arm jurisdiction over the corporation, its officers and
employees, and whose state of incorporation is presently unknown, but which may
possibly be the State of Pennsylvania; and

[B] MICHAEL L. MARKUSHEWSKI, a person of the full age of majority and possibly
a resident of the State of Pennsylvania, whose address is presently unknown; and

[C] DR. BRIAN J. BENDA, a person of the full age of majority and possibly a resident
of the State of Pennsylvania, whose address is presently unknown; and

[D]  "ABC" insurance company, or nominee, who upon information and belief issued
and/or caused to be issued a policy of insurance, who will be named herein with
specificity upon discovery of the name and policy information related thereto, and who
are for purposes hereof referred as 'Insurance Company[s]'; and

[E]  Such other and additional parties, individuals, companies, corporations, limited
liability companies, partnerships et al, as discovery discloses are proper party defendants,
and who are for purposes hereof referred to as 'John Doe[s]'; and

[F]  Such other parties against whom causes and/or rights of action may be asserted if
any, as become known to Plaintiff, who does expressly reserve the right to amend and
name same herein as proper named party Defendant[s], and/or otherwise plead thereto.





FILED

JAN 26 2015

DEPUTY CLERK

All of whom by virtue of doing business within the State of Louisiana, at multiple points in time,  when not authorized for same, may be served by service of process upon the Louisiana Secretary of State and/or by service of process under the Louisiana long arm statute, as such available information as to appropriate addresses becomes available to Plaintiff.

2.

Upon information and belief, at all times relevant hereto, Defendants were acting within the course and scope of the employment by Defendant-ARCCA and under the direct authority, supervision and direction of Alan Cantor, who may be included herein as a named party Defendant, upon completion of discovery herein and for which said reservation and notice is given.

3.

Plaintiff shows that upon information and belief, that Defendant-ARCCA represents, advertises and provides professional services via itself and/or its employees, that include but is not limited to litigation services and expert[s] services within various areas of purported expertise, including seat belt and restraint systems for automobiles, biomechanics, structural and engineering related services and who solely upon their own, conduct necessary investigations, inspections and investigative engineering functions, for purposes of being the foundation for and the basis of their Reports, expert opinions and trial testimony.

4.

More specifically, via the internet, a website [hereinafter sometimes referred to for reference purposes as 'ARCCA-website aka arcca.com'], which is maintained such  that apparently it  is available and accessible to anyone desiring to gain access thereto, from any location within the United States of America and possible other countries, with internet access, and which based upon its content and marketing thereof, including but not limited to parties and persons within the State of Louisiana, it is seeking commercial and proprietary gain from business resulting therefrom as is set forth herein as it purported to provide.  Said website is apparently owned, operated and managed by ARCCA's agents, representatives and possibly employees, whose names, addresses and relevant information is unknown to Plaintiff at this time.

5.

Plaintiff was counsel for petitioners in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and Jimmy Lou Reeves Allred vs.  John Parker et al [Honda/Takata]", docket # 117886, which was a products liability lawsuit, resulting from the death of their child in a motor vehicle accident in Bossier City, Bossier Parish, Louisiana, based upon a defective seatbelt system, safety restraint system, and the existence of 9-10 inches of seatbelt webbing slack resultant from the defective seatbelt safety system and specifically the emergency locking retractor, which enabled Paul Day Allred, Jr. to strike his head and receive a fatal head injury, based upon what Defendants herein advised Plaintiff and their Report, testimony and position herein.

6.

Burnett learned of Defendant-ARCCA and its website, the contents thereof and contacted ARCCA.

7.

A review of the ARCCA website reflects that they have testified in over forty-five [45] states, over 1000 times,  by many of their experts, and which they designate as "ARCCA

Advantage: Experience, Service, Expertise and Credibility" and for which they provide same, as is more fully referenced therein, and for which they state and represent that ARCCA and their experts can perform their litigation role, preparation of expert reports, depositions, and trial testimony, which they did for Plaintiff, as will be set forth herein. ARCCA and its experts have participated and appeared in other Louisiana court cases upon information and belief.

8.

On or about 18 May 2010, ARCCA-expert, Michael Markushewski performed in Bossier Parish, Louisiana, his and ARCCA's initial incident vehicle inspection, on the subject Allred's 1995 Honda Accord which had been secured by the Bossier City Police Department at its Impound Yard after the motor vehicle accident, and upon release to Plaintiff, was immediately secured and stored inside a storage facility unit, where it has remained, in Bossier Parish, Louisiana.

9.

Thereafter, a Joint Restraint System removal of the driver's side seat belt assembly including the seat belt and Emergency Locking Retractor, etc. was conducted on or about 19 July 2011 by ARCCA Expert Michael Markushewski and Honda/Takata's expert, under agreed protocol, in Bossier Parish, Louisiana.

10.

An Agreed Joint Laboratory Inspection was conducted by ARCCA Expert-Michael Markushewski and Honda/Takata's expert on or about 16 November 2011 upon the removed seat belt assembly and including specifically the seatbelt webbing and the Emergency Locking Retractor.

11.

ARCCA expert-Dr. Brian Benda conducted an inspection of the Allred 1995 Honda Accord on or about 8 May 2013 in Bossier Parish, Louisiana.

12.

ARCCA and its experts conducted what they reference as a "surrogate fit-check" by Michael Markushewski and Brian Benda on 18 May 2013 and a subsequent surrogate fit-check on 29 August 2013

13.

Two [2] depositions [video and/or live] were conducted of ARCCA experts-Michael Markushewski and Brian Benda on 29-30 May 2013 and 29 October 2013 by Honda/Takata.

14.

Honda/Takata at all times maintained that its safety restraint system, including the seatbelt, and the emergency locking retractor worked as designed and intended, that it was not defective and functioned properly, without any slack therein.

15.

Honda/Takata objected to the testing, surrogate fit-checks and measurements in various pleadings, took multiple depositions thereon, and continued to advance their defense theory of the case, that their and its safety systems functioned as intended and designed without any defects.

16.

A civil jury trial was conducted in the Allred case commencing on 27 January 2014, and in which ARCCA experts-Michael Markushewski and Brian Benda did function as testifying experts on 28th and 29th January 2014 respectively.

17.

On 31 January 2014 a Bossier Parish jury found the existence of no defect and returned a verdict in favor of defendants-Honda/Takata, and for which a Judgment was entered on 19 February 2014, thereby rejecting ARCCA's experts' opinions, findings and conclusions.

18.

The Allred case was dismissed by Order of 6 May 2014.

17.

As is or may be appropriate, Plaintiff does incorporate herein in toto, the entire record in the Allred case.

18.

In connection with their role as testifying experts, ARCCA and its experts-Michael Markushewski and Brian Benda did prepare and sign their respective Reports dated 29 May 2013 styled "Biomechanical Analysis Report" by Dr. Brian J. Benda and "Preliminary Analysis Report" by Michael L. Markushewski dated 28 May 2013, each of which was addressed to Plaintiff-Burnett and which were filed into the record in the Allred proceeding, and which were in part the subject of deposition testimony as were their two [2] 'surrogate-fit checks' and of Motion practice, which purported to demonstrate based upon their independent examination and findings,  the existence of a defective seatbelt/safety restraint system with resultant "slack"; and responsible for the fatal head injury received by Paul Day Allred,Jr., but which was rejected by the jury, upon information and belief, was made upon actionable errors committed by Defendants in performing services for which they were hired and which they failed to provide .

19.

Plaintiff shows that if no defect was present, that Defendants individually and collectively owed a duty to him to so advise him, which they failed to do.

20.

The Louisiana Supreme Court has held that testifying retained experts have no immunity from suit, whether under  theories of malpractice liability, unjust enrichment, breach of contract, negligence, et al, and where the retained expert made errors in performing services by retained experts for which they were hired, including litigation services, formulating opinions, and recommendations, and giving testimony before or during trial, can be held liable and including but not limited to damages and professional negligence actions and/or for tort claims.

21.

More specifically, the Supreme Court stated, "...we hold that claims in connection with a retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity." Further, "an expert witness hired to perform litigation support services but who performs those services in a negligent

ClerkConnect Document Viewer                                    http://209.209.204.34/ImageViewer/PrintImage.aspx

manner, cannot hide from civil liability to his client behind the shield of witness immunity." Marrogi vs. Howard, #2001-CQ-1106, 805 So.2d 1118 [La. 2002].

22.

Plaintiff shows that a letter agreement was entered on or about 13 April 2010, whereby ARCCA and its experts were retained and a retainer paid by Plaintiff. Said letter agreement provided in part that "Either party may suspend services or terminate the Contract at any time upon written notice to the other", said termination notice has been given by Plaintiff-Burnett.

23.

Plaintiff shows that the letter agreement fails to contain any post-termination survival provisions of any kind, nature and description, and that none therefor survive termination.

24.

Having come into the State of Louisiana to practice their trade-craft and profession, both physically on separate occasions, and via the internet solicitation, and by functioning as testifying experts at the trial, Defendant-ARCCA and its experts-Michael Markushewski and Brian Benda et al cannot now be heard to complain as to subject matter jurisdiction and personal jurisdiction over them as defendants herein in this Honorable Court.

25.

Plaintiff further pleads compensation and set-off as to any monies if any, determined to be owed by him to ARCCA, which is expressly denied, and to a full and complete accounting and strict proof thereof, including the reasonableness and benefit-value ratio thereof, as to any monies he paid, owed or may owe, and for the full refund of all monies paid to ARCCA et al, in addition to damages to be awarded herein to him after and upon trial hereof, together with interest and reasonable attorney fees, as appropriate.

26.

Plaintiff does hereby expressly reserve the right to supplement and amend this Petition as events, fact and circumstances arise.

WHEREFORE, PLAINTIFF-GERALD L. BURNETT, prays that after all due consideration, that there be judgment in his favor and against Defendants-ARCCA, Michael Markushewski and Brian Benda and such other responsible parties, in the full amount to be determined at trial thereby, for damages under any and all theories of recovery, and together with interest thereon, and to attorney fees, costs and expenses resultant therefrom, and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
B. Trey Morris
LSBA # 28162
509 Milam Street
Shreveport, LA 71101
Phone: 318.221.1507
Fax: 318.221.4560

Clerk: Please hold service pending notice

4/14/2015 11:23 AM

State of Louisiana

Parish of Caddo

### Affidavit of Verification and Correctness

BEFORE ME, the undersigned Notary Public, duly sworn and to me well known, came and appeared Gerald L. Burnett, a person of full age and majority, who did depose and state that he is the Plaintiff in the above styled and captioned matter, that he has read and reviewed this Petition and, that the contents hereof are true and correct to the best of his information, knowledge and belief.

GERALD L. BURNETT

Thus done and signed before me, Notary Public, on this the 2ʰ day of January 2015.

B Trey Moore S, Notary Public
My Commission expires: at death. SEAL:

B. TREY MORRIS
NOTARY PUBLIC
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE
NOTARY ID 65565

26TH JUDICIAL DISTRICT COURT FOR THE PARISH OF BOSSIER

STATE OF LOUISIANA

DOCKET NO. 117886                              DIVISION: "F"

PAUL DAY ALLRED, SR. and JIMMY LOU REEVES ALLRED

VERSUS

JOHN PARKER ET AL

FILED: _____          _____
                                              DEPUTY CLERK

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S SURROGATE TESTING

I.   **INTRODUCTION**

Defendants submit the following supplemental memorandum in support of their Motion *in Limine* filed May 31, 2013, to exclude all testimony, opinions, references, photographs, and other evidence relating to surrogate testing performed by Plaintiff's experts Michael Markushewski and Dr. Brian Benda. This testing is inadmissible because it is based upon erroneous measurements that render the outcome upon which Plaintiff's experts rely to support their allegations of defect and causation meaningless and irrelevant. LSA—C.E. art. 401.

As discussed in Defendants' initial motion, Plaintiff asserts that the seatbelt in the Honda Accord driven by Mr. Allred is unreasonably dangerous because the retractor failed during the crash. Specifically, Plaintiff alleges that the retractor failed to lock in a timely manner allowing eight to nine inches of excess webbing or "payout" which permitted Mr. Allred to move forward within the vehicle ultimately striking the sun visor sustaining his fatal head injuries. Claims of excessive payout or excursion are not uncommon in automotive product liability claims. However, this case is somewhat unusual because there is no dispute as to the amount of webbing extended during the crash. The parties later held a joint inspection of the seat belt system wherein they removed the webbing from the retractor and measured it and determined that approximately 91 inches of webbing (as measured from the end of the belt at the outboard anchor to the mouth of the retractor) was extended out of the retractor. This measurement was documented by undisputed evidence of a mark in the webbing made by a feature within the

1



retractor known as a "web grabber." *See* Plaintiff's photographs below, 11/16/2011, attached as **Exhibits A and B.**





It is undisputed that the locking of the retractor due to the crash damage "froze" the webbing from the accident in place so this approximately 91 inches of payout measured at the November 2011 inspection is the same amount of webbing that was available to Mr. Allred during the crash. The parties further agree that the webbing was cut during the extrication process of the decedent after the crash and that this cut was made to the webbing approximately 64.5 inches from the end of the belt at the outboard anchor (when measured as shown above). *See* Plaintiff's photograph below, 11/16/2011, attached as **Exhibit C.**

2



Extrication Cut

The only dispute in this case – the outcome determinative dispute upon which Plaintiff's entire theory of liability rests – is whether the 91 inches of total webbing payout (or 64.5 inches of webbing payout from the end of the belt at the outboard anchor to the extrication cut) is evidence of a failure of the seatbelt retractor that allowed excess webbing to spoolout and the decedent to move forward and strike the sun visor.[1] In other words, does this undisputed measurement of webbing result in excess slack in the belt or a good fit for Mr. Allred.

An accepted methodology for evaluating whether the amount of webbing available in a crash is reasonable or excessive is with a surrogate study. Both sides conducted such studies. A surrogate is used to determine whether or not the amount of webbing—in this case that the parties agree was present at the time of the crash—when fitted onto the surrogate in an exemplar vehicle, would result in excess webbing that could allow unreasonable excursion. At his deposition on May 29, Plaintiff's expert Mr. Markushewski relied upon a surrogate study or "fit check" that he and another Plaintiff's expert, Dr. Benda, conducted on May 17, 2013, as evidence that there was eight to nine inches of "slack" in Mr. Allred's belt at the end of the crash. Plaintiff relies upon this "slack" as evidence of defect and causation in this case.

A closer examination of the May 17 surrogate work and the accompanying file materials, however, reveals a glaring measurement error that results in what is clearly a patently false result upon which Plaintiff's experts rely. This error is not immediately apparent because Plaintiff's experts intentionally chose not to document with photographs or video measurements of the amount of belt webbing extended in the surrogate study. However, a replication of the study by

---

[1] Honda disputes that Mr. Allred moved forward and hit the sun visor causing his fatal injury.

5

Defendants' experts with measurements documented in photographs conclusively demonstrates that Mr. Markushewski erroneously added 8–9 inches of webbing to their surrogate study that was <u>not</u> extended in the subject belt at the time of the crash. This fatal flaw in Plaintiff's experts' demonstration, in addition to the gross deficiencies previously noted, renders the entire study an irrelevant farce that has no relevance to this case.

## II.    ARGUMENT

As illustrated below, Plaintiff's experts' surrogate study is fundamentally flawed, and therefore, not admissible because it has no relevance to the undisputed facts of this case.

### A. Plaintiff's Vehicle and Seat Belt Inspections

To understand the Plaintiff's experts' mistake and to appreciate its significance, a review of surrogate work done by both parties in this case is essential.

### May 18, 2010 Inspection

Plaintiff's expert Markushewski inspected the subject vehicle on May 18, 2010.  At that inspection, Markushewski conducted the first surrogate test using himself as a surrogate for Mr. Allred by sitting in the driver's seat of the crashed vehicle and placing the seat belt over him to the position it would have been when it was cut by emergency personnel.  At this point the webbing was still extended in the post-crash length.  *See* Markushewski Dep., 58:22–63:2, attached as **Exhibit D**.



In the top photograph, Mr. Markushewski is seated in the damaged subject Honda Accord. *See* Plaintiff's photographs, 5/18/2010, attached as **Exhibit E**. The extrication cut in the belt can be

4

ClerkConnect Document Viewer                                http://209.209.204.34/ImageViewer/PrintImage.aspx

seen at his left shoulder with the other end of the cut webbing still in the D-ring. Slack is seen in the belt at his left waste area. The next photograph below shows the cut ends of the webbing pulled close together as they would have been in the crash. *See* Plaintiff's photographs, 5/18/2010, attached as **Exhibit F**. The belt is snug around Mr. Markushewski's chest.



These photographs document the absence of excess webbing or slack in the seat belt as alleged when the belt is placed in the proper position. Rather, the webbing fits appropriately on Mr. Markushewski (who is smaller than Mr. Allred).

At this inspection, Markushewski also measured and documented the length of the webbing found in the vehicle. He measured from the top of the 9 inch plastic sleeve covering the webbing as his "zero reference point" (as it appears he also later did in his May 17 study). Markushewski measured 57 inches from the top of the plastic sleeve to the extrication cut. The measurement could not be made from the anchor point (end of seat belt) because this area of webbing was trapped between the seat and crushed structure of the vehicle. This measurement is documented in Markushewski's photographs and his inspection notes and is consistent with measurements taken later at the parties' joint inspection. *See* Markushewski 5/18/2010 vehicle inspection photographs, attached as **Exhibit G and H**; Markushewski inspection notes, attached as **Exhibit I**.

5



Plaintiff's Photographs taken during 5/18/10 vehicle inspection with extrication cut length measured from top of plastic sleeve

**November 2011 Inspection**



The parties jointly removed the belt webbing by cutting away the deformed components to free the belt for removal. At the joint seat belt inspection in November 2011, Plaintiff's expert Mr. Markushewski measured the webbing on the removed belt. However, this time he measured not from the top of the plastic sleeve, but from the bottom of the sleeve at the outboard anchor (or actually about an inch from the outboard anchor). Using the bottom of the sleeve as his zero reference point, he measured approximately 64.5 inches to the extrication cut. *See* Markushewski 11/16/2011 joint inspection photographs, attached as **Exhibit B and A.**

6





Mr. Markushewski documented in his notes that the webbing of the subject seat belt measured 64.5 inches from the outboard anchor to the extrication cut, and totaled approximately 91 inches to the web grabber mark indicating where the retractor locked the webbing. *See* Markushewski Seat Belt Notes from 11/16/11, attached as **Exhibit J**. These measurements again are not in dispute and are consistent with his May 2010 inspection notes wherein he measured 57 inches from the top of the 8 inch sleeve to the extrication cut mark (57 + 8 = 65) even though he used a different zero reference point. *See* **Exhibits G and H.**

7

**May 17, 2013 Surrogate Study**

On May 17, 2013, Plaintiff's experts Mr. Markushewski and Dr. Benda conducted another surrogate study or "fit check" of the belt using a surrogate. Contrary to accepted methodology, Plaintiff has not produced any photographs documenting the length of webbing seen in these photographs. More importantly, neither Markushewski nor Benda show in any photograph from what reference point -- the top of the sleeve or the outboard anchor -- the measurement was made. The difference in these two possible measurements (from the top of the sleeve or the outboard anchor) is 8-9 inches. Below are the photographs relied upon by Plaintiff's expert Markushewski to demonstrate the alleged eight to nine inches of excess webbing that form the basis of Plaintiff's case. *See* Markushewski 05/17/2013 surrogate photographs, attached as **Exhibit K and L.**



Undocumented Webbing Length

8



**Approximately 9 inches**

### June 7, 2013 Surrogate Comparative Study

In response to Plaintiff's surrogate study, Defendants' biomechanic expert Dr. Thomas McNish conducted a surrogate study to ascertain the source of the heretofore never seen excess webbing.[2] As demonstrated herein, Dr. McNish first measured the webbing using the undisputed measurements of 57 inches from the top of the 9 inch plastic sleeve to the extrication cut. The below photographs taken by Dr. McNish in the June 7 study show that the belt fits perfectly with no excess slack when the undisputed measurement is used. *See* McNish 06/07/2013 surrogate photographs, attached as Exhibits N–Q.

---

[2] Defendants conducted their own surrogate work prior to Plaintiff's undocumented demonstrated, that revealed no excess slack in the belt—just as Mr. Markuszewski's original self-measurements had. Defendants' study demonstrated that the seat belt functioned properly and as intended in the subject crash. *See* representative photographs depicting Defendants' 04/17/2013 surrogate study, attached as Exhibit M.

9



Next, Dr. McNish measured 64.5 inches of webbing from the top of the plastic sleeve to the extrication cut and fitted it around the surrogate. As the below photographs show, when the 64.5 inches of webbing is measured from the top of the sleeve rather than from the outboard anchor point, we observe the "excess slack" seen in Markushewski's May 17 photographs and relied upon by him. *See* McNish 06/07/2013 surrogate photographs, as **Exhibits R–T.**

10



Measured 64.5 inches from top of sleeve



Approximately 8 inches

Comparing Plaintiff's undocumented study with Defendants' documented measures shows where 9 inches of webbing was added. It is clear that Plaintiff's experts have increased the available webbing in their test. See Exhibit K.



The above photographs show the identical excess "slack" shown in Plaintiff's surrogate study and conclusively establish that the excess slack was generated as a result of the *incorrect* measurement of the approximately 64.5 inches of webbing from the *top of the sleeve* rather than from the outboard anchor point, resulting in an additional 8–9 inches of webbing not present at the accident scene.

11

There can be no credible argument but that Plaintiffs' experts Mr. Markushewski and Dr. Benda utilized the wrong measurement in their May 17 surrogate work.  They measured 64.5 inches of webbing *from the top of the 9 inch sleeve* to the extrication cut instead of 57 inches of webbing from the top of the 9 inch sleeve to the extrication cut. The result is an erroneous addition of 8-9 inches of "slack" that was not present in this accident. Not surprisingly, when the proper undisputed measurements are utilized and appropriately documented on the same size surrogate used by Plaintiff, the belt fits snugly and demonstrates no excess webbing or slack as was also seen in Markushewski's initial May 2010 fit check. *See Exhibits D and E.*

The flaw in Plaintiff's surrogate work is readily understood and observed. It is consistent with the Markushewski's earlier shifting from one reference point (the top of the sleeve) in his first inspection in May 2010 to another reference point (the end of the webbing at the outboard anchor) in his second inspection in November 2011. Markushewski erroneously used the 64.5 inch measurement from the second inspection and the top of the sleeve reference point from the first inspection, resulting in a crucial and outcome determinative fatal mistake. This flawed measurement forms the entire foundation for Plaintiff's defect theory in this matter. Absent this flawed surrogate study, there is no evidence to support Plaintiff's unsupportable theory that there was 8-9 inches of excess webbing or slack in Mr. Allred's belt during the crash that caused his fatal injuries. To the contrary, the only credible evidence is that there was no excess slack and if Plaintiff had used the correct and undisputed measurement, his surrogate study would have reflected this undeniable fact.

**III.   Conclusion**

Plaintiffs' expert's clearly erroneous measurement and failure to document his surrogate study renders the study irrelevant, unreliable, and inadmissible. For these reasons, as well as those previously identified in Defendants' initial motion, Defendants respectfully request that this Court exclude all evidence of Plaintiff's surrogate study because it is has no probative value, is unreliable, was not conducted under conditions substantially similar to those of the subject accident, and is unfairly prejudicial.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

_____

**GUYTON H. VALDIN, JR. #20621**
3838 North Causeway Blvd.
2900 Three Lakeway Center
Metairie, Louisiana 70002
Telephone No.:  (504) 832-3700

and

**JOEL H. SMITH** (admitted pro hac vice)
**COURTNEY C. SHYTLE** (admitted pro hac vice)
Bowman and Brooke, LLP
1441 Main Street
Suite 1200
Columbia, SC 29201
Phone:  (803) 726-7420
Fax:  (803) 726-7421
**Counsel for Defendants, American Honda Motor Co.,
Inc. and TK Holdings Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all known counsel of record via electronic mail, facsimile and/or by depositing same in the United States mail, first class postage pre-paid and properly addressed, on the 13th day of June, 2013.

_____
**GUYTON H. VALDIN, JR.**

13

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

# Exhibit A

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



**Exhibit B**

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



ClerkConnect Document Viewer

# Exhibit C

ClerkConnect Document Viewer



Page 1

26th JUDICIAL COURT FOR THE PARISH OF BOSSIER
STATE OF LOUISIANA
- - - - - - - - - - - - - - - - - - - - - - - - - -
PAUL DAY ALLRED, SR., and   DOCKET NO. 117886
JIMMY LOU REEVES ALLRED

vs

JOHN PARKER; AMERICAN
HONDA MOTOR COMPANY,
INCORPORATED; TK
HOLDINGS, INCORPORATED,
Successor-in-Interest to
TAKATA FABRICATION,
INCORPORATED; TAKATA
INCORPORATED; TAKATA
RESTRAINT SYSTEMS,
INCORPORATED AND
AUTOMOTIVE SYSTEMS
LABORATORY, INCORPORATED,
(ASL)
- - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF
MICHAEL MARKUSHEWSKI
PENNS PARK, PENNSYLVANIA
MAY 29, 2013


ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  DEBRA JOHNSON-SPALLONE, CCR NO. NJ1182

FILE NO.:  A7056BF

Page 58

1   close to two inches rearward, moved somewhere left at

2   11 inches inboard, and it is rotated something less

3   than 90 degrees.

4               And I understood that the rotation

5   was the thing that you said would cause the outboard

6   motion of his shoulder harness, and if you don't know

7   which of those things occurred in that order, I am

8   having a hard time understanding how you would have

9   an opinion that the D-ring at some point moved

10  outboard or the shoulder harness at some point moved

11  outboard relative to Mr. Allred's left shoulder.

12              That is -- that is -- that is why

13  I'm asking you this question.

14       A.     I understand your question.

15              If you look at frame number 160 of

16  the same inspection, you'll see myself in the

17  vehicle.

18       Q.     Hold on a second.  Hold on.

19              I want to get to that.

20              (Pause)

21       Q.     Okay.

22       A.     If you notice the alignment of the

23  shoulder harness relative to my clavicle is well

24  outboard of where a normal seat belt would ride.

25              So, the motion of the D-ring -- the

Page 59

1    rotation, as well as the current location with

2    respect to the seat, and how Allred would move late

3    in the crash pulse now, we have to be clear, this is

4    very late in the crash pulse, contributed to rollout

5    of the upper torso.

6              Q.    All right.

7                    So, all of that damage, the movement

8    of the seat, the movement of -- and -- and the

9    relative location of current location of the

10   D-ring -- I'm sorry -- the location in this

11   photograph of the D-ring and the left side of that

12   seat belt are what you're talking about in terms of

13   the position of the shoulder harness at that point

14   late in the crash, whatever that is --

15             A.    Yes.

16             Q.    -- right?

17             A.    Yes.

18             Q.    Okay.

19                   Are you holding that seat belt in

20   the position that you are holding it there?

21             A.    On 160 you're looking at?

22                   Yes.

23             Q.    There doesn't appear to be any slack

24   in it; does it, in the shoulder belt?

25             A.    Oh, there's slack in it, yes.

Page 60

1           I just didn't want to pull on it
2   given that it is forensic evidence.
3           Q.     What I mean is, there's --
4           A.     I just laid it on my body.  I didn't
5   want to load or remove any delicate forensics on the
6   webbing.  So, I gently placed it on myself.
7           Q.     How tall are you?
8           A.     About 5'7 and three quarters, 5'8.
9           Q.     What is your weight?
10          A.     About 155, 157 pounds at that time.
11          MR. SMITH:  We have been going about
12  an hour.
13          Do you want to take a short break?
14  Try to organize my questions a little bit.
15          MR. BURNETT:  How long do you want
16  to take?
17          MR. SMITH:  Five, ten minutes.
18  Whatever you guys want to take.
19          MR. BURNETT:  The lady says ten.
20          MR. SMITH:  I just like to take care
21  of my reporter.  She is working harder than any of
22  us.
23                  - - -
24          (Recess was taken at this time.)
25                  - - -

Page 61

1    CONTINUATION

2    BY MR. SMITH:

3             Q.     Mr. Markushewski, we were just

4    talking to you about your photograph number 160.

5             A.     Yes.

6             Q.     From your May -- is that May 18th,

7    2011, inspection?

8             A.     Yes.

9             Q.     Do you have that in front of you?

10            A.     Yes.

11            Q.     Do you have a ruler there in your

12   hand?

13                   You're measuring something.

14            A.     It is a tape measure, yes.

15            Q.     What is the -- what is it that you

16   are measuring there?

17            A.     I am measuring the location of the

18   D-ring relative to the cut on the shoulder harness

19   with a separation.

20                   MR. BURNETT:  Joel, can we clarify?

21                   I have that as 2010.

22                   I think you mentioned 2011.

23                   MR. SMITH:  I'm sorry.  I misspoke.

24   I misspoke.

25                   All right.

Page 62

```
1                          - - -
2     CONTINUATION
3     BY MR. SMITH:
4              Q.    And you said that you did not pull
5     the slack out of the seat belt; right?
6              A.    I didn't pull it tight.
7                    So, I -- I put it on loosely so that
8     I would not disturb any forensics.
9              Q.    Look at 158.
10             A.    Yes.
11             Q.    Now, you can see slack in the belt
12    there; right?
13             A.    Well, you can see it is not holding
14    itself up on my shoulder.  It is sliding down.
15             Q.    So, between --
16             A.    I just -- I just --
17             Q.    So, between 158 -- I'm sorry.
18                   Go ahead.
19                   You were saying something.
20                   I didn't mean to interrupt you.
21             A.    Yeah.  If you look at 156, 157, you
22    can see it was holding itself in position loosely
23    with not -- not being tight, and then it started
24    sliding down.
25                   So, then I -- I just held it up
```

Page 63

```
 1    there, and took that picture and asked somebody to
 2    take that picture.
 3             Q.    So, between 158 and 160, you removed
 4    some of the slack?
 5             A.    Well, it was -- it was falling off
 6    my upper torso.  So, I held it up, yes, yeah.
 7             Q.    Yeah.
 8                   We have to be careful with the term
 9    "slack."
10                   Okay.
11                   So, he is -- let's talk about your
12    accident severity analysis.
13                   Okay?
14             A.    Okay.  Yes.
15             Q.    What are the opinions that come from
16    your accident severity analysis?
17                   Are they something in your report?
18             A.    Yes, they are.
19             Q.    Where -- where would I find those?
20             A.    If you look on page eight of the
21    report.
22             Q.    Okay.
23                   MR. SMITH:  Can we mark that report
24    that you have in front of you as -- as Exhibit-1?
25                              - - -
```

# Exhibit E

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



# Exhibit F



# Exhibit G

ClerkConnect Document Viewer                                    http://209.209.204.34/ImageViewer/PrintImage.aspx



ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

# Exhibit H

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



ClerkConnect Document Viewer                    http://209.209.204.34/ImageViewer/PrintImage.aspx

**ARCCA INCORPORATED**

**ARCCA**  VEHICLE INSPECTION CHECKLIST

**PRE-INSPECTION INFORMATION**
File No. 5893-001    Case ALLRED
Investigator M.L. MARKOSHANSKI
Date: Inspection 5, 18, 10    Accident 8, 21, 04
Location SCHERUS PORT, IA

**VEHICLE INFORMATION**

Year 1995   Make HONDA   Model ACCORD

Style 4-DOOR   Trim level ACCORD V/6

VIN 1 H G C F 6 6 3 S A 0 2 2 1 5

Mfd by HONDA

| | |
|---|---|
| 1981 | B |
| 1982 | C |
| 1983 | D |
| 1984 | E |
| 1985 | F |
| 1986 | G |
| 1987 | H |
| 1988 | J |
| 1989 | K |
| 1990 | L |
| 1991 | M |
| 1992 | N |
| 1993 | P |
| 1994 | R |
| 1995 | S |
| 1996 | T |
| 1997 | V |
| 1998 | W |
| 1999 | X |
| 2000 | Y |
| 2001 | 1 |
| 2002 | 2 |
| 2003 | 3 |
| 2004 | 4 |
| 2005 | 5 |
| 2006 | 6 |
| 2007 | 7 |
| 2008 | 8 |
| 2009 | 9 |
| 2010 | A |

Type: Pass Car   MPV   Truck   Incomplete

Build Date ____   Mileage 67297 x

Plate: Number SA9518F   State ALABAMA

Color: Exterior WHITE   Interior GRAY   Belts GRAY

**PHOTOGRAPHS ROLL No.:** 1 2 3 4 5 6 7 8 9 10   DIGITAL
**VIDEOTAPES: VIDEO by** _____
Original tape to _____

**COMPONENTS REMOVED FROM VEHICLE ON THIS DATE**   (NONE)
ITEMS _____

REMOVED BY _____
RETAINED BY _____
TAGGED _____   SEALED _____
ATTACHING HARDWARE: REMOVED   IN VEHICLE

1/98

4/14/2015 11:23 AM

ClerkConnect Document Viewer                http://209.209.204.34/ImageViewer/PrintImage.aspx



# Exhibit J



ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

# Exhibit K

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



# Exhibit L

ClerkConnect Document Viewer



ClerkConnect Document Viewer

# Exhibit M

ClerkConnect Document Viewer                    http://209.209.204.34/ImageViewer/PrintImage.aspx



4/14/2015 11:23 AM



# Exhibit O



ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

# Exhibit P

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



4/14/2015 11:23 AM

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

# Exhibit Q



# Exhibit R

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



4/14/2015 11:23 AM

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx



ClerkConnect Document Viewer

# Exhibit T

ClerkConnect Document Viewer

http://209.209.204.34/ImageViewer/PrintImage.aspx

