UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GERALD L. BURNETT      :    CIVIL ACTION NUMBER 5:15-CV-1214
                       :
     v.                  :    JUDGE ELIZABETH FOOTE
                       :
ARCCA, INCORPORATED, ET AL    :    MAGISTRATE JUDGE MARK HORNSBY

AFFIDAVIT OF STEVEN H. SAILER

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF BUCKS

       BEFORE ME, the undersigned Notary Public, in and for the Commonwealth of Pennsylvania, personally came and appeared STEVEN H. SAILER, who after being duly sworn, did depose and state, based on personal knowledge, that:

1.     I, Steven H. Sailer, attorney at law, based this affidavit on my personal knowledge.

2.     I represent ARCCA, Inc. ("ARCCA") in its pending lawsuit against Gerald Burnett before the Court of Common Pleas of Bucks County, Pennsylvania entitled *ARCCA, Inc. v. Gerald L. Burnett*, case number 2015-00078.

3.     On January 7, 2015, I, on behalf of ARCCA, filed the Complaint in the above referenced lawsuit in the Court of Common Pleas of Bucks County, Pennsylvania (hereinafter, "the Pennsylvania suit"). A copy of the Complaint in the Pennsylvania suit is attached as Exhibit B-1.

4.     On March 31, 2015, Burnett filed Preliminary Objections to ARCCA's complaint, which included an objection to the venue and personal jurisdiction. Burnett also filed a Memorandum in Support of his preliminary objections and a Memorandum of Law in Further Support of the Preliminary Objections. Copies of said filings are attached *in globo* as Exhibit B-2.

5.     ARCCA filed Plaintiff's Answer to Defendant's Preliminary Objections, a Brief Contra Defendant's Preliminary Objections and a Memorandum of Law in Response to Defendant's



**EXHIBIT**
B

ARCCA0010

Memorandum of Law to Further Support the Preliminary Objections. Copies of said filings are attached *in globo* as Exhibit B-3.

6.      By Order of June 8, 2015, the Honorable Alan Rubenstein of the Court of Common Pleas of Bucks County, Pennsylvania overruled Mr. Burnett's preliminary objections. A copy of said Order is attached as Exhibit B-4.

7.      The Pennsylvania suit is now proceeding to discovery and a trial setting.

_____
STEVEN H. SAILER

SWORN TO AND SUBSCRIBED before me, Notary, on this the _16th_ day of July, 2015.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DOROTHY MALECZKOWICZ, Notary Public
Newtown Boro., Bucks County
My Commission Expires March 21, 2017

ARCCA0011

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| ARCCA, INC.<br>2288 Second Street Pike<br>Penns Park, PA 18943,<br>            Plaintiff<br><br>        v.<br><br>GERALD L. BURNETT<br>P.O. Box 78307<br>Shreveport, LA 71137,<br>            Defendant | :   NO.<br>:<br>:<br>:   ATTY. NO.<br>:<br>:   IT IS HEREBY CERTIFIED<br>:   THAT THIS IS NOT AN<br>:   ARBITRATION MATTER<br>:<br>:<br>:<br>:   CIVIL ACTION<br>: |

COMPLAINT

1.      Plaintiff is ARCCA, Inc., a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an address of 2288 Second Street Pike, Penns Park, Bucks County, Pennsylvania.

2.      Defendant is Gerald L. Burnett an adult individual with an address of P.O. Box 78307, Shreveport, Louisiana.

3.      At all times relevant hereto, the plaintiff among other things, provided professional litigation support services to the legal and insurance industries.

4.      The plaintiff believes and therefore avers that at all times relevant hereto, the defendant was a practicing attorney who was licensed to practice law in Louisiana.

5.      On or about April 13, 2010, in conjunction with a case known as Allred v. Honda/Takata-products, the defendant entered into a written contract with the plaintiff whereby the plaintiff agreed to provide professional support services to the defendant. A true and correct copy of the contract into which the plaintiff and the defendant entered is attached hereto, made a part hereof and marked as Exhibit "A."



ARCCA0012

6.     From the inception of the contract through December 29, 2014, the plaintiff provided the defendant with professional litigation support services with regard to the defendant's prosecution of the <u>Allred v. Honda/Takata-products</u> case.

7.     Pursuant to the terms and conditions of the subject contract, the plaintiff billed the defendant a total of $254,984.51.  A true and correct copy of the Ledger Listing Report setting forth a list of the billings to the defendant is attached hereto, made a part hereof and marked as Exhibit "B."

8.     Despite being billed $254,984.51 by the plaintiff, the defendant paid the plaintiff only $78,730.16 toward the bill, leaving a balance of $176,254.35 owed by the defendant to the plaintiff.

9.     All of the services provided by the plaintiff to the defendant were provided in a timely, quality and workmanlike manner.

10.     Despite demand, the defendant has failed and refused and continues to fail and refuse to pay the plaintiff the $176,254.35.

11.     The defendant breached the subject contract with the plaintiff.

12.     Pursuant to the Invoicing Policy which is included as part of the contract, the defendant is indebted to the plaintiff for interest on unpaid balances over 45 days at 1.5% per month and the attorney's fees incurred by the plaintiff in collection of overdue amounts.

13.     The defendant is indebted to the plaintiff in the amount of $176,254.55 plus interest on unpaid balances over 45 days at 1.5% per month plus attorney's fees in an amount not less than $1,000.00.

14.     Pursuant to the terms and conditions of the contract, the exclusive jurisdiction for the instant cause of action is the Bucks County (Pennsylvania) Court of Common Pleas.

ARCCA0013

WHEREFORE, the plaintiff prays Your Honorable Court for judgment for it and against the defendant, Gerald L. Burnett, in the amount of $176,254.55 plus interest on the unpaid balance over 45 days at the rate of 1.5% per month plus attorney's fees in an amount of not less than $1,000.00.

STUCKERT and YATES

By: _Steven H Sailer_

Steven H. Sailer, Esquire
Attorney for Plaintiff
Attorney ID Number 32447
2 North State Street
P.O. Box 70
Newtown, PA 18940
(215) 968-4700

3

ARCCA0014

## VERIFICATION

Alan Cantor, CEO at ARCCA, Inc., Plaintiff herein, verifies that the statements made in the foregoing Complaint are true and correct.  She understands that false statements herein are made subject to the penalties of 18 PA C.S. §4904 relating to unsworn falsification to authorities.

_____
Date

_____
ALAN CANTOR

ARCCA0015

Exhibit "A"

ARCCA0016



-April 8, 2010
*Privileged & Confidential Attorney Work Product*

Gerald L. Burnett, Esquire
Gerald L. Burnett Attorney at Law
PO Box 78307
Shreveport, LA 71137

$3893-001$

RE: *Allred vs. Honda/Takata-products*

Dear Mr. Burnett:

Thank you for your interest in our services. This letter confirms our agreement that Gerald L. Burnett, Esquire on behalf of Gerald L. Burnett Attorney at Law has retained ARCCA, Inc. to provide professional support services in connection with the *Allred vs. Honda/Takata-products* litigation.

In response to your request, ARCCA will provide an initial evaluation and analysis with an oral report. Upon receipt of the materials requested (see below), the Project Manager assigned to your case will provide for your approval a breakdown of the phase-I actions and costs. We bill on a time and materials basis, and you will only be invoiced for charges actually incurred. The hourly billing rate for our engineers will be provided in your phase-I estimate.

Please provide the following materials for our review and analysis:
· PAR {Police Accident report/incident report}
· Medical records pertaining to the subject claimant/plaintiff
· Color photographs of the subject vehicle/accident site/injured party
· Witness statements or deposition transcripts for EMT, Police, 1st responders, etc.

This agreement is subject to ARCCA's Standard Rate Schedule, Terms and Conditions, and Invoicing Policy (attached), all of which are hereby made a part of this agreement. Further details concerning this particular assignment, including work progress, deliverable requirements and updated budget estimates, can be obtained from your Project Manager.

Your signature below within 60 days of the date of this agreement, along with receipt of the initial $5000 retainer amount which is *held in trust*, authorizes ARCCA to proceed on the case. Please note that you may not identify us as an expert witness to the court or otherwise request work product until this Agreement has been signed and returned to us and you have paid the initial retainer. Call me at (215) 598-9750 if you have any questions or require additional information. We look forward to working with you.

Sincerely,

Sioux M. Klinsky
Chief Operations Officer
ARCCA, Incorporated

AGREED AND ACCEPTED:

Gerald L. Burnett, Esquire
Gerald L. Burnett Attorney at Law

13 April 2010
Date

**ARCCA, Incorporated*2288 Second Street Pike*Penns Park, PA 18943*800-700-4944**

ARCCA0017



**TERMS & CONDITIONS**
ARCCA, Inc. and Gerald L. Burnett, Esquire
on behalf of Gerald L. Burnett Attorney at Law
RE Allred vs. Honda/Takata-products
Date: April 8, 2010

ARCCA will assist you in the technical matters of your case. In return, you agree to deal with us in good faith and to apprise us of all rulings and pertinent information relating to our testimony and work product. When used in this Contract, the words "we," "our" and "us" refer to ARCCA, Inc. and any division of ARCCA that may perform services for your case. Likewise, the words "you" and "your" mean the individual signing this Contract and that individual's company/firm  The individual acknowledges that he/she has authority to bind his/her company/firm to this Contract.

Charges. The enclosed Rate Schedule outlines our current rates, invoicing, and payment policies. The hourly rates may change without notice. You agree to abide by the Rate Schedule and policies in effect at the time services are rendered. The rates apply to all time spent by the consulting engineers and others on your behalf. Such time may include, without limitation: consultation, case review, technical investigation, research, laboratory work (in-house or otherwise), report preparation, depositions, court appearances, standby and travel  We will estimate certain charges that are payable in advance, including those for depositions, court appearances and out-of-town work.

In certain instances, ARCCA may charge a retainer. <u>This retainer is held in trust for the length of the project – it is not applied to outstanding balances until the case is resolved.</u> The letter forwarding this contract details the retainer amount, if one is required.

**Note:**  Our Contract is with you and not with your client. You agree to be responsible for payment of our services and understand that such payment is not contingent upon settlement of your case and is not dependent upon your arrangement with your client or any other source. If you refer the case to another attorney, you must pay your balance in full. We do not operate on a contingent fee basis, nor may a bill go unpaid until a case is resolved.

Use of Agents or Assistants. To allow the consulting engineer assigned to your matter to perform the duties under this Contract in the most cost-effective manner, the engineer may use other ARCCA employees to assist with the proper performance of his duties. We will charge the cost of the services of these Assistants to you at the rates in the Rate Schedule.

Methods Used. Because of the nature of the case work where we are providing expert opinions and services, we retain the right to determine, in our discretion, the methods we use to accomplish our work.

Termination or Suspension of Services  Either party may suspend services or terminate this Contract at any time upon written notice to the other  You will be responsible for all fees, costs and expenses incurred by us before our receipt of a written request to stop work or terminate the Contract. Upon termination of the Contract and payment of all outstanding money due us, we will return to you all documents and other evidence that we may have. We reserve the right to terminate this contract due to non-payment of invoices.

ARCCA0018

ARCCA

Governing Law. This Contract shall be governed by and construed in accordance with the laws of Pennsylvania.

Exclusive Jurisdiction and Venue; Effect of Compulsory Arbitration; Waiver of Jury Trial. The parties agree that any dispute, controversy or claim arising under or in connection with this Contract shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania. Each party hereby submits to the personal jurisdiction of the Court of Common Pleas of Bucks County, Pennsylvania, Each party waives any right to assert or move for transfer to any other court based upon the doctrine of forum non conveniens or otherwise. Each party agrees that in the event a dispute is subject to compulsory arbitration under the rules of civil procedure applicable to such action, that the decision of the arbitrators shall be final, binding and non-appealable. Each party further agrees that in the event a dispute is not subject to compulsory arbitration and is decided by a judge, the decision of the judge shall be final, binding and non-appealable. Each party hereby irrevocably waives any right or claim to a jury trial in regard to any and all actions and proceedings involving this Contract

Confidentiality of Proceedings  Each party agrees that all proceedings involving a claim or claims under this Contract are and shall remain confidential and that all information, transcripts and other documents that are the subject of such proceedings shall be held in the strictest confidence and shall not be disclosed without the prior written consent of the other party (except for disclosure to such party's attorney(s) or as required by court order)  Each party agrees that upon the request of either party, the record of the court proceeding may be sealed and each party hereby waives the right to object to a request by the other party to have the record so sealed.

Limitation of Damages. In the event of any alleged breach of contract or negligence on our part, you agree that your sole and exclusive remedy will be to recover damages not to exceed the amount of fees paid to us for services rendered in connection with this Contract. In no event will we be liable for alleged incidental or consequential damages.

Assignment. This Contract may not be assigned by either party without the other's prior written consent.

Entire Understanding. This Contract (including the Rate Schedule in effect) constitutes our full and complete understanding with you, superseding any and all previous statements and agreements and understandings, written or oral, with respect to the subject matter of the Contract. The terms of this Contract may be amended only in writing signed by both parties. This Contract shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to any conflict of law rules and without regard to any rules of interpretation or construction relating to which party drafted this Contract.

Testimony Challenges. You agree to notify the ARCCA expert or point-of-contact when any challenges are made with regard to testimony (e.g *Daubert, Kuhmo* or *Frye*) or motions in limine or motions for summary judgment are put forward. We require notification within 2-weeks of notice to counsel. ARCCA reserves the right to retain independent counsel to represent its interests during any such *Daubert, Kuhmo, Frye* or Limine Motions/Hearings. You agree to be responsible for and to reimburse ARCCA upon demand for all fees and costs associated with ARCCA's preparations for and attendance at such hearings, including, without limitation, reasonable attorney's fees, preparation time, travel time, testimony time, court costs and out-of-pocket expenses. You will also be responsible for payment of all case-related fees and costs, regardless of the outcome of the challenge/hearing.

Evidence Handling. ARCCA is not in the business of storing evidence. Rather, all evidence is handled by and through Evidence Storage, Inc., a Pennsylvania corporation ("ESI"), via a separate contract to be entered into between yourself and ESI  Occasionally, evidence is received by ARCCA prior to a contract being entered into with ESI. In the event this happens, the evidence will be turned over to ESI and ESI will then contact you with regard to entering into a

ARCCA0019

ARCCA

contract for the storage and handling of such evidence. You acknowledge that in the event you do not enter into a contract with ESI for the storage of the evidence upon request, ESI may return the evidence to you COD, and if you fail to pay for the return of the evidence, ESI may consider the evidence abandoned. You hereby release ARCCA, and agree to hold ARCCA harmless, from any and all claims, losses or damages (including costs and attorneys fees) arising out of or in connection with ARCCA's receipt of evidence and ARCCA's transmittal of evidence to ESI.

Burnett
RE: *Allred vs Honda/Takata-products*
April 8, 2010

ARCCA0020

*ARCCA RATE SCHEDULE*
*effective January 1, 2009*
*Page 1 of 2*

## Retainers & Payments

1. An initial retainer (unless otherwise specified in the cover letter) is required along with the signed retention letter. **The retainer amount is identified in the accompanying agreement letter.** The initial retainer remains in your account until the case is closed or our services are discontinued. Upon completion of the case, if our final invoice is less than the retainer amount, the balance will be returned. If the invoice amount exceeds the retainer, the final invoice will reflect the difference. Additional retainers may be required for special tasks.

2. **Please make checks payable to ARCCA, Incorporated and remit to P.O. Box 78, Penns Park, PA 18943-0078.**

## Professional Fees

**Analysis and Consultation** [Investigations, analysis, inspections, research, report preparation, travel time and general consultation services.]

| | |
|---|---|
| Investigator | $ 85-$100 per hour |
| Coordinating Engineer | $100-$200 per hour |
| Senior Engineer | $250-$375 per hour |
| Biomechanical Engineer | $200-$350 per hour |

**Testimony**

| | |
|---|---|
| Senior Engineer | $300-$375 per hour |
| Biomechanical Engineer | $250-$400 per hour |

*Please note that for most work requiring a level of effort greater than four (4) hours, we will provide a written cost estimate for your review and approval.*

## Visual Communications

| | |
|---|---|
| Senior Consultants | $165 to $255 per hour |
| Graphics/Illustration Production | $125 to $185 per hour |
| Animation Production Services | Per Estimate |
| Administrative Support | $50 per hour |

## Visual Communications "Phase I" Analysis

Our approach for providing cost-effective, creative consultation is to open a "Phase I" budget that covers initial client meetings/calls, file review and exhibit development. The product of this first phase is a comprehensive project plan, including concept drawings showing ideas for visually presenting key issues; recommendations for appropriate exhibit type, such as graphics, animation, video, photographs, and/or a multi-media approach; and a firm cost estimate for further development and production of the exhibits proposed.

*ARCCA RATE SCHEDULE*
*effective January 1, 2009*
*Page 2 of 2*

**ARCCA INVOICING POLICY**

1. The initial retainer remains in your account until the case is closed or our services are discontinued. Upon completion of the case, if our final invoice is less than the retainer amount, the balance will be returned. If the invoice amount exceeds the retainer, the final invoice will reflect the difference. Additional retainers may be required for special tasks.

2. Except where alternative pricing has been specifically arranged, all invoicing is on a time and materials basis. Hours are computed in periods of no less than one-quarter of an hour.

3. Expenses for travel, materials and other direct costs include a general and administrative fee. Travel time is computed portal-to-portal and is billed at the rates set forth under Professional Fees.

4. Invoices are prepared and mailed monthly. Payment is due within thirty (30) days of the invoice date. Please make all checks payable to **ARCCA, Incorporated**.

5. Interest is charged on unpaid balances over 45 days at 1.5% per month. You agree to pay all attorney's/agency fees and expenses incurred by us in collection of overdue accounts.

6. No work will be performed on accounts 60 days past due (pending receipt of all funds) without an express exception granted by a corporate officer. Once an account is past due, we may require advance payment for all future services and expenses.

7. Some test programs and all depositions and court appearances for expert testimony must be paid in advance. This includes any outstanding balances. ARCCA will generate an estimated bill before the scheduled date based on estimated time and expenses. We will bill time and/or expenses greater than the estimate following the deposition and/or court appearance; we will credit overpayments against future services or refund them.

8. A minimum charge of four (4) hours will apply for all court appearances and depositions. This minimum does not include trial or deposition waiting/stand-by time.

9. We reserve the right to suspend or terminate services for non-payment of invoices when due.

ARCCA0022

Exhibit "B"

ARCCA0023

## Ledger Listing Report

Search Description:
Search for: 3893-001   Search by: Matter ID

| Matter ID | Client Sort/Matter Desc. | Date | StmnNo. | Type | Total | Balance |
|-----------|--------------------------|------|---------|------|-------|---------|
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 5/21/2010 | 51523 | Statement | 10,443.75 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 6/18/2010 | 51810 | Statement | 10,611.36 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 7/16/2010 | 52080 | Statement | 1,169.41 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 8/13/2010 | 52398 | Statement | 3,105.00 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 9/15/2010 | 51523 | Cash | -10,000.00 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 10/1/2010 | 51523 | Write-off | -443.75 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 10/1/2010 | 51810 | Write-off | -1,956.25 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 7/13/2011 | 51810 | Cash | -8,655.11 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 7/13/2011 | 52080 | Cash | -1,169.41 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 7/13/2011 | 52398 | Cash | -1,230.00 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 8/12/2011 | 56332 | Statement | 8,258.33 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 9/9/2011 | 56604 | Statement | 29.90 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 11/4/2011 | 56332 | Cash | -8,258.33 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 11/4/2011 | 56604 | Cash | -21.90 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/2/2011 | 57553 | Statement | 5,022.31 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/30/2011 | 57832 | Statement | 90.00 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/26/2012 | 52398 | Cash | -1,875.00 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/26/2012 | 56604 | Cash | -8.00 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/26/2012 | 57553 | Cash | -5,022.31 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/26/2012 | 57832 | Cash | -90.00 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/26/2012 | | Unapplied | -0.10 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 5/16/2013 | 63133 | Cash | -0.10 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 5/16/2013 | 63133 | Statement | 22,821.65 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 5/16/2013 | | Application | 0.10 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 6/7/2013 | 63353 | Statement | 34,470.65 | 17,292.20 |

ARCCA0024

## Ledger Listing Report

Search Description:
Search for: 3893-001 Search by: Matter ID

| Matter ID | Client Sort/Matter Desc. | Date | StmnNo. | Type | Total | Balance |
|-----------|--------------------------|------|---------|------|-------|---------|
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 6/14/2013 | 63438 | Statement | 822.77 | 822.77 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 6/28/2013 | 63579 | Statement | 1,330.00 | 1,330.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 7/12/2013 | 63739 | Statement | 325.00 | 325.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 8/8/2013 | 63991 | Statement | 26.00 | 26.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 9/6/2013 | 64294 | Statement | 13,255.00 | 13,255.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 9/24/2013 | 64419 | Statement | 11,144.91 | 11,144.91 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 10/29/2013 | 63133 | Cash | -22,821.55 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 10/29/2013 | 63353 | Cash | -17,178.45 | |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 11/1/2013 | 64972 | Statement | 13,963.75 | 13,963.75 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 11/1/2013 | 65022 | Statement | 14,195.00 | 14,195.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 11/29/2013 | 65299 | Statement | 216.15 | 216.15 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/27/2013 | 65555 | Statement | 95.00 | 95.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/31/2013 | 65644 | Statement | 0.00 | 0.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 1/24/2014 | 65807 | Statement | 3,454.00 | 3,454.00 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 1/31/2014 | 65919 | Statement | 72,359.94 | 72,359.94 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 2/21/2014 | 66190 | Statement | 194.26 | 194.26 |
| 3893-001 | Gerald L. Burnett Attorney at Allred vs. | 12/29/2014 | 69875 | Statement | 27,580.37 | 27,580.37 |
| | | | | Grand Total | 176,284.35 | 176,254.35 |

ARCCA0025

You are hereby notified to file a
Written Response to the attached
Preliminary Objections within twenty
(20) days from Service hereof, or
your Complaint may be dismissed

William B. Callahan

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552

Attorney for Defendant

ARCCA, INC.
                        Plaintiff

            v.

GERALD L. BURNETT
                        Defendant

:  IN THE COURT OF COMMON
:  PLEAS OF BUCKS COUNTY
:  PENNSYLVANIA
:
:  CIVIL ACTION - LAW
:
:  No. 2015-00078

## PRELIMINARY OBJECTIONS OF DEFENDANT, GERALD L. BURNETT, TO PLAINTIFF'S COMPLAINT

Defendant, Gerald L. Burnett, by way of these Preliminary Objections to Plaintiff's Complaint, and appearing herein for the limited and only purpose thereof, and without waiver of any legal positions, defenses, claims, affirmative defenses, setoffs  and/or otherwise,  which are hereby expressly reserves, whether at this time known or unknown,  does aver and says:

### PROCEDURAL AND FACTUAL HISTORY

1.      Defendant, Gerald L. Burnett ("Defendant"), is an attorney at Law, licensed and practicing in the State of Louisiana.

2.      Defendant is not licensed, nor does he practice, in the Commonwealth of Pennsylvania.

3.      Defendant maintains no offices in Pennsylvania.



EXHIBIT
B-2

ARCCA0026

4.    In 2010, Defendant became aware of Plaintiff, ARCCA, Inc. ("Plaintiff"), as a firm which provides expert testimony in various court cases.

5.    Based on claims made on Plaintiff's website, Defendant retained Plaintiff to provide expert witnesses and litigation professional services including but not limited to Reports and support therefor, in a products liability suit being litigated by Defendant, and entitled *Paul Day Allred, Sr. v. John Parker, et. al. (Honda/Takata).*

6.    The case was litigated in Louisiana in the 26th Judicial District Court, under docket number 117886.

7.    The case was based upon a defective seat belt restraint system in a Honda motor vehicle, specifically the emergency locking retractor, which allowed Paul Day Allred, Jr., son of the Plaintiffs, to strike his head on the header/sun visor of the motor vehicle, resulting in his death from closed head trauma and brain herniation therefrom.

8.    Plaintiff's employees and experts were retained for the purpose of providing expert reports and testimony subsequent to their due diligence investigation and which was totally under Plaintiff's direction, care, custody and control as to each aspect thereof, to the effect that the emergency locking retractor of the seatbelt system malfunctioned, defective under the Louisiana Products Liability Act, as shown in their Reports.  Defendant provided Plaintiff all documents, medical records et al requested by them, including those from the LSUSHC-S medical records et al.

9.    The employees and experts from Plaintiff prepared expert reports, conducted surrogate fit-check on multiple occasions, performed inspections, and were deposed twice, and gave trial testimony thereon, but due to avoidable

ARCCA0027

deficiencies and errors in the reports, they were rejected by the jury at trial, which resulted in a verdict for Honda/Takata, and against Defendant Burnett's clients.

10.     As a result, Defendant has heretofore filed a malpractice and tort action against Plaintiff ARCCA, which is now pending in the 26th Judicial District Court in Louisiana. A true and correct copy of the Petition filed in the tort action is attached hereto as Exhibit "A".

11.     Plaintiff's have also filed this action, alleging that Defendant has breached the terms and conditions of a 2010 engagement letter, by failing to pay monies owed to Plaintiff.

12.     Plaintiff alleges that jurisdiction and venue in this court is proper, based on a forum selection clause within those terms and conditions of the 2010 Agreement.

13.     For the reasons stated below, Defendant respectfully submits that Plaintiff's Complaint should be dismissed.

### FIRST PRELIMINARY OBJECTION:
### IMPROPER VENUE, Pa.R.C.P. 1028(a)(1)

14.     Defendant repeats all averments set forth in the previous paragraphs as if set forth fully herein.

15.     Defendant acknowledges that forum selection clauses are generally valid and enforceable in the Commonwealth of Pennsylvania. However, they are not immune from challenge.

16.     A recent decision of the United States Supreme Court is instructive.

17.     In *Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. Of Texas*, 134 S.Ct. 568 (2013), the Court did note that "a valid forum selection clause should be given controlling weight in all but the most

ARCCA0028

exceptional circumstances." *Id.* at 581, *citing, Stewart Organization, Inc. v. Ricoh Corp.* 487 U.S. 22, 33 (1988) (Kennedy, J. Concurring). However, the Court also noted that, at least in the federal system, courts may consider "public interest factors". *Id.,* at 582

18.     Those "public interest factors" include "the administrative difficulties flowing from court congestion" and "the local interest in having localized controversies decided at home." *Id.* at 581, n.6, *citing Piper Aircraft Co. v. Reyno,* 454 U. S. 235, 241, n. 6 (1981).

19.     In this matter, as was previously noted, a malpractice action, properly venued in Louisiana, is pending. That means, not just the possibility, but the certainty of parallel litigation, and the possibility of conflicting results.

20.     The Louisiana action is properly venued in Louisiana, because it is an action in tort, not in contract, and is not subject to the forum selection or choice of law clauses in Plaintiff's terms and conditions, because the alleged negligence and tort of Plaintiffs occurred in Louisiana, and because most of the witnesses and jurors are located in Louisiana.

21.     Further, the Louisiana Supreme Court, in response to a certified question from the United States Fifth Circuit Court of Appeals, rejected as did the US Court of Appeals, the Defendant expert witness's argument that Louisiana did not have jurisdiction, because the expert's work was done outside of Louisiana. *Maroggi v Howard;* 805 So.2d 1118, 1122-1123 (La.S.Ct, 2002).

22.     Given that at least several nonexclusive issues, including  [a], the quality of Plaintiff's services; [b] the reasonableness thereof; [c] a benefit analysis thereof; and [d] the quality of their performance, are central to both cases, there

is a strong likelihood of parallel litigation in two different states, and the possibility of differing results.

23.    Such circumstances are an unwanted and unnecessary waste of judicial resources, are contrary to the interests of judicial economy, and should be avoided if at all possible.

24.    Moreover, the above issues regarding Plaintiff's services are clearly a "localized controversy", given the custom and tradition of the 26th Judicial District Court, and the specific methods and criteria it uses to set fee amounts for expert witnesses, and to adjust them. Different courts use different formulas for determining the compensation of expert witnesses, and a court in Bossier Parish Louisianna, is necessarily going to be different from a court in Bucks County Pennsylvania. Accordingly, the Louisiana Court should make the determination as to what Plaintiff is entitled to have earned, if any, as well as all other issues related and presented as a result thereof..

25.    The majority of Plaintiff's services, including all of those which Defendant alleges were negligently rendered, were performed in Louisiana.

WHEREFORE, Defendant respectfully prays that this Court sustain Defendant's Preliminary Objections and dismiss Plaintiff's Complaint without prejudice to Plaintiff's right to prosecute the pending action in Louisiana.

<u>SECOND PRELIMINARY OBJECTION:</u>
<u>LACK OF PERSONAL JURISDICTION, Pa.R.C.P. 1028(a)(1).</u>

26.    Defendant repeats all averments set forth in the previous paragraphs as if set forth fully herein.

27.    As was noted previously, Defendant acknowledges the existence of a forum selection clause in Plaintiff's Terms and Conditions.

ARCCA0030

28.     As was also noted previously, Plaintiff's experts and employees came to Louisiana to conduct inspections and to testify in a Louisiana courtroom.

29.     Moreover, Plaintiff's experts and employees committed a tort in Louisiana inasmuch as they failed to use the requisite skill and care in rendering their litigation support services.

30.     Further, given that ARCCA and its two experts, came into the State of Louisiana and appeared and testified in open district court, they submitted to the jurisdiction and venue of Louisiana courts for all purposes, rights of action and causes of action, contained therein. They had no grant of immunity.

31.     Defendant respectfully asserts, that by submitting itself to the jurisdiction and venue of Louisiana, Plaintiff waived the forum selection clause, and thereby modified the terms and conditions of the parties' agreement.

<u>**THIRD PRELIMINARY OBJECTION: FAILURE TO CONFORM TO LAW OR RULE OF COURT, Pa.R.C.P. 1028(a)(2).**</u>

32.     Defendant repeats all averments set forth in the previous paragraphs as if set forth fully herein.

33.     Pa.R.C.P. 1019(i) provides in part that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof...".

34.     Plaintiff alleges, in paragraph 6 of its Complaint, that "plaintiff provided the defendant with professional litigation support services with regard to the defendant's prosecution of the <u>Allred v Honda/Takata-products case</u>."

35.     Plaintiff also alleges, in paragraph 7, that "plaintiff billed the defendant a total of $227,409.14."

ARCCA0031

36.     However, Plaintiff has attached none of the actual billing statements nor support therefor, for any dollar amount billed, nor required authorizations for same signed by Defendant, as was Plaintiff's practice, nor work schedules/calendars for ARCCA experts et al, that it allegedly upon which it bases its clams and for which it allegedly billed/presented Defendant with. The only writing attached by Plaintiff to its Complaint is a skeletal summary of the bills allegedly sent to defendant. There is no indication of what "professional litigation support services" were performed or when they were performed, or by whom, nor when the hourly billing rate was increased or otherwise support and details therefor.

37.     The Complaint on its face therefore fails to conform to Pa.R.C.P. 1019(i), inasmuch as Plaintiff has failed to attach writings showing that it is the holder of an account upon which Defendant owes money, and the details supporting that claim.  The attachment does not provide for adjustments made for services performed by ARCCA and its experts for other parties during the relevant time line, nor does it provide for adjustments made for 'point-to-point' standard fees for travel, airport, or taxis and rental cars, No such accounting has ever been provided.

WHEREFORE, Defendant respectfully prays that this Court sustain Defendant' Preliminary Objections and dismiss Plaintiff's Complaint with prejudice, for failure to comply with Pa.R.C.P. 1019(i).

## FOURTH PRELIMINARY OBJECTION: INSUFFICIENT SPECIFICITY OF A PLEADING, Pa.R.C.P. 1028(a)(3)

38.     Defendant repeats all averments set forth in the previous paragraphs as if set forth fully herein.

ARCCA0032

39.  Plaintiff alleges, in paragraph 6 of its Complaint, that "plaintiff provided the defendant with professional litigation support services with regard to the defendant's prosecution of the Allred v Honda/Takata-products case.".

40.  Plaintiff also alleges, in paragraph 7, that "plaintiff billed the defendant a total of $227,409.14."

41.  However, Plaintiff has attached none of the actual billing statements nor support therefor, for any dollar amount billed, nor required authorizations for same signed by Defendant, as was Plaintiff's practice, nor work schedules/calendars for ARCCA experts et al, that it allegedly upon which it bases its claims and for which it allegedly billed/presented Defendant with. The only writing attached by Plaintiff to its Complaint is a skeletal summary of the bills allegedly sent to defendant. There is no indication of what "professional litigation support services" were performed or when they were performed, or by whom, nor when the hourly billing rate was increased or otherwise support and details therefor.

42.  Because Plaintiff has failed to attach to its Complaint a detailed description of the services it performed, the Complaint lacks the requisite specificity, and should be dismissed.

WHEREFORE, Defendant respectfully prays that this Court sustain Defendant's Preliminary Objections and dismiss Plaintiff's Complaint with.

LAW OFFICES OF
WILLIAM B. CALLAHAN

BY: _____

William B. Callahan
Attorney for Defendant
Gerald L. Burnett

# EXHIBIT A

ARCCA0034

FILED AND RECORDED
BOSSIER PARISH, LA

GERALD L. BURNETT JAN 26 P 12 33          DOCKET NUMBER: _____

*Cynthia G. Johnston*
CLERK EX-OFFICIO
RECORDER

VS.                                              26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED, ET AL          BOSSIER PARISH, LOUISIANA

DIV. E. - NERREN
Assigned _____

## PETITION

The Petition of Gerald L. Burnett [hereinafter referred to as Plaintiff and/or as Burnett], a resident and domiciliary of the State of Louisiana,  who with respect shows as follows, to-wit:

1.

The Defendants herein are:

[A]  ARCCA INCORPORATED, a foreign corporation, who upon information and belief has done and is doing business within the State of Louisiana and has over a course of years, such as to grant long-term jurisdiction over the corporation, its officers and employees, and whose state of incorporation is presently unknown, but which may possibly be the  State of Pennsylvania; and

[B] MICHAEL L. MARKUSHEWSKI, a person of the full age of majority and possibly a resident of the State of Pennsylvania, whose  address is presently unknown; and

[C] DR. BRIAN J. BENDA, a person of the full age of majority and possibly a resident of the State of Pennsylvania, whose address is presently unknown; and

[D]  "ABC" insurance company, or nominee, who upon information and belief issued and/or caused to be issued a policy of insurance, who will be named herein with specificity upon discovery of the name and policy information related thereto, and who are for purposes hereof  referred to as "Insurance Company[s]"; and

[E]  Such other and additional parties, individuals, companies, corporations, limited liability companies, partnerships et al, as discovery discloses are proper party defendants, and who are for purposes hereof referred to as "John Doe[s]"; and

[F]  Such  other parties against whom causes and/or rights of action may be asserted if any, as become known to Plaintiff, who does expressly reserve the right to amend and name same herein as proper named party Defendant[s], and/or otherwise plead thereto.

FILED
JAN 26 2015

DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

ARCCA0035

All of whom by virtue of doing business within the State of Louisiana, at multiple points in time, when not authorized for same, may be served by service of process upon the Louisiana Secretary of State and/or by service of process under the Louisiana long arm statute, as such available information as to appropriate addresses becomes available to Plaintiff.

2.

Upon information and belief, at all times relevant hereto, Defendants were acting within the course and scope of the employment by Defendant-ARCCA and under the direct authority, supervision and direction of Alan Cantor, who may be included herein as a named party Defendant, upon completion of discovery herein and for which said reservation and notice is given.

3.

Plaintiff shows that upon information and belief, that Defendant-ARCCA represents, advertises and provides professional services via itself and/or its employees, that include but is not limited to litigation services and expert[s] services within various areas of purported expertise, including seat belt and restraint systems for automobiles, biomechanics, structural and engineering related services and who solely upon their own, conduct necessary investigations, inspections and investigative-engineering functions, for purposes of being the foundation for and the basis of their Reports, expert opinions and trial testimony.

4.

More specifically, via the internet, a website [hereinafter sometimes referred to for reference purposes as 'ARCCA-website aka arcca.com'], which is maintained such that apparently it is available and accessible to anyone desiring to gain access thereto, from any location within the United States of America and possible other countries, with internet access, and which based upon its content and marketing thereof, including but not limited to parties and persons within the State of Louisiana, it is seeking commercial and proprietary gain from business resulting therefrom as is set forth herein as it purported to provide. Said website is apparently owned, operated and managed by ARCCA's agents, representatives and possibly employees, whose names, addresses and relevant information is unknown to Plaintiff at this time.

5.

Plaintiff was counsel for petitioners in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and Jimmy Lou Reeves-Allred vs. John Parker et al [Honda/Takata]", docket # 117886, which was a products liability lawsuit, resulting from the death of their child in a motor vehicle accident in Bossier City, Bossier Parish, Louisiana, based upon a defective seatbelt system, safety restraint system, and the existence of 9-10 inches of seatbelt webbing slack resultant from the defective seatbelt safety system and specifically the emergency locking retractor, which enabled Paul Day Allred, Jr. to strike his head and receive a fatal head injury, based upon what Defendants herein advised Plaintiff and their Report, testimony and position herein.

6.

Burnett learned of Defendant-ARCCA and its website, the contents thereof and contacted ARCCA.

7.

A review of the ARCCA website reflects that they have testified in over forty-five [45] states, over 1000 times, by many of their experts, and which they designate as "ARCCA

ARCCA0036

Advantage: Experience, Service, Expertise and Credibility" and for which they provide same, as is more fully referenced therein, and for which they state and represent that ARCCA and their experts can perform their litigation role, preparation of expert reports, depositions, and trial testimony, which they did for Plaintiff, as will be set forth herein. ARCCA and its experts have participated and appeared in other Louisiana court cases upon information and belief.

8.

On or about 18 May 2010, ARCCA expert, Michael Markushewski performed in Bossier Parish, Louisiana,  his and ARCCA's initial incident vehicle inspection, on the subject Alfred's 1995 Honda Accord which had been secured by the Bossier City Police Department at its Impound Yard after the motor vehicle accident, and upon release to Plaintiff, was immediately secured and stored inside a storage facility unit, where it has remained, in Bossier Parish, Louisiana.

9.

Thereafter, a Joint Restraint System removal of the driver's side seat belt assembly including the seat belt and Emergency Locking Retractor, etc. was conducted on or about 19 July 2011 by ARCCA Expert Michael Markushewski and Honda/Takata's expert, under agreed protocol, in Bossier Parish, Louisiana.

10.

An Agreed Joint Laboratory Inspection was conducted by ARCCA Expert Michael Markushewski  and Honda/Takata's expert on or about 16 November 2011 upon the removed seat belt assembly and including specifically the seatbelt webbing and the Emergency Locking Retractor.

11.

ARCCA expert Dr. Brian Benda conducted an inspection of the Alfred 1995 Honda Accord on or about 8 May 2013 in Bossier Parish, Louisiana.

12.

ARCCA and its experts conducted what they reference as a 'surrogate fit-check' by Michael Markushewski and Brian Benda on 18 May 2013 and a subsequent surrogate fit-check on 29 August 2013

13.

Two [2] depositions [video and/or live] were conducted of ARCCA experts Michael Markushewski and Brian Benda on 29-30 May 2013 and 29 October 2013 by Honda/Takata.

14.

Honda/Takata at all times maintained that its safety restraint system, including the seatbelt, and the emergency locking retractor worked as designed and intended, that it was not defective and functioned properly, without any slack therein.

15.

Honda/Takata objected to the testing, surrogate fit-checks and measurements in various pleadings, took multiple depositions thereon, and continued to advance their defense theory of the case, that their and its safety systems functioned as intended and designed without any defects.

ARCCA0037

16.

A civil jury trial was conducted in the Allred case, commencing on 27 January 2014, and in which ARCCA experts Michael Markushewski and Brian Benda did function as testifying experts on 28th and 29th January 2014 respectively.

17.

On 31 January 2014 a Bossier Parish jury found the existence of no defect and returned a verdict in favor of defendants Honda/Takata, and for which a Judgment was entered on 19 February 2014, thereby rejecting ARCCA's experts' opinions, findings and conclusions.

18.

The Allred case was dismissed by Order of 6 May 2014.

17.

As is or may be appropriate, Plaintiff does incorporate herein in toto, the entire record in the Allred case.

18.

In connection with their role as testifying experts, ARCCA and its experts Michael Markushewski and Brian Benda did prepare and sign their respective Reports dated 29 May 2013 styled "Biomechanical Analysis Report" by Dr. Brian J. Benda and "Preliminary Analysis Report" by Michael L. Markushewski dated 28 May 2013, each of which was addressed to Plaintiff Burnett and which were filed into the record in the Allred proceeding, and which were in part the subject of deposition testimony as were their two [2] 'surrogate-fit checks' and of Motion practice, which purported to demonstrate based upon their independent examination and findings, the existence of a defective seatbelt/safety restraint system with resultant "slack"; and responsible for the fatal head injury received by Paul Day Allred, Jr., but which was rejected by the jury, upon information and belief, was made upon actionable errors committed by Defendants in performing services for which they were hired and which they failed to provide .

19.

Plaintiff shows that if no defect was present, that Defendants individually and collectively owed a duty to him to so advise him, which they failed to do.

20.

The Louisiana Supreme Court has held that testifying retained experts have no immunity from suit, whether under theories of malpractice liability, unjust enrichment, breach of contract, negligence, et al, and where the retained expert made errors in performing services by retained experts for which they were hired, including litigation services, formulating opinions, and recommendations, and giving testimony before or during trial, can be held liable and including but not limited to damages and professional negligence actions and/or for tort claims.

21.

More specifically, the Supreme Court stated, "...we hold that claims in connection with a retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity." Further, "an expert witness hired to perform litigation support services but who performs those services in a negligent

ARCCA0038

manner, cannot hide from civil liability to his client behind the shield of witness immunity." Marrogi vs. Howard, #2001-CQ-1106, 805 So.2d 1118 [La. 2002].

22.

Plaintiff shows that a letter agreement was entered on or about 13 April 2010, whereby ARCCA and its experts were retained and a retainer paid by Plaintiff. Said letter agreement provided in part that "Either party may suspend services or terminate the Contract at any time upon written notice to the other", said termination notice has been given by Plaintiff-Burnett.

23.

Plaintiff shows that the letter agreement fails to contain any post-termination survival provisions of any kind, nature and description, and that none therefor survive termination.

24.

Having come into the State of Louisiana to practice their trade-craft and profession, both physically on separate occasions, and via the internet solicitation, and by functioning as testifying experts at the trial, Defendant-ARCCA and its experts-Michael Markushewski and Brian Benda et al cannot now be heard to complain as to subject matter jurisdiction and personal jurisdiction over them as defendants herein in this Honorable Court.

25.

Plaintiff further pleads compensation and set-off as to any monies if any, determined to be owed by him to ARCCA, which is expressly denied, and to a full and complete accounting and strict proof thereof, including the reasonableness and benefit-value ratio thereof, as to any monies he paid, owed or may owe, and for the full refund of all monies paid to ARCCA et al, in addition to damages to be awarded herein to him after and upon trial hereof, together with interest and reasonable attorney fees, as appropriate.

26.

Plaintiff does hereby expressly reserve the right to supplement and amend this Petition as events, fact and circumstances arise.

WHEREFORE, PLAINTIFF-GERALD L. BURNETT, prays that after all due consideration, that there be judgment in his favor and against Defendants-ARCCA, Michael Markushewski and Brian Benda and such other responsible parties, in the full amount to be determined at trial thereby, for damages under any and all theories of recovery, and together with interest thereon, and to attorney fees, costs and expenses resultant therefrom, and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
P. Frey Morris
LSBA #28162
509 Milam Street
Shreveport, LA 71101
Phone: 318.221.1507
Fax: 318.221.4560

Clerk:  Please hold service pending notice

State of Louisiana

Parish of Caddo

### Affidavit of Verification and Correctness

BEFORE ME, the undersigned Notary Public, duly sworn and to me well known, came and appeared Gerald L. Burnett, a person of full age and majority, who did depose and state that he is the Plaintiff in the above styled and captioned matter, that he has read and reviewed this Petition and, that the contents hereof are true and correct to the best of his information, knowledge and belief.

_____
GERALD L. BURNETT

This done and signed before me, Notary Public, on this the _____ day of January 2015.

_____, Notary Public
My Commission expires:  at death.  SEAL:

B. TREY MORRIS
NOTARY PUBLIC
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE
NOTARY ID 85656

ARCCA0040

## VERIFICATION

I, Gerald L. Burnett, an adult individual, do hereby verify that subject to inadvertent or undiscovered errors, the averments in the foregoing document are true and correct to the best of my knowledge, information and belief.

I understand that false statements made in the foregoing document are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Gerald L. Burnett

Dated: *30 March 2015*

ARCCA0041

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552                                        Attorney for Defendant

ARCCA, INC.                         :   IN THE COURT OF COMMON
            Plaintiff              :   PLEAS OF BUCKS COUNTY
                                    :   PENNSYLVANIA
            v.                      :
                                    :   CIVIL ACTION - LAW
GERALD L. BURNETT                   :
            Defendant              :   No. 2015-00078

### CERTIFICATE OF SERVICE

I, William B. Callahan, do hereby certify that on this 31st day of March,
2015, I caused a true and correct copy of the foregoing *Preliminary Objections Of
Defendant, Gerald L. Burnett to Plaintiff's Complaint,* and *Entry of Appearance,* to
be served, via United States Mail, upon the following:

Steven H. Sailor, Esquire
PO Box 70
Newtown, PA 18940
Attorney for Plaintiff

LAW OFFICES OF
WILLIAM B. CALLAHAN

BY: _____
William B. Callahan

ARCCA0042

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY: William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA 19464
(484) 680-0552                                    Attorney for Defendant

ARCCA, INC.                          :   IN THE COURT OF COMMON PLEAS
       Plaintiff                      :   OF BUCKS COUNTY
                            :   PENNSYLVANIA
                            :
       v.                             :   CIVIL ACTION - LAW
                            :
GERALD L. BURNETT                    :
       Defendant                      :   No. 2015-00078

## PRAECIPE UNDER BUCKS COUNTY RULE OF CIVIL PROCEDURE 208.3(b)

TO THE PROTHONOTARY

     Please refer to the above-captioned matter to the assigned judge for disposition.

     Oral argument is ☐ is not ☐ requested.  (CHECK ONE)

     Matter for disposition:  Preliminary Objections of Defendant, Gerald Burnett

                         (signature)

                       William B. Callahan
                       (name)

                       82881
                       (Attorney I.D. #)

ARCCA0043

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552                                    Attorney for Defendant


ARCCA, INC.                        :    IN THE COURT OF COMMON PLEAS OF
       Plaintiff               :    BUCKS COUNTY PENNSYLVANIA
                                   :
       v.                    :    CIVIL ACTION - LAW
                                   :
GERALD L. BURNETT                  :    No. 2015-00078
       Defendant              :


## ORDER


AND NOW, this _____ day of _____, 2015, upon consideration of the Preliminary

Objections of the Defendant, and the Plaintiff's response in opposition thereto, it is hereby ORDERED

and DECREED that the preliminary objections are SUSTAINED, and it is FURTHER ORDERED that

Plaintiff's Complaint is DISMISSED WITH PREJUDICE.


                              BY THE COURT:


                              _____, J.

ARCCA0044

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552                                              Attorney for Defendant

ARCCA, INC.                              :    IN THE COURT OF COMMON PLEAS OF
        Plaintiff                      :    BUCKS COUNTY PENNSYLVANIA
                                       :
        v.                            :    CIVIL ACTION – LAW
                                       :
GERALD L. BURNETT                        :    No. 2015-00078
        Defendant                      :

### DEFENDANT GERALD L. BURNETT's
### MEMORANDUM OF LAW IN SUPPORT OF ITS PRELIMINARY
### OBJECTIONS TO PLAINTIFFS' COMPLAINT

#### I. Introduction

Plaintiff is attempting to characterize this case as a simple collections matter. In fact, that is a gross misstatement of the nature of this case. Central to this matter is the tortious conduct and malpractice of the Plaintiff, ARCCA, who perpetrated a fraud upon Defendant Burnett, and is currently trying to avoid returning to Louisiana to answer for its conduct. ARCCA should in the interest of justice, judicial economy and public policy be required to litigate its claims, and the claims against it, in Louisiana.

#### II.  Statement of Relevant Facts and Procedural Background

Defendant, Gerald L. Burnett ("Defendant"), is an attorney, licensed and practicing in the State of Louisiana.  Defendant is not licensed, nor does he practice, in the Commonwealth of Pennsylvania. Defendant maintains no offices in Pennsylvania, nor does he conduct business in Pennsylvania. Defendant's only contact with Pennsylvania was his retention of Plaintiff, allegedly a Pennsylvania corporation, as is more fully set forth hereinbelow.

In 2010, Defendant while in Louisiana, became aware of Plaintiff, ARCCA, Inc. ("Plaintiff"), via its web site and advertising solicitations, as a firm which provides expert testimony in various court cases and various litigation support services. Based on claims made

ARCCA0045

on Plaintiff's website, Defendant contacted Arcca and did thereafter retain Plaintiff to undertake a due diligence investigation including review of documents and thereafter to provide expert witnesses and litigation professional services including but not limited to inspections in Louisiana of a 1995 Honda Accord, and the preparation of Reports and support including trial testimony, in a suit then pending and being litigated by Defendant, entitled *Paul Day Allred, Sr. v. John Parker, et. al. (Honda/Takata)*. The case was a products liability lawsuit for the death of Paul Day Allred, Jr. central to which was the issue of the functioning of the Accord's restraint system, including the seatbelt and its component parts, such as the emergency locking retractor[1], and whether it was responsible for the decedent's death and/or enhanced injuries. The suit was litigated in Louisiana in the 26th Judicial District Court, under docket number 117886.

The case more specifically was based upon a motor vehicle accident in Louisiana in which a defective seat belt restraint system in a Honda motor vehicle, specifically the emergency locking retractor, which allowed Paul Day Allred, Jr., son of the Plaintiffs, to strike his head on the header/sun visor of the motor vehicle, resulting in his death from closed head trauma and brain herniation. Plaintiff's employees and experts were retained for the purpose of providing professional services, expert reports and trial testimony regarding defects in the emergency locking retractor of the seatbelt system under the Louisiana Products Liability Act. All of the services were under Plaintiff's sole direction, care, custody and control. Defendant provided Plaintiff all documents and medical records requested by them, as well as access to the subject 1995 Honda Accord.

The employees and experts from Plaintiff prepared expert reports, conducted surrogate tests on the restraint system on multiple occasions, performed inspections, were deposed twice, and gave trial testimony. Defendant Burnett completely relied upon Plaintiff's reports, tests and testimony, but due to avoidable deficiencies, miscalculations and errors in the findings, reports,

---

[1] An emergency locking retractor is supposed to lock and hold a seatbelt when it senses that the vehicle is stopping rapidly, such as in a collision.

ARCCA0046

and trial testimony , they were summarily rejected by the jury at trial, which resulted in a verdict for Honda/Takata, and against Defendant Burnett's clients.

Defendant has therefor filed a malpractice and tort action against Plaintiff ARCCA, and its two experts, which is now pending in the 26th Judicial District Court in Louisiana. A true and correct copy of the Petition filed in the tort action was attached to Burnett's Preliminary Objections as Exhibit "A". Subsequent thereto, Burnett did file his First Amended Petition, a copy of which is attached hereto as Exhibit "A". It is important to note that the pending Louisiana lawsuits are in tort and not in contract, for conduct and damages resultant in Louisiana.

ARCCA has also filed this action, alleging that Defendant has breached the terms and conditions of a 2010 engagement letter, and his obligations thereunder, by failing to pay monies owed to Plaintiff, which charges are disputed. ARCCA alleges that jurisdiction and venue in this court is proper, based on a forum selection clause within those terms and conditions of the 2010 Agreement. In taking that position, Plaintiff completely disregards the Louisiana action related to ARCCA's professional services liability, the reasons therefor and the actionable wrong committed in Louisiana.

ARCCA has filed an Answer to Defendant's Preliminary Objections. A review thereof reflects and confirms that ARCCA's sole legal position is simply that "It is specifically denied that the details of case are relevant to the defendant's Preliminary Objections as they relate to matters dehors the record". (Plaintiff's Answer, paragraphs 7, 9). Further, commenting on the Tort and Malpractice action in Louisiana, ARCCA says only that "It is specifically denied that the defendant's Louisiana negligence suit against the plaintif has any merit." (Plaintiff's Answer, paragraph 10). ARCCA states further that "By way of further denial, it is specifically denied that the Plaintiff's experts and employees committed a tort..." (Plaintiff's Answer, paragraph 29).

ARCCA0047

### III. Statement of Questions before the Court

A. Whether the Court of Common Pleas, Bucks County, is the Appropriate Venue for this Action.
Suggested Answer: No

B.
1. Whether the Court of Common Pleas, Bucks County, has, or should have, Jurisdiction over Defendant.
Suggested Answer: No

2. Whether the Court should Exercise Judicial Discretion and Defer to Louisiana Courts in this Case, Where the Central Issues Presented and the Tort Committed by ARCCA Occurred in Louisiana and Where Litigation is Presently Pending Addressing Same, Which is not a Breach of Contract Suit, Where the Court is Better Positioned to Address the Issues, Including Professional Services and Damages, and to Avoid Duplicative Parallel Litigation and Conflicting Results
Suggested Answer: Yes

C. Whether Plaintiff's Complaint Should be Dismissed for Plaintiff's Failure to Adhere to Pa.R.C.P. 1019(i).
Suggested Answer: Yes

D. Whether Plaintiff's Complaint Lacks the Requisite Specificity in its Claim for Damages
Suggested Answer: Yes

### IV.   ARGUMENT

A. **FIRST PRELIMINARY OBJECTION: IMPROPER VENUE, Pa.R.C.P. 1028(a)(1)**

As noted in his Preliminary Objections, Defendant acknowledges that while forum selection clauses are generally valid and enforceable in the Commonwealth of Pennsylvania, in certain cases, they are not immune from challenge.

A nonexclusive example is the recent decision of the United States Supreme Court which is instructive. In *Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. Of Texas*, 134 S.Ct. 568 (2013), the Court did note in federal cases, that "a valid forum selection clause should be given controlling weight in all but the most exceptional circumstances." *Id.* at 581, *citing, Stewart Organization, Inc. v. Ricoh Corp.* 487 U.S. 22, 33 (1988) (Kennedy, J. Concurring). However, the Court importantly noted that, at least in the federal system, courts may consider "public interest factors". *Id.,* at 582. Those "public interest factors" include "the

ARCCA0048

*1*

administrative difficulties flowing from court congestion" and "the local interest in having localized controversies decided at home." *Id.* at 581, n.6, *citing Piper Aircraft Co. v. Reyno*, 454 U. S. 235, 241, n. 6 (1981).

In this matter, a malpractice tort action, properly venued in Louisiana, is pending. (See: Original Petition and Amended Petition) That means, not just the possibility, but the certainty of parallel litigation, and the possibility of conflicting results. The Louisiana action is properly venued in Louisiana, because it is an action in tort, not in contract, and is not subject to the forum selection or choice of law clauses in Plaintiff's terms and conditions, because the alleged malpractice and tort of Plaintiffs occurred in Louisiana, and because most of the witnesses and jurors are located in Louisiana. This matter is most certainly much more than a simple contract claim by ARCCA.  It must be examined in the context of the whole case, including Plaintiff's tortious course of conduct and actions in Louisiana.

Contrary to Plaintiff's assertions, the "gist of the action" doctrine does not control in this matter. In a recent case, the Supreme Court of Pennsylvania held that an action in tort, in which a party to a contract had not just breached a contract, but committed a negligent act, then a suit on that negligent act would not be barred by the "gist of the action" doctrine. *Bruno v Erie Insurance Co.* J-23-2014; No. 25 WAP 2013 (Pa. 2014)

Further, the Louisiana Supreme Court, in response to a certified question from the United States Fifth Circuit Court of Appeals, rejected as did the US Court of Appeals, the Defendant expert witness's argument that Louisiana did not have jurisdiction, because the expert's work was done outside of Louisiana. *Maroggi v Howard;* 805 So.2d 1118, 1122-1123 (La.S.Ct, 2002). Certainly in Louisiana and within the jurisdiction of the USCA, Fifth Circuit, this is controlling. It is compelling for this Honorable Court to consider as well.

Given that at least several nonexclusive issues, including  [a], the quality of Plaintiff's services; [b] the reasonableness thereof; [c] a benefit analysis thereof; and [d] the quality of their performance, are central to both cases, there is a strong likelihood of parallel litigation in two

ARCCA0049

different states, and the possibility of differing results. Such circumstances are an unwanted and unnecessary waste of judicial resources, are contrary to the interests of judicial economy, and should be avoided if at all possible.

Moreover, the above issues regarding Plaintiff's services are clearly a "localized controversy", given the custom and tradition of the 26th Judicial District Court, and the specific methods and criteria it uses to set fee amounts for expert witnesses, and to adjust them. Different courts use different formulas for determining the compensation of expert witnesses, and a court in Bossier Parish Louisianna, is necessarily going to be different from a court in Bucks County Pennsylvania. Accordingly, the Louisiana Court should make the determination as to what Plaintiff is entitled to have earned, if any, as well as all other issues related and presented as a result thereof. The majority of Plaintiff's services, including all of those which Defendant alleges are tortious and constitute malpractice, and their consequences, were committed in Louisiana, for which the Louisiana courts are better situated based upon the tort having been committed in a Louisiana courtroom in the 26th Judicial District Court, Bossier Parish.

## B. SECOND PRELIMINARY OBJECTION: LACK OF PERSONAL JURISDICTION, Pa.R.C.P. 1028(a)(1).

### 1. This Court Lacks Jurisdiction

As was noted in the Preliminary Objections, Defendant acknowledges the existence of a forum selection clause in Plaintiff's Terms and Conditions. As was also noted in the Preliminary Objections, Plaintiff's experts and employees came to Louisiana to conduct inspections and to testify in a Louisiana courtroom.

Moreover, Plaintiff's experts and employees committed a tort in Louisiana inasmuch as they failed to use the requisite skill and care in rendering their litigation support services. Further, given that ARCCA and its two experts, came into the State of Louisiana and appeared and testified in open district court, they submitted to the jurisdiction and venue of Louisiana courts for all purposes, rights of action and causes of action, contained therein. They had no grant of immunity. This is precisely the same scenario that occurred in *Marrogi*, where the

ARCCA0050

expert witness lived in Florida, maintained an office in Florida, and conducted almost all of his calculations in Florida. *Id.,* at 1122. However, the Louisiana Supreme Court declined to review the 5th district court's affirmation of the Federal District Court's finding that the expert had acquiesced to venue and jurisdiction in Louisiana when he came into the State to render his professional services. *Id.,* at 1123, *citing, Maroggi v. Howard,* 248 F.3d 382 n.1 (5th Cir. 2001). The only difference between this matter and *Maroggi,* is that in this case, ARCCA performed substantial professional services actually in Louisiana. The reasoning is compelling and controlling.

In Pennsylvania, a person or entity is subject to the jurisdiction of the Commonwealth if that person or entity causes "harm or tortious injury by an act or omission in this Commonwealth." 42 P.C.S. § 5322(a)(3). *See Also, Kubik v Letteri,* 532 Pa. 10; 614 A.2d 1110 (Pa. 1992). The State of Louisiana has also adopted specific laws dealing with jurisdiction and venue. LSA-R.S. 13:3201 provides in part:

> "A. A court may exercise jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> [1] Transacting any business in this State.
>
> [2] Contracting to supply services or things in this State.
>
> [3] Causing injury or damage in this State by an offense or quasi offense committed through an act or omission in this State.
>
> [4] Causing injury or damage in this State by an offense or quasi offense committed through an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed by the nonresident while he resided in or was in this State.

There is no question that ARCCA and its employees have performed professional services in Louisiana including court testimony and the issuance of opinions and reports. It is also Defendant's assertion that ARCCA caused damage to Defendant, through its tortious acts and omissions.

ARCCA0051

Defendant respectfully asserts, that by submitting itself to the jurisdiction and venue of Louisiana, Plaintiff waived the forum selection clause, and thereby modified the terms and conditions of the parties' agreement. Absent the presence of a forum selection clause, this Court has no basis for jurisdiction. As was noted, Mr. Burnett is a resident of Louisiana. Mr Burnett's law practice is in Louisiana. Aside from visiting Pennsylvania a few times over the course of his life, Mr. Burnett has absolutely no connection with this Commonwealth, let alone the "continuous and substantial" business required under Pennsylvania law. *Beatrice Foods Company v. Proctor & Schwartz, Inc.*, 309 Pa. Super 351, 358; 455 A.2d 646, 649 (1982).

## 2.   For Reasons of Public Policy, This Court should Exercise its Judicial Discretion and Defer to Louisiana Courts in this Case

Defendant Burnett respectfully submits that ARCCA has completely mischaracterized and misstated the dispute between these parties. It is substantially more than a 'failure to pay' scenario, but rather involves substantive legal issues of tort and malpractice, which are reflected in the action pending in Louisiana, for which Louisiana courts have personal jurisdiction and venue.

Accordingly, more is presented for your Honor's consideration than simply the 'four corners of the contract', even assuming that a contract exists, and has not been modified or waived. Professional services, whether legal, medical, architectural or otherwise, must meet and satisfy certain standards. *See, Varner v. Classic Communities Corp.*, 890 A.2d 1068, 1074 (Pa. Super. 2006) Their services are also reviewable by a court.  No professional service provider should be allowed to come into a 'foreign' state, render professional services that are incompetent and which constitute malpractice, then escape back to their 'home' state, and thereby avoid the grasp of the court in which the tort/malpractice was perpetrated.  The provisions of the above cited state laws expressly provide for jurisdiction by Louisiana courts over nonresidents, such as ARCCA, who have committed a tort in the state. *See, LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 559 Pa. 297; 740 A.2d 186 (1999). *See Also, Marrogi*, 805 So.2d 1132-1133. There are not and should not be any such 'safe havens', and certainly they are

ARCCA0052

not created by a letter agreement to provide such future professional services, when said causes of action for tortious conduct and malpractice manifest themselves in Louisiana. Solicitation of the public by ARCCA seeking clients, via use of the internet in presumably all fifty states, including Louisiana, is an appropriate factor to be considered. The instant matter was not a construction contract or an insurance contract, or a UCC transaction, but rather a professional services agreement involving experts and litigation support services, in litigation which was known to be in Louisiana. ARCCA and its co-defendants, came into the State of Louisiana on multiple occasions, rendered professional services in Louisiana and should not be heard to now complain that it is subject to personal jurisdiction in that state. The shield of Pennsylvania is not a defense to a Louisiana legal proceeding and such an argument, should not be countenanced in any manner. The circumstances mandate, at an absolute minimum, a judicial consideration of factors beyond the four corners of the letter agreement, including ARCCA's tortious conduct. We do not live in a vacuum in today's world and ARCCA must be held accountable for its solicitation of a Louisiana resident and subsequent actionable conduct. Nor is this a "race to the courthouse" scenario, because Pennsylvania payment claims are logically included within the Louisiana proceeding, whereas Louisiana tort and malpractice claims are not included in this Pennsylvania action.

In its Answer, ARCCA states, "By way of further answering, ARCCA's clients are located all over the country. When one of ARCCA's clients such as the Defendant, fails or refuses to pay bills for ARCCA's services and expenses, the Contract provides that the Bucks County, Pennsylvania Court of Common Pleas is the venue where the dispute or any other dispute related to the contracted services will be resolved." Respectfully, that is not legally the case, as this matter involves far more than a failure or refusal to pay.

Burnett clearly relied in a material way upon ARCCA's representations to his detriment. ARCCA does not have carte blanche to bill nor did Burnett waive objections thereto. But a setoff for the amount of tort/malpractice damages in Louisiana is a most important consideration for

ARCCA0053

this Honorable Court. When representations are made, both orally in court testimony and/or depositions and in writings, and as in *Marrogi*, errors and miscalculations are made, and there is material reliance to one's detriment, the issue of fraud is presented, and that issue is now pending in a Louisiana court. There are real consequences to conduct such as that of ARCCA's, and Louisiana is where they should be held accountable, in a singular legal proceeding. It is the better use of judicial recourses, and best serves the interest of justice.

C. **THIRD PRELIMINARY OBJECTION: FAILURE TO CONFORM TO LAW OR RULE OF COURT, Pa.R.C.P. 1028(a)(2).**

Pa.R.C.P. 1019(i) provides in part that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof...". Additionally, "[a] complaint 'must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence.'" *Discover Bank v. Stucka*, 2011 Pa. Super 24; 33 A.2d 82, 86-87 (2011) *citing, Weiss v. Equibank*, 313 Pa. Super 446; 460 A.2d 271, 274-275 (1983)

Plaintiff alleges, in paragraph 6 of its Complaint, that "plaintiff provided the defendant with professional litigation support services with regard to the defendant's prosecution of the Allred v Honda/Takata-products case." Plaintiff also alleges, in paragraph 7, that "plaintiff billed the defendant a total of $227,409.14."

However, Plaintiff has attached none of the actual billing statements nor support therefor, for any dollar amount billed, nor required authorizations for same signed by Defendant, as was Plaintiff's practice, nor work schedules/calendars for ARCCA experts et al, that it allegedly bases its claims upon and for which it allegedly billed/presented Defendant with. The only writing attached by Plaintiff to its Complaint is a skeletal summary of the bills allegedly sent to defendant. There is no indication of what "professional litigation support services" were performed or when they were performed, or by whom, nor when the hourly billing rate was increased or otherwise support and details therefor.

ARCCA0054

The Complaint on its face therefore fails to conform to Pa.R.C.P. 1019(i), inasmuch as Plaintiff has failed to attach writings showing that it is the holder of an account upon which Defendant owes money, and the details supporting that claim.  The attachment does not provide for adjustments made for services performed by ARCCA and its experts for other parties during the relevant time line, nor does it provide for adjustments made for 'point-to-point' standard fees for travel, airport, or taxis and rental cars, No such accounting has ever been provided.

Plaintiff wants $227,409.14 from Defendant. Plaintiff should at least disclose why they want it, how they got to that number and their justification for that number.

### D. FOURTH PRELIMINARY OBJECTION: INSUFFICIENT SPECIFICITY OF A PLEADING, Pa.R.C.P. 1028(a)(3)

As noted above, Plaintiff alleges, in paragraphs 6 and 7 of its Complaint, that "plaintiff provided the defendant with professional litigation support services with regard to the defendant's prosecution of the Allred v Honda/Takata-products case,", and "plaintiff billed the defendant a total of $227,409.14."

However, as has also been noted, Plaintiff has attached none of the actual billing statements nor support therefor, for any dollar amount billed, nor required authorizations for same signed by Defendant, as was Plaintiff's practice, nor work schedules/calendars for ARCCA experts et al, that it allegedly upon which it bases its clams and for which it allegedly billed/presented Defendant with. The only writing attached by Plaintiff to its Complaint is a skeletal summary of the bills allegedly sent to defendant. There is no indication of what "professional litigation support services" were performed or when they were performed, or by whom, nor when the hourly billing rate was increased or otherwise support and details therefor.

Pa.R.C.P. 1028(a)(3) permits preliminary objections for "insufficient specificity in a pleading". The inquiry when a preliminary objection is raised under Rule 1028(a)(3), is similar to an analysis under Rule 1028(a)(2): "whether the complaint is sufficiently clear to enable the defendant to prepare his defense," or "whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may

know without question upon what grounds to make his defense." *Rambo v. Greene, 906* A.2d 1232, 1236 (Pa. Super 2006).

In this instance, Plaintiff offers nothing which would allow Defendant to assess the propriety of Plaintiff's charges, the reasonableness, or the basis for the charges. Because Plaintiff has failed to attach to its Complaint a detailed description of the services it performed, the Complaint lacks the requisite specificity, and should be dismissed.

### V. CONCLUSION

For all of the foregoing reasons, Defendant, Gerald Burnett's Preliminary Objections should be sustained, and Plaintiff's Complaint should be dismissed with prejudice.

Respectfully Submitted,

**LAW OFFICES OF**
**WILLIAM B. CALLAHAN**
1800 East High Street, Suite 150
Pottstown, PA 19464
Telephone: 484-680-0552
Facsimile: 610-906-1575

BY: _____
William B. Callahan
Attorney for Gerald Burnett

ARCCA0056

# EXHIBIT A

ARCCA0057

GERALD L. BURNETT                          DOCKET # 146202

VS.                                        26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED ET AL                   BOSSIER PARISH, LOUISIANA


## PLAINTIFF'S FIRST AMENDED PETITION

Now into court through undersigned counsel, comes the Plaintiff herein, Gerald L. Burnett, who with respect does file "Plaintiff's First Amended Petition" herein as follows, to-wit:

1.

Plaintiff does restate, reurge, reiterate, and incorporate in toto herein, in any and all regards, the Original Petition filed herein including but not limited to any and all contents thereof, a copy of which is attached hereto as Exhibit "A".

2.

Plaintiff shows that the Defendants have not answered the original Petition as of the date of filing of this First Amended Petition, and that under the express provisions of LSA-CC Art. 1151 he may file this amended petition as is provided therein that "A plaintiff may amend his petition without leave of court at any time before the answer thereto is served".

3.

Plaintiff shows that the original Defendants herein are ARCCA Incorporated, Michael L. Markushewski and Dr. Brian J. Benda, who are named herein as defendants in this First Amended Petition, and who are outside the State of Louisiana and who are within the State of Pennsylvania.

4.

Plaintiff shows that in the original Petition, that in paragraph 5 thereof that it is shown that he was counsel of Record in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and Jimmy Lou Reeves Allred vs. John Parker et al [Honda/Takata], Docket #117886; and further that in paragraph 17 that it was provided and pled,

"As is or may be appropriate, Plaintiff does incorporate herein in toto, the entire record in the Allred case".

5.

Plaintiff shows that he does amend the original petition to expressly incorporate herein in toto the entire record in the Allred case, #117886.

F I L E D

APR -8 2015

JULIE S. SMITH
DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

ARCCA0058

6.

Plaintiff shows that service of citation has been achieved upon the three [3] Defendants herein as is shown more fully by Plaintiff's pleading herein styled "Notice of Louisiana Long Arm Jurisdiction Service of Process and Filing of the Affidavit of the Person Performing Said Function" and no answer or appearance by Defendants has been filed herein.

7.

And now amending the original petition filed herein, Plaintiff shows that the amendment[s] are made thereto as follows:

**************

"27.

Plaintiff shows that as the original Petition states and as the Allred record demonstrates, that Honda/Takata's counsel deposed Defendants herein on: two [2] separate occasions, [a] the first deposition of 29-30 May 2013 concerning ARCCA's two [2] Reports dated 28 May 2013 and 29 May 2013 addressed to Plaintiff Gerald L. Burnett and. ARCCA's first surrogate fit check of 18 May 2013; and [b] the court having granted a continuance and thereafter reset the civil jury trial, the second deposition of Defendants was taken on 29 October 2013 concerning an ARCCA second surrogate fit-check of 29 August 2013.

"28.

Plaintiff shows that the Allred Defendants [Honda/Takata] did through its counsel and experts, challenge and object to the ARCCA Reports, surrogate fit-checks, opinions and conclusions that seatbelt slack was present and further, the Allred Defendants [Honda/Takata] did show that no slack was present, due to errors made by ARCCA, Markushewski and Benda in their calculation mismeasurements and that said errors were shown and demonstrated by the findings of and confirmed by Allred-Honda/Experts' testing, who further demonstrated the absence of seatbelt slack in the Allred vehicle.

"29.

More specifically and non-exclusively, Plaintiff shows that the Allred-Defendants [Honda/Takata] did file on or about 13 June 2013, its pleading styled "Defendants' Supplemental Memorandum In Support of Motion in Limine to Exclude Plaintiff's Surrogate Testing", and which included their experts testing [Dr. McNish], as well as his 'recreation of the ARCCA surrogate fit check', and included "Exhibits "A-T", a copy of which is attached hereto and incorporated herein by reference in all regards herein as Burnett's Exhibit "B".

"30.

Plaintiff shows that Allred-Defendants stated,
    "The above photographs show the identical excess "slack" shown in Plaintiff's surrogate study and conclusively establish that the excess slack was generated as a result of the incorrect measurement of the approximately 64.5 inches of webbing from the top of the sleeve rather than from the outboard anchor point, resulting in an additional 8-9 inches of webbing not present at the accident scene." [CF attached pg. 11 to Exhibit "B"

ARCCA0059

"31.

Plaintiff shows further that as shown by Exhibit "B" that Allred-Defendants and their experts stated,

"There can be no credible argument but that Plaintiffs' expert Mr. Markushewski and Dr. Benda utilized the wrong measurement in their May 17 surrogate work. They measured 64.5 inches of webbing from the top of the 9 inch sleeve to the extrication cut instead of 57 inches of webbing from the top of the 9 inch sleeve to the extrication cut. The result is an erroneous addition of 8-9 inches of "slack" that was not present in this accident. Not surprisingly, when the proper undisputed measurements are utilized and appropriately documented on the same size surrogate used by Plaintiff [sic Allred] the belt fits snugly and demonstrates no excess webbing or slack as was also seen in Markushewski's initial May 2010 fit check. See Exhibits D and E,

"The flaw in Plaintiff's surrogate work is readily understood and observed. It is consistent with the Markushewski's earlier shifting from one reference point [the top of the sleeve] in his first inspection in May 2010 to another reference point [the end of the webbing at the outboard anchor] in his second inspection in November 2011. Markushewski erroneously used the 64.5 inch measurement from the second inspection and the top of the sleeve reference point from the first inspection, resulting in a crucial and outcome determinative fatal mistake. This flawed measurement forms the entire foundation for Plaintiff's defect theory in this matter. Absent this flawed surrogate study, there is no evidence to support Plaintiff's unsupportable theory that there was 8-9 inches of excess webbing or slack in Mr. Allred's belt during the crash that caused his fatal injuries. To the contrary, the only credible evidence is that there was no excess slack and if Plaintiff had used the correct and undisputed measurement, his surrogate study would have reflected this undeniable fact."

"III.  Conclusion

Plaintiffs' expert's clearly erroneous measurement and failure to document his surrogate study renders the study irrelevant, unreliable, and inadmissible. For these reasons, as well as those previously identified in Defendants' initial motion, Defendants respectfully request that this Court exclude all evidence of Plaintiff's surrogate study because it has no probative value, is unreliable, was not conducted under conditions substantially similar to those of the subject accident, and is unfairly prejudicial." Exhibit "B" @ pg. 12,

"32.

Plaintiff-Burnett shows that both fraud and misrepresentation were additionally committed by Defendants-ARCCA, Markushewski and Benda, in addition to the actionable errors referenced in the original Petition, and by their failure to provide competent litigation support services, and including formulating opinions and recommendations and giving testimony before and/or during trial, they should be held liable to include but not limited to damages, tort, attorney fees, tort claims, et.al.

"33.

Plaintiff-Burnett shows that Louisiana civil law fraud under LSA-CC Art. 1953 that was perpetrated by Defendants-ARCCA, Markushewski and Benda upon him, in their misrepresentation and/or suppression of the truth, and/or their silence and inaction, as is more fully shown by the civil jury verdict and the studies, etc. by Allred-Defendants-Honda/Takata

ARCCA0060

that demonstrate same. As a matter of Louisiana law, under LSA-CC 1957, "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."

"34.

Plaintiff-Burnett shows that the opinions and testimony of Defendants-ARCCA, Markushewski and Benda were rejected by the Bossier Parish 26th JDC civil jury. Further, they were the opinions, representations, findings and contents of which they sought to substantiate with their second surrogate fit-check of 29 August 2013 and for which they purported 'confirmed' the first surrogate fit-check of 8 May 2013, both of which repeated the errors, miscalculations, fraud and contents of Defendants.

"35.

Defendants-ARCCA, Markushewski and Benda sought to obtain, achieve and benefit from billings for professional expert witness services and litigation support services in an amount of approximately $247,000 to which they are not entitled and which should be forfeited set-aside and vacated in favor of Plaintiff, in addition to such other damages relief and recovery sought herein.

WHEREFORE Plaintiff-Burnett prays that this First Amended Petition be filed herein, and that after all due delays, consideration and legal proceedings, that there be judgment in his favor and against Defendants-ARCCA Incorporated, Michael L. Markushewski and Brian J. Benda, and such other responsible parties, in the full amount to be determined at trial hereof, for damages, under any and all theories of recovery, interest thereon and for reasonable attorney fees, costs and expenses resultant therefrom and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
B. Trey Morris
LSBA #28162
509 Milam Street
Shreveport, La, 71101
Phone: 318.221.1507
FAX: 318.221.4560

CLERK:
Please issue citation as per record:

ARCCA Incorporated
2288 Second Street Pike
Newtown, PA 18940

ARCCA
P O Box 78
Penns Park, PA 18943-0078

Michael L. Markushewski
2288 Second Street Pike
Newtown, PA 18940

ARCCA0061

Michael Markushewski
P O Box 78
Penns Park, PA  18943-0078


Dr. Brian J. Benda
2288 Second Street Pike
Newtown, PA  18940

Dr. Brian J. Benda
P O Box 78
Penns Park, PA  18943-0078

ARCCA0062

STATE OF LOUISIANA
PARISH OF CADDO

AFFIDAVIT OF VERIFICATION AND CORRECTNESS

BEFORE ME, the undersigned Notary Public, duly sworn and to me well known, came and appeared Gerald L. Burnett, a person of full age and majority, who did depose and state that he is the Plaintiff in the above styled and captioned matter, that he has read and reviewed this Petition and, that the contents hereof are true and correct to the best of his information, knowledge and belief.

_____
GERALD L. BURNETT

Thus done and signed before me, Notary Public, on this the ____ day of April 2015.

_____, Notary Public
My Commission expires: at death. SEAL:

La Bar 28142

FILED

APR ~9 2015

DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

ARCCA0063

FILED AND RECORDED.
BOSSIER PARISH, LA          146202

2015 JAN 26  P 12: 33

*Christina J. Johnston*

CLERK & EX-OFFICIO
RECORDER

GERALD L. BURNETT          DOCKET NUMBER: _____

VS.                        26TH JUDICIAL DISTRICT COURT

ARCCA INCORPORATED, ET AL          BOSSIER PARISH, LOUISIANA

DIV. E - NERREN
Assigned _____

## PETITION

The Petition of Gerald L. Burnett [hereinafter referred to as Plaintiff and/or as Burnett],

a resident and domiciliary of the State of Louisiana, who, with respect shows as follows, to-wit:

1.

The Defendants herein are:

[A] ARCCA INCORPORATED, a foreign corporation, who upon information and belief has done and is doing business within the State of Louisiana and has over a course of years, such as to grant long-arm jurisdiction over the corporation, its officers and employees, and whose state of incorporation is presently unknown, but which may possibly be the State of Pennsylvania; and

[B] MICHAEL L. MARKUSHEWSKI, a person of the full age of majority and possibly a resident of the State of Pennsylvania, whose address is presently unknown; and

[C] DR. BRIAN J. BENDA, a person of the full age of majority and possibly a resident of the State of Pennsylvania, whose address is presently unknown; and

[D] "ABC" insurance company, or nominee, who upon information and belief issued and/or caused to be issued a policy of insurance, who will be named herein with specificity upon discovery of the name and policy information related thereto, and who are for purposes hereof referred as "Insurance Company[s]"; and

[E] Such other and additional parties, individuals, companies, corporations, limited liability companies, partnerships et al, as discovery discloses are proper party defendants, and who are for purposes hereof referred to as "John Doe[s]"; and

[F] Such other parties against whom causes and/or rights of action may be asserted if any, as become known to Plaintiff, who does expressly reserve the right to amend and name same herein as proper named party Defendant[s], and/or otherwise plead thereto.



FILED

JAN 26 2015

DEPUTY CLERK

ARCCA0064

All of whom by virtue of doing business within the State of Louisiana, at multiple points in time, when not authorized for same, may be served by service of process upon the Louisiana Secretary of State and/or by service of process under the Louisiana long-arm statute, as such available information as to appropriate addresses becomes available to Plaintiff.

2.

Upon information and belief, at all times relevant hereto, Defendants were acting within the course and scope of the employment by Defendant-ARCCA and under the direct authority, supervision and direction of Alan Cantor, who may be included herein as a named party Defendant, upon completion of discovery herein and for which said reservation and notice is given.

3.

Plaintiff shows that upon information and belief, that Defendant-ARCCA represents, advertises and provides professional services via itself and/or its employees, that include but is not limited to litigation services and expert[s] services within various areas of purported expertise, including seat belt and restraint systems for automobiles, biomechanics, structural and engineering related services and who solely upon their own conduct necessary investigations, inspections and investigative engineering functions, for purposes of being the foundation for and the basis of their Reports, expert opinions and trial testimony.

4.

More specifically, via the internet, a website [hereinafter sometimes referred to for reference purposes as 'ARCCA-website aka arcca.com'], which is maintained such that apparently it is available and accessible to anyone desiring to gain access thereto, from any location within the United States of America and possible other countries, with internet access, and which based upon its content and marketing thereof, including but not limited to parties and persons within the State of Louisiana, it is seeking commercial and proprietary gain from business resulting therefrom as is set forth herein as it purported to provide. Said website is apparently owned, operated and managed by ARCCA's agents, representatives and possibly employees, whose names, addresses and relevant information is unknown to Plaintiff at this time.

5.

Plaintiff was counsel for petitioners in the 26th JDC legal proceeding styled "Paul Day Allred, Sr. and Jimmy Lou Reeves Allred vs. John Parker et al [Honda/Takata]", docket # 117886, which was a products liability lawsuit, resulting from the death of their child in a motor vehicle accident in Bossier City, Bossier Parish, Louisiana, based upon a defective seatbelt system, safety restraint system, and the existence of 9-10 inches of seatbelt webbing slack resultant from the defective seatbelt safety system and specifically the emergency locking retractor, which enabled Paul Day Allred, Jr. to strike his head and receive a fatal head injury, based upon what Defendants herein advised Plaintiff and their Report, testimony and position herein.

6.

Burnett learned of Defendant-ARCCA and its website, the contents thereof and contacted ARCCA.

7.

A review of the ARCCA website reflects that they have testified in over forty-five [45] states, over 1000 times, by many of their experts, and which they designate as "ARCCA

ARCCA0065

Advantage: Experience, Service, Expertise and Credibility" and for which they provide same, as is more fully referenced therein, and for which they state and represent that ARCCA and their experts can perform their litigation role, preparation of expert reports, depositions, and trial testimony, which they did for Plaintiff, as will be set forth herein. ARCCA and its experts have participated and appeared in other Louisiana court cases upon information and belief.

8.

On or about 18 May 2010, ARCCA expert, Michael Markushewski performed in Bossier Parish, Louisiana, his and ARCCA's initial incident vehicle inspection, on the subject Alfred's 1995 Honda Accord which had been secured by the Bossier City Police Department at its Impound Yard after the motor vehicle accident, and upon release to Plaintiff, was immediately secured and stored inside a storage facility unit, where it has remained, in Bossier Parish, Louisiana.

9.

Thereafter, a Joint Restraint System removal of the driver's side seat belt assembly including the seat belt and Emergency Locking Retractor, etc. was conducted on or about 19 July 2011 by ARCCA Expert Michael Markushewski and Honda/Takata's expert, under agreed protocol, in Bossier Parish, Louisiana.

10.

An Agreed Joint Laboratory Inspection was conducted by ARCCA Expert Michael Markushewski and Honda/Takata's expert on or about 16 November 2011 upon the removed seat belt assembly and including specifically the seatbelt webbing and the Emergency Locking Retractor.

11.

ARCCA expert Dr. Brian Benda conducted an inspection of the Alfred 1995 Honda Accord on or about 8 May 2013 in Bossier Parish, Louisiana.

12.

ARCCA and its experts conducted what they reference as a 'surrogate fit-check' by Michael Markushewski and Brian Benda on 18 May 2013 and a subsequent surrogate fit check on 29 August 2013

13.

Two [2] depositions [video and/or live] were conducted of ARCCA experts Michael Markushewski and Brian Benda on 29-30 May 2013 and 29 October 2013 by Honda/Takata.

14.

Honda/Takata at all times maintained that its safety restraint system, including the seatbelt, and the emergency locking retractor worked as designed and intended, that it was not defective and functioned properly, without any slack therein.

15.

Honda/Takata objected to the testing, surrogate fit-checks and measurements in various pleadings, took multiple depositions thereon, and continued to advance their defense theory of the case, that their and its safety systems functioned as intended and designed without any defects.

ARCCA0066

16.

A civil jury trial was conducted in the Allred case commencing on 27 January 2014, and in which ARCCA experts Michael Markushewski and Brian Benda did function as testifying experts on 28th and 29th January 2014 respectively.

17.

On 31 January 2014 a Bossier Parish jury found the existence of no defect and returned verdict in favor of defendants-Honda/Takata, and for which a Judgment was entered on 19 February 2014, thereby rejecting ARCCA's experts' opinions, findings and conclusions.

18.

The Allred case was dismissed by Order of 6 May 2014.

17.

As is or may be appropriate, Plaintiff does incorporate herein in toto, the entire record in the Allred case.

18.

In connection with their role as testifying experts, ARCCA and its experts-Michael Markushewski and Brian Benda did prepare and sign their respective Reports dated 29 May 2013 styled "Biomechanical Analysis Report" by Dr. Brian J. Benda and "Preliminary Analysis Report" by Michael L. Markushewski dated 28 May 2013, each of which was addressed to Plaintiff-Burnett and which were filed into the record in the Allred proceeding, and which were in part the subject of deposition testimony as were their two [2] 'surrogate-fit checks' and of Motion practice, which purported to demonstrate based upon their independent examination and findings, the existence of a defective seatbelt/safety restraint system with resultant "slack"; and responsible for the fatal head injury received by Paul Day Allred, Jr., but which was rejected by the jury, upon information and belief, was made upon actionable errors committed by Defendants in performing services for which they were hired and which they failed to provide .

19.

Plaintiff shows that if no defect was present, that Defendants individually and collectively owed a duty to him to so advise him, which they failed to do.

20.

The Louisiana Supreme Court has held that testifying retained experts have no immunity from suit, whether under theories of malpractice liability, unjust enrichment, breach of contract, negligence, et al, and where the retained expert made errors in performing services by retained experts for which they were hired, including litigation services, formulating opinions, and recommendations, and giving testimony before or during trial can be held liable and including but not limited to damages and professional negligence actions and/or for tort claims.

21.

More specifically, the Supreme Court stated, "...we hold that claims in connection with retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity." Further, "an expert witness hired to perform litigation support services but who performs those services in a negligent

ARCCA0067

manner, cannot hide from civil liability to his client behind the shield of witness immunity." Marrogi vs. Howard, #2001-CQ-4106, 805 So.2d 1118 [La. 2002].

22.

Plaintiff shows that a letter agreement was entered on or about 13 April 2010, whereby ARCCA and its experts were retained and a retainer paid by Plaintiff. Said letter agreement provided in part that "Either party may suspend services or terminate the Contract at any time upon written notice to the other", said termination notice has been given by Plaintiff-Burnett.

23.

Plaintiff shows that the letter agreement fails to contain any post-termination survival provisions of any kind, nature and description, and that none thereof survive termination

24.

Having come into the State of Louisiana to practice their trade-craft and profession, both physically on separate occasions, and via the internet solicitation, and by functioning as testifying experts at the trial, Defendant-ARCCA and its experts-Michael Markushewski and Brian Benda et al cannot now be heard to complain as to subject matter jurisdiction and personal jurisdiction over them as defendants herein in this Honorable Court.

25.

Plaintiff further pleads compensation and set-off as to any monies if any, determined to be owed by him to ARCCA, which is expressly denied, and to a full and complete accounting and strict proof thereof, including the reasonableness and benefit-value ratio thereof, as to any monies he paid, owed or may owe, and for the full refund of all monie paid to ARCCA et al, in addition to damages to be awarded herein to him after and upon trial hereof, together with interest and reasonable attorney fees, as appropriate.

26.

Plaintiff does hereby expressly reserve the right to supplement and amend this Petition a events, fact and circumstances arise.

WHEREFORE, PLAINTIFF-GERALD L. BURNETT, prays that after all due consideration, that there be judgment in his favor and against-Defendants-ARCCA, Michael Markushewski and Brian Benda and such other responsible parties, in the full amount to be determined at trial thereby, for damages under any and all theories of recovery, and together with interest thereon, and to attorney fees, costs and expenses resultant therefrom, and for such other and further and additional relief to which he is or may be entitled.

Simmons, Morris & Carroll, LLC

By: _____
P. Z. Zey Morris
LSBA # 28162
509 Milam Street
Shreveport, LA 71101
Phone: 318.221.1507
Fax: 318.221.4560

Clerk: Please hold service pending notice

ARCCA0068

State of Louisiana

Parish of Caddo

### Affidavit of Verification and Correctness

BEFORE ME, the undersigned Notary Public, duly sworn and to me well known, came and appeared Gerald L. Burnett, a person of full age and majority, who did depose and state that he is the Plaintiff in the above styled and captioned matter, that he has read and reviewed this Petition and, that the contents hereof are true and correct to the best of his information, knowledge and belief.

GERALD L. BURNETT

Thus done and signed before me, Notary Public, on this the 20th day of January 2015.

_____, Notary Public

My Commission expires: at death. SEAL:

D. TREY MORRIS
NOTARY PUBLIC
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE

ARCCA0069

26TH JUDICIAL DISTRICT COURT FOR THE PARISH OF BOSSIER

STATE OF LOUISIANA

DOCKET NO. 117886                                   DIVISION: "F"

PAUL DAY ALLRED, SR. and JIMMY LOU REEVES ALLRED

VERSUS

JOHN PARKER ET AL

FILED: _____

_____
DEPUTY CLERK

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S SURROGATE TESTING

### I.   INTRODUCTION

Defendants submit the following supplemental memorandum in support of their Motion *in Limine* filed May 31, 2013, to exclude all testimony, opinions, references, photographs, and other evidence relating to surrogate testing performed by Plaintiffs' experts Michael Markushewski and Dr. Brian Benda.  This testing is inadmissible because it is based upon erroneous measurements that render the outcome upon which Plaintiffs' experts rely to support their allegations of defect and causation meaningless and irrelevant. LSA—C.E. art. 401.

As discussed in Defendants' initial motion, Plaintiff asserts that the seatbelt in the Honda Accord driven by Mr. Allred is unreasonably dangerous because the retractor failed during the crash. Specifically, Plaintiff alleges that the retractor failed to lock in a timely manner allowing eight to nine inches of excess webbing or "payout" which permitted Mr. Allred to move forward within the vehicle ultimately striking the sun visor sustaining his fatal head injuries. Claims of excessive payout or excursion are not uncommon in automotive product liability claims. However, this case is somewhat unusual because there is no dispute as to the amount of webbing extended during the crash.  The parties later held a joint inspection of the seat belt system wherein they removed the webbing from the retractor and measured it and determined that approximately 91 inches of webbing (as measured from the end of the belt at the outboard anchor to the mouth of the retractor) was extended out of the retractor. This measurement was documented by undisputed evidence of a mark in the webbing made by a feature within the

1


ARCCA0070

retractor known as a "web grabber." *See* Plaintiff's photographs below, 11/16/2011, attached as Exhibits A and B.



Web Grabber Mark



9 Inches

Top of Plastic Sleeve

Plastic Sleeve

It is undisputed that the locking of the retractor due to the crash damage "froze" the webbing from the accident in place so this approximately 91 inches of payout measured at the November 2011 inspection is the same amount of webbing that was available to Mr. Allred during the crash. The parties further agree that the webbing was cut during the extrication process of the decedent after the crash and that this cut was made to the webbing approximately 64.5 inches from the end of the belt at the outboard anchor (when measured as shown above) *See* Plaintiff's photograph below, 11/16/2011, attached as Exhibit C.

2

ARCCA0071



The only dispute in this case – the outcome determinative dispute upon which Plaintiff's entire theory of liability rests – is whether the 91 inches of total webbing payout (or 64.5 inches of webbing payout from the end of the belt at the outboard anchor to the extrication cut) is evidence of a failure of the seatbelt retractor that allowed excess webbing to spoolout and the decedent to move forward and strike the sun visor.[1] In other words, does this undisputed measurement of webbing result in excess slack in the belt or a good fit for Mr. Allred.

An accepted methodology for evaluating whether the amount of webbing available in a crash is reasonable or excessive is with a surrogate study. Both sides conducted such studies. A surrogate is used to determine whether or not the amount of webbing—in this case that the parties agree was present at the time of the crash—when fitted onto the surrogate in an exemplar vehicle, would result in excess webbing that could allow unreasonable excursion. At his deposition on May 29, Plaintiff's expert Mr. Markushewski relied upon a surrogate study or "fit check" that he and another Plaintiff's expert, Dr. Benda, conducted on May 17, 2013, as evidence that there was eight to nine inches of "slack" in Mr. Allred's belt at the end of the crash. Plaintiff relies upon this "slack" as evidence of defect and causation in this case.

A closer examination of the May 17 surrogate work and the accompanying file materials however, reveals a glaring measurement error that results in what is clearly a patently false result upon which Plaintiff's experts rely. This error is not immediately apparent because Plaintiff's experts intentionally chose not to document with photographs or video measurements of the amount of belt webbing extended in the surrogate study. However, a replication of the study by

---

[1] Honda disputes that Mr. Allred moved forward and hit the sun visor causing his fatal injury.

3

Defendants' experts with measurements documented in photographs conclusively demonstrate that Mr. Markushewski erroneously added 8–9 inches of webbing to their surrogate study that was not extended in the subject belt at the time of the crash. This fatal flaw in Plaintiff's experts demonstration, in addition to the gross deficiencies previously noted, renders the entire study an irrelevant farce that has no relevance to this case.

## II.   ARGUMENT

As illustrated below, Plaintiffs experts' surrogate study is fundamentally flawed, and therefore, not admissible because it has no relevance to the undisputed facts of this case.

### A. Plaintiff's Vehicle and Seat Belt Inspections

To understand the Plaintiffs experts' mistake and to appreciate its significance, a review of surrogate work done by both parties in this case is essential.

### <u>May 18, 2010 Inspection</u>

Plaintiffs expert Markushewski inspected the subject vehicle on May 18, 2010. At the Inspection, Markushewski conducted the first surrogate test using himself as a surrogate for Mr Alfred by sitting in the driver's seat of the crashed vehicle and placing the seat belt over him to the position it would have been when it was cut by emergency personnel. At this point the webbing was still extended in the post-crash length. *See* Markushewski Dep., 58:22–63:2 attached as Exhibit D.



In the top photograph, Mr. Markushewski is seated in the damaged subject Honda Accord. *See* Plaintiffs photographs, 5/18/2010, attached as Exhibit E. The extrication cut in the belt can be

4

ARCCA0073

seen at his left shoulder with the other end of the cut webbing still in the D-ring. Slack is seen in the belt at his left waste area. The next photograph below shows the cut ends of the webbing pulled close together as they would have been in the crash. *See* Plaintiff's photographs, 5/18/2010, attached as Exhibit F. The belt is snug around Mr. Markushewski's chest.



Ends Together

These photographs document the absence of excess webbing or slack in the seat belt as alleged when the belt is placed in the proper position. Rather, the webbing fits appropriately on Mr. Markushewski (who is smaller than Mr. Alfred).

At this inspection, Markushewski also measured and documented the length of the webbing found in the vehicle. He measured from the top of the 9 inch plastic sleeve covering the webbing as his "zero reference point" (as it appears he also later did in his May 17 study). Markushewski measured 57 inches from the top of the plastic sleeve to the extrication cut. The measurement could not be made from the anchor point (end of seat belt) because this area of webbing was trapped between the seat and crushed structure of the vehicle. This measurement is documented in Markushewski's photographs and his inspection notes and is consistent with measurements taken later at the parties' joint inspection. *See* Markushewski 5/18/2010 vehicle inspection photographs, attached as Exhibit G and H; Markushewski inspection notes, attached

ARCCA0074



Plaintiff's Photographs taken during 5/18/10 vehicle inspection with extrication cut length measured from top of plastic sleeve

<u>November 2011 Inspection</u>



The parties jointly removed the belt webbing by cutting away the deformed components to free the belt for removal. At the joint seat belt inspection in November 2011, Plaintiff's expert Mr. Markushewski measured the webbing on the removed belt. However, this time he measured not from the top of the plastic sleeve, but from the bottom of the sleeve at the outboard anchor (or actually about an inch from the outboard anchor). Using the bottom of the sleeve as his zero reference point, he measured approximately 64.5 inches to the extrication cut. *See* Markushewski 11/16/2011 joint inspection photographs, attached as Exhibit B and A.

6

ARCCA0075





Mr. Markushewski documented in his notes that the webbing of the subject seat belt measured 64.5 inches from the outboard anchor to the extrication cut, and totaled approximately 91 inches to the web grabber mark indicating where the retractor locked the webbing. *See* Markushewski Seat Belt Notes from 11/16/11, attached as Exhibit J. These measurements again are not in dispute and are consistent with his May 2010 inspection notes wherein he measured 57 inches from the top of the 8 inch sleeve to the extrication cut mark (57 + 8 = 65) even though he used a different zero reference point. *See* Exhibits G and H.

ARCCA0076

<u>May 17, 2013 Surrogate Study</u>

On May 17, 2013, Plaintiff's experts Mr. Markushewski and Dr. Benda conducted another surrogate study or "fit check" of the belt using a surrogate. Contrary to accepted methodology, Plaintiff has not produced any photographs documenting the length of webbing seen in these photographs. More importantly, neither Markushewski nor Benda show in any photograph from what reference point – the top of the sleeve or the outboard anchor – the measurement was made. The difference in these two possible measurements (from the top of the sleeve or the outboard anchor) is 8-9 inches. Below are the photographs relied upon by Plaintiff's expert Markushewski to demonstrate the alleged eight to nine inches of excess webbing that form the basis of Plaintiff's case. *See* Markushewski 05/17/2013 surrogate photographs, attached as Exhibit K and L.



Undocumented Webbing Length

ARCCA0077



Approximately 9 inches

**June 7, 2013 Surrogate Comparative Study**

In response to Plaintiffs surrogate study, Defendants' biomechanic expert Dr. Thomas McNish conducted a surrogate study to ascertain the source of the heretofore never seen excess webbing.[2] As demonstrated herein, Dr. McNish first measured the webbing using the undisputed measurements of 57 inches from the top of the 9 inch plastic sleeve to the extrication cut. The below photographs taken by Dr. McNish in the June 7 study show that the belt fits perfectly with no excess slack when the undisputed measurement is used. *See* McNish 06/07/2013 surrogate photographs, attached as Exhibits N–Q.

---

[2] Defendants conducted their own surrogate work prior to Plaintiffs undocumented demonstrated, that revealed no excess slack in the belt—just as Mr. Markuszewski's original self-measurements had. Defendants' study demonstrated that the seat belt functioned properly and as intended in the subject crash. *See* representative photographs depicting Defendants' 04/17/2013 surrogate study, attached as Exhibit M.

9

ARCCA0078



Top of Sleeve

Measured correctly 57" from top of sleeve

Next, Dr. McNish measured 64.5 inches of webbing from the top of the plastic sleeve to the extrication cut and fitted it around the surrogate. As the below photographs show, when the 64.5 inches of webbing is measured from the top of the sleeve rather than from the outboard anchor point, we observe the "excess slack" seen in Markushewski's May 17 photographs and relied . . . . . . . . . . . . Dr. McNish 06/07/2012 surrogate photographs as Exhibits R-T.

ARCCA0079



Measured 64.5 inches from top of sleeve



Approximately 8 inches

Comparing Plaintiff's undocumented study with Defendants' documented measures shows where 9 inches of webbing was added. It is clear that Plaintiff's experts have increased the available webbing in their test. See Exhibit K.



The above photographs show the identical excess "slack" shown in Plaintiff's surrogate study and conclusively establish that the excess slack was generated as a result of the *incorrect measurement* of the approximately 64.5 inches of webbing from the *top of the sleeve* rather than from the outboard anchor point, resulting in an additional 8-9 inches of webbing not present at the accident scene.

11

ARCCA0080

There can be no credible argument but that Plaintiffs' experts Mr. Markushewski and Dr. Benda utilized the wrong measurement in their May 17 surrogate work. They measured 64.5 inches of webbing *from the top of the 9 inch sleeve* to the extrication cut instead of 57 inches of webbing from the top of the 9 inch sleeve to the extrication cut. The result is an erroneous addition of 8-9 inches of "slack" that was not present in this accident. Not surprisingly, when the proper undisputed measurements are utilized and appropriately documented on the same size surrogate used by Plaintiff, the belt fits snugly and demonstrates no excess webbing or slack as was also seen in Markushewski's initial May 2010 fit check. *See* Exhibits D and E.

The flaw in Plaintiff's surrogate work is readily understood and observed. It is consistent with the Markushewski's earlier shifting from one reference point (the top of the sleeve) in his first inspection in May 2010 to another reference point (the end of the webbing at the outboard anchor) in his second inspection in November 2011. Markushewski erroneously used the 64.5 inch measurement from the second inspection and the top of the sleeve reference point from the first inspection, resulting in a crucial and outcome determinative fatal mistake. This flawed measurement forms the entire foundation for Plaintiff's defect theory in this matter. Absent this flawed surrogate study, there is no evidence to support Plaintiff's unsupportable theory that there was 8-9 inches of excess webbing or slack in Mr. Allred's belt during the crash that caused his fatal injuries. To the contrary, the only credible evidence is that there was no excess slack and if Plaintiff had used the correct and undisputed measurement, his surrogate study would have reflected this undeniable fact.

III.   Conclusion

Plaintiffs' expert's clearly erroneous measurement and failure to document his surrogate study renders the study irrelevant, unreliable, and inadmissible. For these reasons, as well as those previously identified in Defendants' initial motion, Defendants respectfully request that this Court exclude all evidence of Plaintiff's surrogate study because it is has no probative value, is unreliable, was not conducted under conditions substantially similar to those of the subject accident, and is unfairly prejudicial.

ARCCA0081

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

_____

GUYTON H. VALDIN, JR. #20621
3838 North Causeway Blvd.
2900 Three Lakeway Center
Metairie, Louisiana 70002
Telephone No.: (504) 832-3700

and

**JOEL H. SMITH** (admitted pro hac vice)
**COURTNEY C. SHYTLE** (admitted pro hac vice)
Bowman and Brooke, LLP
1441 Main Street
Suite 1200
Columbia, SC 29201
Phone: (803) 726-7420
Fax: (803) 726-7421
Counsel for Defendants, American Honda Motor
Inc. and TK Holdings Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all known counse
record via electronic mail, facsimile and/or by depositing same in the United States mail, f
class postage pre-paid and properly addressed, on the 13th day of June, 2013.

_____

GUYTON H. VALDIN, JR.

ARCCA0082

# Exhibit

ARCCA0083



ARCCA0084

Exhibit

ARCCA0085



ARCCA0086



ARCCA0087



ARCCA0088

Exhibit

ARCCA0089

Page 1

26th JUDICIAL COURT FOR THE PARISH OF BOSSIER
STATE OF LOUISIANA

- - - - - - - - - - - - - - - - - -

PAUL DAY ALLRED, SR., and   DOCKET NO. 117886
JIMMY LOU REEVES ALLRED


                    VS


JOHN PARKER; AMERICAN
HONDA MOTOR COMPANY,
INCORPORATED; TK
HOLDINGS, INCORPORATED,
Successor-in-Interest to
TAKATA FABRICATION,
INCORPORATED; TAKATA
INCORPORATED; TAKATA
RESTRAINT SYSTEMS,
INCORPORATED AND
AUTOMOTIVE SYSTEMS
LABORATORY, INCORPORATED,
(ASL)

- - - - - - - - - - - - - - - - - -


                DEPOSITION OF
              MICHAEL MARKUSHEWSKI
            PENNS PARK, PENNSYLVANIA
                MAY 29, 2013


ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  DEBRA JOHNSON-SPALLONE, CCR NO. NJ1182

FILE NO.:  A7056BF

ARCCA0090

Page 58

1    close to two inches rearward, moved somewhere left at

2    11 inches inboard, and it is rotated something less

3    than 90 degrees.

4              And I understood that the rotation

5    was the thing that you said would cause the outboard

6    motion of his shoulder harness, and if you don't know

7    which of those things occurred in that order, I am

8    having a hard time understanding how you would have

9    an opinion that the D-ring at some point moved

10   outboard or the shoulder harness at some point moved

11   outboard relative to Mr. Allred's left shoulder.

12             That is -- that is -- that is why

13   I'm asking you this question.

14        A.    I understand your question.

15             If you look at frame number 160 of

16   the same inspection, you'll see myself in the

17   vehicle.

18        Q.    Hold on a second.   Hold on.

19             I want to get to that.

20             (Pause)

21        Q.    Okay.

22        A.    If you notice the alignment of the

23   shoulder harness relative to my clavicle is well

24   outboard of where a normal seat belt would ride.

25             So, the motion of the D-ring -- the

ARCCA0091

Page 59

1    rotation, as well as the current location with

2    respect to the seat, and how Allred would move late

3    in the crash pulse now, we have to be clear, this is

4    very late in the crash pulse, contributed to rollout

5    of the upper torso.

6            Q.      All right.

7                    So, all of that damage, the movement

8    of the seat, the movement of -- and -- and the

9    relative location of current location of the

10   D-ring -- I'm sorry -- the location in this

11   photograph of the D-ring and the left side of that

12   seat belt are what you're talking about in terms of

13   the position of the shoulder harness at that point

14   late in the crash, whatever that is --

15           A.      Yes.

16           Q.      -- right?

17           A.      Yes.

18           Q.      Okay.

19                   Are you holding that seat belt in

20   the position that you are holding it there?

21           A.      On 160 you're looking at?

22                   Yes.

23           Q.      There doesn't appear to be any slack

24   in it, does it, in the shoulder belt?

25           A.      Oh, there's slack in it, yes.

ARCCA0092

Page 60

1                   I just didn't want to pull on it
2      given that it is forensic evidence.
3              Q.    What I mean is, there's --
4              A.    I just laid it on my body.  I didn't
5      want to load or remove any delicate forensics on the
6      webbing.  So, I gently placed it on myself.
7              Q.    How tall are you?
8              A.    About 5'7 and three quarters, 5'8.
9              Q.    What is your weight?
10             A.    About 155, 157 pounds at that time.
11                   MR. SMITH:  We have been going about
12     an hour.
13                   Do you want to take a short break?
14     Try to organize my questions a little bit.
15                   MR. BURNETT:  How long do you want
16     to take?
17                   MR. SMITH:  Five, ten minutes.
18     Whatever you guys want to take.
19                   MR. BURNETT:  The lady says ten.
20                   MR. SMITH:  I just like to take care
21     of my reporter.  She is working harder than any of
22     us.
23
24                   (Recess was taken at this time.)
25

ARCCA0093

Page 61

1    CONTINUATION

2    BY MR. SMITH:

3            Q.    Mr. Markushewski, we were just

4    talking to you about your photograph number 160.

5            A.    Yes.

6            Q.    From your May -- is that May 18th,

7    2011, inspection?

8            A.    Yes.

9            Q.    Do you have that in front of you?

10           A.    Yes.

11           Q.    Do you have a ruler there in your

12   hand?

13                 You're measuring something.

14           A.    It is a tape measure, yes.

15           Q.    What is the -- what is it that you

16   are measuring there?

17           A.    I am measuring the location of the

18   D-ring relative to the cut on the shoulder harness

19   with a separation.

20                 MR. BURNETT:  Joel, can we clarify?

21                 I have that as 2010.

22                 I think you mentioned 2011.

23                 MR. SMITH:  I'm sorry.  I misspoke.

24   I misspoke.

25                 All right.

Page 62

1
2    CONTINUATION

3    BY MR. SMITH:

4         Q.    And you said that you did not pull

5    the slack out of the seat belt; right?

6         A.    I didn't pull it tight.

7               So, I -- I put it on loosely so that

8    I would not disturb any forensics.

9         Q.    Look at 158.

10        A.    Yes.

11        Q.    Now, you can see slack in the belt

12   there; right?

13        A.    Well, you can see it is not holding

14   itself up on my shoulder.  It is sliding down.

15        Q.    So, between --

16        A.    I just -- I just --

17        Q.    So, between 158 -- I'm sorry.

18              Go ahead.

19              You were saying something.

20              I didn't mean to interrupt you.

21        A.    Yeah.  If you look at 156, 157, you

22   can see it was holding itself in position loosely

23   with not -- not being tight, and then it started

24   sliding down.

25              So, then I -- I just held it up

ARCCA0095

Page 63

1    there, and took that picture and asked somebody to

2    take that picture.

3         Q.   So, between 158 and 160, you removed

4    some of the slack?

5         A.   Well, it was -- it was falling off

6    my upper torso.  So, I held it up, yes, yeah.

7         Q.   Yeah.

8              We have to be careful with the term

9    "slack."

10             Okay.

11             So, he is -- let's talk about your

12   accident severity analysis.

13             Okay?

14        A.   Okay.  Yes.

15        Q.   What are the opinions that come from

16   your accident severity analysis?

17             Are they something in your report?

18        A.   Yes, they are.

19        Q.   Where -- where would I find those?

20        A.   If you look on page eight of the

21   report.

22        Q.   Okay.

23             MR. SMITH:  Can we mark that report

24   that you have in front of you as -- as Exhibit-1?

25

ARCCA0096

# Exhibit

ARCCA0097



ARCCA0098

Exhibit

ARCCA0099



ARCCA0100

**Exhibit G**

ARCCA0101



ARCCA0102



ARCCA0103



ARCCA0104

**Exhibit I**

ARCCA0105

ARCCA INCORPORATED

## ARCCA — VEHICLE INSPECTION CHECKLIST

**PRE-INSPECTION INFORMATION**

File No. 3893-001   Case ALLRED

Investigator M.L. MARCHUSHINSKI

Date: Inspection 5 / 18 / 10   Accident 8 / 21 / 04

Location SCHREUS PORT, IA

**VEHICLE INFORMATION**

Year 1995   Make HONDA   Model ACCORD

Style 4-DOOR   Trim level Accord VO

VIN 1HGCE1663 5A02222H15

Mfd by HONDA

Type (Pass Car)   MPV   Truck   Incomplete

Build Data _____   Mileage 67297 x

Plate: Number 5A9518G   State ALABAMA

Color: Exterior WHITE   Interior GRAY   Belts GRAY

| | |
|---|---|
| 1981 | S |
| 1982 | C |
| 1983 | D |
| 1984 | E |
| 1985 | F |
| 1986 | G |
| 1987 | H |
| 1988 | J |
| 1989 | K |
| 1990 | L |
| 1991 | M |
| 1992 | N |
| 1993 | P |
| 1994 | R |
| 1995 | S |
| 1996 | T |
| 1997 | V |
| 1998 | W |
| 1999 | X |
| 2000 | Y |
| 2001 | 1 |
| 2002 | 2 |
| 2003 | 3 |
| 2004 | 4 |
| 2005 | 5 |
| 2006 | 6 |
| 2007 | 7 |
| 2008 | 8 |
| 2009 | 9 |
| 2010 | A |

PHOTOGRAPHS ROLL No.: 1 2 3 4 5 6 7 8 9 10   DIGITAL

VIDEOTAPES: VIDEO by _____
Original tape to _____

**COMPONENTS REMOVED FROM VEHICLE ON THIS DATE**   (NONE)

ITEMS _____

REMOVED BY _____

RETAINED BY _____

TAGGED _____ SEALED _____

ATTACHING HARDWARE: REMOVED _____ IN VEHICLE _____

ARCCA0106



ARCCA0107

Exhibit

ARCCA0108



ARCCA0109

# Exhibit

ARCCA0110



ARCCA0111

Exhibit

ARCCA0112



ARCCA0113



ARCCA0114



ARCCA0115

Exhibit

ARCCA0116



ARCCA0117

# Exhibit O

ARCCA0118



ARCCA0119

Exhibit

ARCCA0120



ARCCA0121



Exhibit

ARCCA0122



ARCCA0123



Exhibit

ARCCA0124



CCA0125

Exhibit

ARCCA0126



ARCCA0127

**Exhibit**

ARCCA0128



CCA0129

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552

Attorney for Defendant

| | |
|---|---|
| ARCCA, INC. | : IN THE COURT OF COMMON PLEAS OF |
| Plaintiff | : BUCKS COUNTY PENNSYLVANIA |
| | : |
| v. | : CIVIL ACTION - LAW |
| | : |
| GERALD L. BURNETT | : No. 2015-00078 |
| Defendant | : |

## CERTIFICATION OF SERVICE

I certify that I did send a copy of Defendant, Gerald Burnett's Memorandum of Law in

Support of its Preliminary Objections to Plaintiff's Complaint, a Praecipe under B.C.R.C.P.

208.3 and all supporting documents, via first class mail, postage prepaid, to the following:

Steven H. Sailor, Esquire
PO Box 70
Newtown, PA 18940
Attorney for Plaintiff

Dated:  April 16, 2015

William B. Callahan
Attorney for Defendant,
Gerald Burnett

ARCCA0130

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY: William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552                                                    Attorney for Defendant

ARCCA, INC.                              :   IN THE COURT OF COMMON PLEAS OF
      Plaintiff                     :   BUCKS COUNTY PENNSYLVANIA
                              :
      v.                             :   CIVIL ACTION - LAW
                              :
GERALD L. BURNETT                       :   No. 2015-00078
      Defendant                     :

## DEFENDANT GERALD L. BURNETT'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PRELIMINARY OBJECTIONS TO PLAINTIFFS' COMPLAINT AND REPLY TO PLAINTIFFS' BRIEF CONTRA DEFENDANT'S PRELIMINARY OBJECTIONS

### I. Introduction

Plaintiff, ARCCA, continues to characterize this case as a garden-variety collections/contract matter, in which the only issue is the payment or non-payment of Plaintiff's bill.  (Plaintiffs' Brief, at pg. 2).  In doing so, Plaintiff totally ignores the fact that Plaintiff came to Louisiana, committed a tort in Louisiana, and subjected itself, through the actions and conduct of its employees, to the personal jurisdiction of the State of Louisiana and its courts under the express provisions of the Louisiana Long Arm statute (LSA-RS 13:3201 et seq. the express provisions and application of which was addressed in Burnett's Memorandum of Law).  The active Louisiana tort litigation against ARCCA was further addressed in said Memorandum and the two (2) attachments thereto (Petition, Exhibit "A" to Preliminary Objections, and Amended Petition, Exhibit "A" to Memorandum).   More specifically, this Honorable Court's attention is invited to the original Petition, at paragraph 25 which provides:

> 25.  Plaintiff [Burnett] further pleads compensation and set-off as
>
> to any monies, if any, determined to be owed by him to ARCCA, which is
>
> expressly denied and to a full and complete accounting and strict proof thereof,
>
> including the reasonableness and benefit-value ratio thereof, as to any monies he
>
> paid, owed or may owe, and for the full refund of all monies paid to ARCCA, et.

ARCCA0131

al., in addition to damages to be awarded herein to him after and upon trial hereof, together with interest and reasonable attorney fees, as appropriate.

Further, in the Amended Petition, paragraph 35 it is provided:

35. Defendants-ARCCA, Markushewski and Benda sought to "obtain, achieve and benefit from billings for professional expert witness services and litigation support services in an amount of approximately $247,000 to which they are not entitled and which should be forfeited, set-aside and vacated, in addition to such other damages relief and recovery sought herein.

ARCCA, Markushewski and Benda have each been served with the original Petition and the Amended Petition on March 30, 2015 and April 17, 2015 respectively, under the express provisions of the Louisiana Long Arm Statute.

## II. Statement of Recent Relevant Facts and Procedural Background

Since the filing of Defendant's Memorandum of Law, there have been additional developments in the Louisiana case. Defendants ARCCA, Markusewski and Benda have filed a Notice of Removal, seeking to move the case to the Federal District Court for the Western District of Louisiana. The Louisiana ARCCA Defendants did not attack the jurisdiction of Louisiana, and in fact, in paragraph 9 of the Notice, stated "the United States District Court has jurisdiction of this cause of action under 28 USC 1332 and the United States District Court for the Western District of Louisiana is the proper Court for removal." A true and correct copy of the Notice of Removal is attached hereto as Exhibit "A". ARCCA, Markusewski and Benda have again come to Louisiana, this time to defend the Louisiana suit seeking a federal judicial forum and it is appears unlikely they will be leaving any time soon, at least in their capacity as Defendants in the Louisiana suit. Judicial resources, efficiency, the need to avoid duplication of time and effort and numerous other concerns require a decision to litigate these substantive issues in Benton, Bossier Parish, Louisiana in a single forum or alternatively in the US District Court, for the Western District of Louisiana.

Plaintiff ARCCA conveniently overlooks the fact that central pieces of evidence in the Louisiana tort case, necessarily relevant to their claims for compensation, include the 1995 Honda Accord, the component

ARCCA0132

parts thereof, including the Emergency Locking Retractor, the seat belt assembly, the fenders and other pieces and components of the car in which the fatal accident occurred, are all in Louisiana. These pieces of physical evidence, and the errors made by ARCCA, Markusewski and Benda in examining them, are also extremely relevant to this case, inasmuch as they and the court records which are adopted in toto into the tort suit, are likely to be major factors and determinative of ARCCA's entitlement to payment or lack thereof.

### III.    ARGUMENT

### A.  ARCCA HAS ACQUIESCED TO JURISDICTION IN LOUISIANA

In both Pennsylvania and Louisiana, parties may submit to the jurisdiction of the Commonwealth or State. *Bail v. Barber*, 621 A.2d 156, 158 (Pa. Super. 1993); *Maroggi v. Howard*, 805 So.2d 1118, 1122-1123 (La.S.Ct. 2002). It is respectfully suggested that Plaintiff ARRCA, has acquiesced to the jurisdiction of Louisiana, in accordance with the Louisiana Long Arm Statutes upon which personal jurisdiction is based.

As was noted, ARCCA, Markusewski and Benda did not challenge Louisiana jurisdiction in the State Court, although they might have done so. Instead, on April 20, 2013, they removed the case to a Federal Court, within Louisiana, and in so doing, they acknowledged that "the United States District Court for the Western District of Louisiana is the proper Court for removal." (Notice of Removal, Exhibit "A", paragraph 9)

### B.  REGARDLESS OF THE FORUM SELECTION CLAUSE, THIS COURT SHOULD RELINQUISH JURISDICTION

Even if a court could exercise jurisdiction over a particular case, it does not have to, and may consider other factors in reaching a decision, as has been presented in the instant case. *Carnegie Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), *See Also, McCoy v. Thresh*, 862 A.2d 109 (Pa. Super 2004). If it appears that justice will best be served by a court relinquishing jurisdiction, it may do so, as it should here for the multitude of factors favoring same.

As Defendant Burnett has conclusively demonstrated, this case is far more than a simple breach of contract matter. The central issue, as to both this case and the Louisiana tort case, is the alleged tortious conduct of ARCCA, its experts and employees. That is extremely relevant to the merits of this case, in that it goes directly to ARCCA's right to be paid the money it is seeking, the amount of off-sets, compromise, and damages,

including interest and reasonable attorney fees and to whom it is owed. As noted above, every piece of evidence relating to ARCCA's tortious conduct is in Louisiana.

And how does ARCCA address these facts? The answer is simply that they have failed to do so. More specifically, they state, "Relying in large part on Louisiana law, the defendant [Burnett] has argued that Louisiana courts due to the presence and activities of ARCCA in Louisiana have jurisdiction over ARCCA." (Plaintiffs' Brief Contra Defendant's Preliminary Objections, at pg. 6)   ARCCA thereafter observes: "The Defendant [Burnett] also has argued that the Bucks County Court of Common Pleas should pursuant to "public policy," defer to the Louisiana courts with regard to this case." (Id. at pg. 7.)

Then, in an argument that could only be described as pandering to the Court, ARCCA attempts to characterize Burnett's position as lacking confidence in this Court's ability to handle this case, and Burnett's tort claim. In reality, this Court has only been given a fraction of the whole picture by ARCCA, and the Defendant is attempting to fill in the gaping holes they have left.

ARCCA's employees came to Louisiana, committed a tort in Louisiana, and are being sued in Louisiana for their acts and omissions, as is set forth with particularity in the original Petition and the First Amended Petition filed by Burnett. It should now be compelled to face the consequences of those tortious acts in Louisiana.  Nor does it matter particularly who won the "race to the courthouse". A judicial determination of any legal liability to pay ARCCA's fees and the amount thereof, if any, should be made in the context of the entire case and not a fragmented litigation track.  It is with all due respect for the judicial system of Pennsylvania and that of Bucks County, that it is submitted that Louisiana is the proper forum for these determinations.

ARCCA0134

## IV. CONCLUSION

For all of the foregoing reasons, and those heretofore set forth and in the interest of justice, comity and judicial economy, it is respectfully submitted that Defendant, Gerald L. Burnett's Preliminary Objections should be sustained, and Plaintiff's Complaint should be dismissed, without prejudice to Plaintiff's right to file suit in Louisiana.

Respectfully Submitted,

**LAW OFFICES OF**
**WILLIAM B. CALLAHAN**
1800 East High Street, Suite 150
Pottstown, PA 19464
Telephone: 484-680-0552
Facsimile: 610-906-1575

BY: _____
William B. Callahan
Attorney for Gerald Burnett

ARCCA0135

# EXHIBIT A

ARCCA0136

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

GERALD L. BURNETT           CIVIL ACTION NO. _____

VERSUS                    JUDGE _____

ARCCA INCORPORATED,
MICHAEL L. MARKUSEWSKI, and    MAGISTRATE _____
DR. BRIAN J. BENDA

### NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, come ARCCA INCORPORATED ("ARCCA"), MICHAEL L. MARKUSEWSKI, and DR. BRIAN J. BENDA, named defendants in the Petition for Damages in the cause of action referenced below, and appearing herein solely for the purpose of presenting this Notice of Removal of below-referenced cause to this Honorable Court under the provisions of 28 U.S.C. § 1441, et. seq. and reserving all rights respectfully shows as follows:

1.

On January 26, 2014 an action was commenced in the 26th Judicial District Court, Bossier Parish, Louisiana, entitled *Gerald L. Burnett v. ARCCA Incorporated, et al*, case number 146202.

2.

Plaintiff delivered service of process upon all Defendants via Federal Express, which was delivered to ARCCA's physical address, on or about March 30, 2015. Therefore, this Notice of Removal is filed within thirty days of the first defendant being served with the original petition. (A First Amended Petition was filed on April 9, 2015 but has not been served).

ARCCA0137

3.

This action is of a civil nature of which this Court has original jurisdiction under 28 U.S.C. 1332 and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. 1441(b) in that it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4.

Based on information and belief, Plaintiff, Gerald L. Burnett was, at the time of the filing of this action, and still is, a citizen of the State of Louisiana.

5.

Defendant, ARCCA, a corporation, was, at the time of the filing of this action, and still is a citizen of Pennsylvania having been incorporated under the laws of the State of Pennsylvania and having its principal place of business in the State of Pennsylvania.

6.

Defendant, Michael L. Markushewski, was, at the time of the filing of this action, and still is a citizen of Pennsylvania.

7.

Defendant, Brian J. Benda, was, at the time of the filing of this action, and still is a citizen of Pennsylvania.

8.

The factual basis for this lawsuit is summarized as follows: Plaintiff Gerald Burnett, an attorney, retained ARCCA to provide professional expert witness services in

ARCCA0138

a civil suit, pursuant to a written contract (hereinafter, "the Contract"). In accordance with the terms and conditions of the Contract, ARCCA billed Burnett for its services and costs. Burnett paid some of the amounts billed but failed to pay a principal balance of $148,673.14, despite numerous amicable attempts by ARCCA at collection.

On January 7, 2015, pursuant to the forum selection clause in the Contract, ARCCA filed suit against Burnett in the Court of Common Pleas of Bucks County, Pennsylvania to recover the unpaid balance, including the contractually mandated interest, which totals $176,254.35.

On January 26, 2014, Burnett filed this suit in the 26th Judicial District, Bossier Parish alleging, among other things, that ARCCA and its employees were negligent in performing the litigation services, committed malpractice, fraud and misrepresentation. Mr. Burnett prayed for damages and attorney's fees. Additionally, in his First Amended Petition, Mr. Burnett alleges that ARCCA demanded and billed approximately $247,000, to which "they are not entitled." Burnett prayed that the court force ARCCA to forfeit its claim.

Therefore, the amount in dispute is in excess of $75,000.

9.

The United States District Court has jurisdiction of this cause of action under 28 U.S.C. § 1332 and the United States District Court for the Western District of Louisiana is the proper court for removal.

10.

Annexed hereto as Exhibit "A" is a copy of the entire suit record of the State Court proceeding referred to hereinabove.

ARCCA0139

11.

A copy of this Notice of Removal has been served upon all adverse parties and filed with the Clerk of the 26thnd Judicial District Court, Bossier Parish, Louisiana immediately upon filing of this Notice in accordance with 28 U.S.C. § 1446 (d).

Shreveport, Louisiana, this 20th day of April, 2015.

PETTIETTE, ARMAND, DUNKELMAN
WOODLEY, BYRD & CROMWELL L.L.P.

BY: S/Donald Armand, Jr.
    Donald Armand, Jr. # 17444- TA
    Trey W. Carter # 35075

400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, Louisiana  71166-1786
(318) 221-1800; (318) 226-0390
darmand@padwbc.com
tcarter@padwbc.com

ATTORNEYS FOR ARCCA INCORPORATED,
MICHAEL L. MARKUSEWSKI and BRIAN J.
BENDA

ARCCA0140

## VERIFICATION

I, Gerald L. Burnett, do hereby verify that, subject to inadvertent or undiscovered errors, the averments in the foregoing document are true and correct to the best of my knowledge, information and belief;

I understand that false statements made in the foregoing document are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Gerald L. Burnett

Dated: 30 April 2015

510194 v1.

ARCCA0141

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| ARCCA, INC., | : | NO. 2015-00078 |
| Plaintiff | : | |
| | : | ATTY. NO. 32447 |
| v. | : | |
| | : | |
| GERALD L. BURNETT, | : | |
| Defendant | : | CIVIL ACTION |
| | : | |

PLAINTIFF'S ANSWER TO
DEFENDANT'S PRELIMINARY OBJECTIONS

1.      Admitted, upon information and belief.

2.      Denied.  After reasonable investigation, the plaintiff is without sufficient information to form a belief as to the truth of the averment.  Strict proof, if relevant, is demanded.

3.      Admitted, upon information and belief.

4.      Admitted in part.  Denied in part.  It is admitted that the defendant contacted the plaintiff at the plaintiff's offices which are located in Penns Park, Bucks County, Pennsylvania so it would follow that the defendant became aware of the plaintiff.  With regard to when the defendant became aware of the plaintiff, the plaintiff, after reasonable investigation, is without sufficient knowledge to form a belief as to the truth of the averment.  Strict proof, if relevant, is demanded.

5.      Denied as stated.  The defendant's contract with the plaintiff which is attached to the plaintiff's Complaint as Exhibit "A" (the "Contract") speaks for itself and defines the relationship between the plaintiff and the defendant.  As to why the defendant retained the plaintiff, the plaintiff, after reasonable investigation, is without sufficient knowledge or information to form a belief as to the truth of the averment.  Strict proof, if relevant, is demanded.

6.      Admitted.

7.      Admitted in part. Denied in part. It is admitted that the underlying case involved a product liability action involving a Honda motor vehicle which was involved in an accident that resulted in the death of an individual named Paul Day Allred, Jr. It is specifically denied that the details of the case are relevant to the defendant's Preliminary Objections as they relate to matter <u>dehors</u> the record.

8.      Denied as stated. The plaintiff's employees and experts were retained for the purposes set forth in the Contract.

9.      Denied as stated. The plaintiff's experts and employees provided all of the services that were required of them pursuant to the Contract. It is specifically denied that the plaintiff's experts and employees, or either of them, committed any errors avoidable or otherwise, or included any deficiencies in their reports. By way of further denial, it is specifically denied that the plaintiff's experts and employees were "rejected" by the jury trial. It is specifically denied that the details of the case are relevant to the defendant's Preliminary Objections as they relate to matters <u>dehors</u> the record.

10.     Admitted in part. Denied in part. Upon information and belief, it is admitted that the defendant has filed a negligence action against the plaintiff and others in Louisiana. The document attached to the defendant's Preliminary Objections speaks for itself. It is specifically denied that the defendant's Louisiana negligence suit against the plaintiff has any merit. By way of further denial, due to the forum selection clause contained in the Contract, the defendant's Louisiana lawsuit was improperly filed in Louisiana and should have been filed in the Bucks County Court of Common Pleas. It is specifically denied that the defendant's Louisiana lawsuit is relevant to the defendant's Preliminary Objections as it relates to matters <u>dehors</u> the record.

11.     The plaintiff's Complaint speaks for itself.

12.     The plaintiff's Complaint speaks for itself. The Contract speaks for itself.

2

ARCCA0143

13.     Denied. This is a conclusion of law to which no response is required.

<u>FIRST PRELIMINARY OBJECTION</u>

14.     This is an incorporation paragraph to which no response is required.

15.     Denied. This is a conclusion of law to which no response is required.

16.     Denied. This is a conclusion of law to which no response is required.

17.     Denied. The cited case speaks for itself. By way of further denial, this is a conclusion of law to which no response is required. It is specifically denied that the cited case is applicable to this matter.

18.     Denied. The cited legal quotations speak for themselves. The defendant's characterization of the quotations out of the context of the entire case is denied. By way of further denial, this is a conclusion of law to which no response is required. It is specifically denied that the cited case is applicable to this matter.

19.     Denied as stated. The above-captioned matter was initiated in the Bucks County Court of Common Pleas on January 7, 2015, with the filing of the plaintiff's Complaint. Based on Exhibit "A" attached to the defendant's Preliminary Objections, the defendant's Petition filed in Louisiana was not filed until January 26, 2015. The above-captioned case is the prior pending action.

20.     Denied. This is a conclusion of law to which no response is required. By way of further denial, the "gist of the action" doctrine dictates that any duty owed by the plaintiff to the defendant is based on the relationship between the parties that was created by the Contract. If is further denied that most of the witnesses and jurors are located in Louisiana.

21.     Denied. This is a conclusion of law to which no response is required. It is specifically denied that the cited case is applicable to this matter.

22.     Denied. This is a conclusion of law to which no response is required. By way of further denial, the above-captioned matter was filed first and created the pendency of a prior existing

3

matter. Further the forum selection clause contained in the Contract dictates that this case be litigated in the Bucks County Court of Common Pleas.

23.   Denied. This is a conclusion of law to which no response is necessary. By way of further denial, the pendency of two actions was created when the defendant filed his Petition in Louisiana as the above-captioned matter existed first.

24.   Denied. This is a conclusion of law to which no response is required. By way of further denial, the fees which were established by the Contract, which is a commercial contract between two commercial parties, is a private contract which specifically provides that "any dispute, controversy or claim arising under, or in connection with" the Contract "shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania." Further, the defendant subjected himself to Bucks County, Pennsylvania jurisdiction by first contacting the plaintiff at its office in Penns Park, Bucks County, Pennsylvania.

25.   Denied. This is a conclusion of law to which no response is required. It is specifically denied that the plaintiff negligently engaged in any actions or inactions that were negligent. By way of further denial, it is denied that the majority of the plaintiff's services were performed in Louisiana.

WHEREFORE, the plaintiff, ARCCA, Inc., prays Your Honorable Court dismiss the defendant's Preliminary Objections.

### SECOND PRELIMINARY OBJECTION

26.   This is an incorporation paragraph to which no response is required.

27.   The Contract which is attached to the plaintiff's Complaint, including the forum selection clause, speaks for itself.

28.   Admitted in part. Denied in part. It is admitted that the plaintiff's experts and employees came to Louisiana pursuant to the terms and conditions of the Contract. It is denied that all the

4

ARCCA0145

contrary, much of the work performed by the plaintiff's experts and employees was performed in Penns Park, Bucks County, Pennsylvania. By way of further answer, the defendant subjected himself to the jurisdiction of the Bucks County Court of Common Pleas by first contracting the plaintiff at its office in Bucks County, Pennsylvania.

29.     Denied. This is a conclusion of law to which no response is required. By way of further denial, it is specifically denied that the plaintiff's experts and employees committed a tort. By way of further denial, the defendant's alleged tort claims are barred by the "gist of the action" doctrine.

30.     Denied. This is a conclusion of law to which no response is required.

31.     Denied. This is a conclusion of law to which no response is required. By way of further denial, ARCCA's clients are located all over the country. It is for that very reason that ARCCA's forum selection clause is contained in the Contract. When one of ARCCA's clients, such as the defendant, fails and refuses to pay bills for ARCCA's services and expenses, the Contract provides that the Bucks County, Pennsylvania Court of Common Pleas is the venue where the dispute or any other dispute relating to the contracted services will be resolved.

WHEREFORE, the plaintiff, ARCCA, Inc., prays Your Honorable Court dismiss the defendant's Preliminary Objections.

### THIRD PRELIMINARY OBJECTION

32.     This is an incorporation paragraph to which no response is required.

33.     Pa.R.C.P. 1019(i) speaks for itself.

34.     The plaintiff's Complaint, in its entirety, speaks for itself.

35.     The plaintiff's Complaint, in its entirety, speaks for itself.

36.     The plaintiff's Complaint speaks for itself. It is denied that the plaintiff's Complaint fails to contain sufficient documentation or that it fails to comply with the Rules of Procedure. By way

ARCCA0146

of further answer, all of the documentation set forth in the defendant's Paragraph 40 can be obtained through discovery.

37.     The plaintiff's Complaint speaks for itself. It is denied that the plaintiff's Complaint fails to contain sufficient documentation or that it fails to comply with the Rules of Procedure. By way of further answer, all of the documentation set forth in the defendant's Paragraph 36 can be obtained through discovery.

        WHEREFORE, the plaintiff, ARCCA, Inc., prays Your Honorable Court dismiss the defendant's Preliminary Objections.

### FOURTH PRELIMINARY OBJECTION

38.     This is an incorporation paragraph to which no response is required.

39.     The plaintiff's Complaint, in its entirety, speaks for itself.

40.     The plaintiff's Complaint speaks for itself. It is denied that the plaintiff's Complaint fails to contain sufficient documentation or that it fails to comply with the Rules of Procedure. By way of further answer, all of the documentation set forth in the defendant's Paragraph 40 can be obtained through discovery.

41.     The plaintiff's Complaint speaks for itself. It is denied that the plaintiff's Complaint fails to contain sufficient documentation or that it fails to comply with the Rules of Procedure. By way of further answer, all of the documentation set forth in the defendant's Paragraph 41 can be obtained through discovery.

42.     The plaintiff's Complaint speaks for itself. It is denied that the plaintiff's Complaint fails to contain sufficient documentation or that it fails to comply with the Rules of Procedure. By way of further answer, all of the documentation set forth in the defendant's Paragraph 42 can be obtained through discovery.

ARCCA0147

WHEREFORE, the plaintiff, ARCCA, Inc., prays Your Honorable Court dismiss the defendant's Preliminary Objections.

STUCKERT and YATES

By: _Steven H. Sailer_

Steven H. Sailer, Esquire
Attorney for Plaintiff
Attorney I.D. No. 32247
Stuckert and Yates
Two North State Street
Newtown, PA 18940
(215) 968-4700

7

ARCCA0148

## VERIFICATION

Steven H. Sailer, Esquire, attorney for ARCCA, Inc., Plaintiff herein, verifies that the statements made in the foregoing Plaintiff's Answer to Defendant's Preliminary Objections are true and correct.  She understands that false statements herein are made subject to the penalties of 18 PA C.S. §4904 relating to unsworn falsification to authorities.

4/8/15

Date

STEVEN H. SAILER

ARCCA0149

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| ARCCA, INC., | : | NO. 2015-00078 |
| Plaintiff | : | |
| | : | ATTY. NO. |
| v. | : | |
| | : | IT IS HEREBY CERTIFIED |
| | : | THAT THIS IS NOT AN |
| GERALD L. BURNETT, | : | ARBITRATION MATTER |
| Defendant | : | |
| | : | CIVIL·ACTION |

CERTIFICATE OF SERVICE

Steven H. Sailer, Esquire, being duly sworn according to law, deposes and says that he is the attorney for the plaintiff, ARCCA, Inc., in the above-captioned matter, and that on April 8, 2015, he caused to be mailed, by first class mail, a true and correct copy of the Plaintiff's Answer to Defendant's Preliminary Objections, which has been filed in the above-captioned matter, to:

William B. Callahan, Esquire
2595 Faust Road
Gilbertsville, PA 19525

STUCKERT and YATES

BY: _Steven H. Sailer_

Steven H. Sailer, Esquire
Attorney for Plaintiff
Attorney ID No. 32447
2 North State Street
P.O. Box 70
Newtown, PA 18940
(215) 968-4700

ARCCA0150

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| ARCCA, INC., | : | NO. 2015-00078 |
| Plaintiff | : | |
| | : | ATTY. NO. 32447 |
| v. | : | |
| | : | |
| GERALD L. BURNETT, | : | |
| Defendant | : | CIVIL ACTION |
| | : | |

PLAINTIFF'S BRIEF CONTRA
DEFENDANT'S PRELIMINARY OBJECTIONS

I.    FACTS

On January 7, 2015, the plaintiff, ARCCA, Inc. ("ARCCA"), commenced this lawsuit by filing a Complaint against the defendant. The following facts were alleged in the Complaint.

ARCCA is a Pennsylvania corporation located in Penns Park, Bucks County, Pennsylvania. Among other things, ARCCA provides professional litigation support services to the legal and insurance industries. At all relevant times, the defendant was a practicing attorney who was licensed to practice law in Louisiana.

On April 3, 2010, in conjunction with a case known as Allred v. Honda/Tekata products, (the "Case"), the defendant entered into a written contract with ARCCA pursuant to which ARCCA agreed to provide professional support services to the defendant with regard to the Case (the "Contract"). The Contract provided the following among other things:

> Governing Law.   This Contract shall be governed by and construed in accordance with the laws of Pennsylvania.

> Exclusive Jurisdiction and Venue; Effect of Compulsory Arbitration; Waiver of Jury Trial.   The parties agree that any dispute, controversy or claim arising under or in connection with this Contact shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania. Each party hereby submits to the personal jurisdiction of the

EXHIBIT
B-3
tabbies

ARCCA0151

> Court of Common Pleas of Bucks County, Pennsylvania. Each party waives any right to assert or move for transfer to any other court based upon the doctrine of forum non conveniens or otherwise. **Each party agrees that in the event a dispute is subject to compulsory arbitration under the rules of civil procedure applicable to such action, that the decision of the arbitrators shall be final, binding and non-appealable. Each party further agrees that in the event a dispute is not subject to compulsory arbitration and is decided by a judge, the decision of the judge shall be final, binding and non-appealable.** Each party hereby irrevocably waives any right or claim to a jury trial in regard to any and all actions and proceedings involving this Contract.

From the inception of the Contract through January 30, 2014, ARCCA provided the defendant with professional litigation support services with regard to the defendant's prosecution of the Case. During this time, pursuant to the terms and conditions of the Contract, ARCCA billed the defendant a total of $227,404.14. However, despite being billed $227,404.14 by ARCCA, the defendant paid ARCCA only $76,330.16 toward the outstanding invoices. ARCCA also wrote-off $2,853.51, leaving a balance of $148,673.98 in unpaid invoices. ARCCA requested judgment in the amount of $176,254.35 (which included accrued interest), additional attorney's fees and costs.

In response to ARCCA's Complaint, the defendant filed Preliminary Objections.

II.   HOW THE ISSUES ARE RAISED

The defendant's Preliminary Objections are before Your Honorable Court for disposition pursuant to B.C.R.C.P. 208.3(b)(2).

III.   ISSUES

A.   In light of the forum selection clause contained in the Contract, is the Bucks County Court of Common Pleas the appropriate venue for the litigation of the above-captioned case?

2

ARCCA0152

B.     In light of the forum selection clause contained in the Contract, does the Bucks County Court of Common Pleas have personal jurisdiction over the defendant for the purposes of this lawsuit?

C.     Has ARCCA complied with Pa.R.C.P. 1028(a)(3) sufficiently to apprise the defendant of the nature and extent of ARCCA's claim to allow the defendant to formulate a defense and to inform the defendant with accuracy and completeness of the basis for which recovery is sought by ARCCA?

D.     Has ARCCA complied with law and rule of court as it has attached all writings to the Complaint on which its claims against the defendant are based?

IV.    ARGUMENT

A.     IN LIGHT OF THE FORUM SELECTION CLAUSE CONTAINED IN THE CONTRACT, THE BUCKS COUNTY COURT OF COMMON PLEAS IS THE APPROPRIATE VENUE FOR THE LITIGATION OF THE ABOVE-CAPTIONED CASE.

Even the defendant admits in his Brief that forum selection clauses are generally valid and enforceable. In Susquehanna Patriot Commercial Leasing Co., Inc., v. Holper Industries, Inc., 928 A.2d 278 (Pa. Super. 2007), the Pennsylvania Superior Court provided a rather long, detailed analysis of Pennsylvania's[1] jurisprudence on this issue:

> We recently discussed the enforceability of a forum selection clause in Patriot Commercial Leasing, Inc.[2] id. We noted in that case that the modern rule of jurisprudence begins with the presumption that a forum selection provision in a contract is enforceable.  [Citation omitted].  In Central

---

[1] In his Brief, the defendant has included several citations to federal case law and the laws of Louisiana. It is submitted that the defendant's reliance on these cases is misplaced. First, the Contract specifically provides that "This Contract shall be governed by and construed in accordance with the laws of Pennsylvania." In addition, "[a]s a general rule, the law of the chosen forum governs all procedural matters.... [P]rocedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced." Sheard v. J.J. DeLuca Co., Inc., 92 A.3d 68 (Pa. Super. 2014). The defendant's preliminary objections constitute procedural matters which should be decided under Pennsylvania law. (See also, language quoted below in footnote 3).

[2] Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant, 915 A.2d 647 (Pa. Super. 2006).

3

ARCCA0153

Contracting [Co. v. C. E. Youngdahl & Co., 209 A.2d 810 (Pa. 1965)], our Supreme Court advised that these clauses will be enforced "when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of the litigation." [Citation omitted]. The Central Contracting Court continued by defining the circumstances under which a forum selection clause will be considered unreasonable, stating that such a clause is unreasonable "only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair a party's ability to pursue his cause of action." [Citation omitted]. It stated, "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the party received under the contract consideration for these things." [Citation omitted]. The Court further refined what constitutes serious impairment, holding, "If the agreed upon forum is available to a party and said forum can do substantial justice to the cause of action then that party should be bound by his agreement." [Citation omitted]. This precept especially holds firm when, as in the present case, the Contract is between business enterprises. Thus,

"a forum selection clause in a commercial contract between business entities is presumptively valid and will be found to be enforceable based on unreasonableness only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause violates a public policy of the jurisdiction."

Id. at 282.

It is the plaintiff's position that the presumptive validity and enforceability of the Contract's forum selection clause should be observed by Your Honorable Court. The forum selection clause sub judice is contained in a commercial contract. The defendant who is presently objecting to the forum selection clause is an attorney. Presumably the defendant read the Contract before signing it – if he did not, he is bound by its terms. Samuel-Bassett v. Kia Motors America, Inc., 34 A.3d 1 (Pa. 2011); Crispo v. Crispo, 909 A.2d 308 (Pa. Super. 2006).

There is absolutely no basis for concluding that the inclusion of the forum selection clause

4

ARCCA0154

in the Contract resulted from fraud[3] or overreaching.  Unless the defendant is arguing that the Bucks County Court is so biased that he will not by treated fairly, the defendant has made no showing that he will be deprived of a chance to be heard either in ARCCA's case in chief or the defendant's purported defense/counterclaim.  Although there may be some inconvenience if he is made to litigate these matters in Pennsylvania, there has been no showing that the inconvenience would be to the level that the defendant would be deprived of a fair hearing.[4]

The defendant has claimed that there is a pending malpractice/tort action pending in Louisiana.  However, the above-captioned Bucks County case was filed on January 7, 2015, almost three weeks before the defendant filed suit against ARCCA in Louisiana.  The Bucks County case is actually the prior pending lawsuit.

The defendant has claimed that the Louisiana lawsuit that he filed against ARCCA is in tort and not contract.  However, the forum selection clause contained in the Contract provides, inter alia:

> ... The parties agree that <u>any dispute, controversy or claim arising under or in connection with this Contract</u> shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania.

---

[3] The Contract contains an integration clause which reads as follows:

<u>Entire Understanding</u>.  This Contract (including the Rate Schedule in effect) constitutes our full and complete understanding with you, superseding any and all previous statements and agreements and understandings, written or oral, with respect to the subject matter of the Contract.  The terms of this Contract may be amended only in writing signed by both parties.  This Contract shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to any conflict of law rules and without regard to any rules of interpretation or construction relating to which party drafted this Contract.

Where, as here, the Contract is fully integrated, any possible fraud-in-the-inducement claim is barred.  Hart v. Arnold, 884 A.2d 316 (Pa. Super. 2005).

[4] In the event this case was dismissed, ARCCA would experience the same degree of inconvenience if it was required to litigate this breach of contract case in Louisiana.  In order to avoid such inconvenience, ARCCA included the forum selection clause in the Contract.

ARCCA0155

(Emphasis added). The defendant's claim based on ARCCA's purported negligence or malpractice during the defendant's prosecution of the Allred case constituted actions or inactions by ARCCA that arose under and in connection with the Contract. Had it not been for the Contract, ARCCA would have had no involvement with the Allred case.

It is respectfully submitted that based on all of the above the defendant has failed to raise one argument that would support his claim that the presumed enforceability of the forum selection clause should be disregarded. Accordingly, the defendant's preliminary objection attacking the venue of ARCCA's lawsuit against him should be overruled, denied and dismissed.

B.    IN LIGHT OF THE FORUM SELECTION CLAUSE CONTAINED IN THE CONTRACT, THE BUCKS COUNTY COURT OF COMMON PLEAS HAS PERSONAL JURISDICTION OVER THE DEFENDANT FOR THE PURPOSES OF THIS LAWSUIT.

In King v. Detroit Tool Co., 682 A.2d 313 (Pa. Super. 1996), the Court observed:

> "[W]hen preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt. [Citation omitted]. Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party. [Citation omitted]. A defendant making a challenge to the court's personal jurisdiction has, as the moving party, the burden of supporting its objection to jurisdiction."

Id. at 314.

Relying in large part on Louisiana law, the defendant has argued that the Louisiana courts, due to the presence and activities of ARCCA in Louisiana, have jurisdiction over ARCCA. But, the defendant has presented no evidence as to why the Bucks County Court of Common Pleas does not have jurisdiction over the defendant. Based on the King v. Detroit Tool case, the defendant's Preliminary Objections to this Court's jurisdiction over him should be dismissed.

6

ARCCA0156

But a more compelling reason exists for denying the defendant's Preliminary Objections challenging this Honorable Court's personal jurisdiction over the defendant. He agreed to it! In the forum selection clause contained in the Contract, the following is provided: "Each party hereby submits to the personal jurisdiction of the Court of Common Pleas of Bucks County." (Emphasis added). It matters not that ARCCA conducted some work on the case in Louisiana. The parties agreed that they would submit to the personal jurisdiction of the Bucks County Court of Common Pleas. See, DeLage Lander Financial Services, Inc. v. Urban Partnership, LLC, 903 A.2d 586 (fn.2) (Pa. Super. 2006). (A party may contractually consent to a court's in personam jurisdiction over it).

The defendant also has argued that the Bucks County Court of Common Pleas should, pursuant to "public policy," "defer" to the Louisiana courts with regard to this case. The defendant alleged that ARCCA purportedly committed a tort in Louisiana and has now escaped to the "safe haven" of Pennsylvania. Implicit in the argument is the belief that the Bucks County Court is incapable and/or unwilling to give the defendant a "fair trial." The defendant has not expressed much confidence in this Court's ability to handle the above-captioned case and the defendant's purported defense/counterclaim properly, but that is no reason to conclude that the Bucks County Court of Common Pleas should not exercise personal jurisdiction over the defendant.

For some reason, the defendant claimed in his Brief that the Contract is neither a construction contract nor an insurance contract nor a contract based on the UCC. The defendant points out that the Contract is just a "professional service contract" as though these types of contracts should be ranked in terms of inport or enforceability. The bottom line is that the Contract is a commercial contract in which the parties agreed to the in personam jurisdiction of the Bucks

ARCCA0157

County Court of Commons Pleas. Accordingly, it is respectfully submitted that the defendant's Preliminary Objections should be overruled, denied and dismissed.

C.     ARCCA HAS COMPLIED WITH PA.R.C.P 1028(a)(3) SUFFICIENTLY TO APPRISE THE DEFENDANT OF THE NATURE AND EXTENT OF ARCCA'S CLAIM TO ALLOW THE DEFENDANT TO FORMULATE A DEFENSE AND TO INFORM THE DEFENDANT WITH ACCURACY AND COMPLETENESS OF THE BASIS FOR WHICH RECOVERY IS SOUGHT BY ARCCA.

> Pa.R.C.P. 1028(a)(3) provides, inter alia,
>
> Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> *       *       *
>
> (3) insufficient specificity in a pleading...

In Rambo v. Greene, 906 A.2d 1232 (Pa. Super. 2006), the Court wrote:

> The pertinent question under Rule 1028(a)(3) is "whether the complaint is sufficiently clear to enable the defendant to prepare his defense," or "whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense."

Id. at 1236.

The elements for a viable cause of action for breach of contract are the existence of a contract, a breach of duty by the defendant under the contract and damages that result from that breach. Albert v. Erie Insurance Exchange, 65 A.2d 923 (Pa. Super. 2013). The inquiry is, therefore, whether the Complaint sufficiently informed the defendant of the facts that form the basis for ARCCA's breach of contract action to allow the defendant to formulate his defense.

In Paragraph 5 of the Complaint, ARCCA alleged that on or about April 13, 2010, the defendant and ARCCA entered into a written contract pursuant to which ARCCA agreed to

8

ARCCA0158

provide professional support services to the defendant for the Case. A copy of the Contract was attached as an exhibit.

The Complaint alleged that ARCCA provided the defendant with professional litigation support services with regard to the defendant's prosecution of the Case from the inception of the Contract to January 30, 2014. The Complaint also alleged that ARCCA billed the defendant a total of $227,404.14. A Ledger Listing Report setting forth a list of the billings to the defendant was attached as an exhibit. The Ledger Listing Report provided the following information:

a) ARCCA's internal matter ID number;
b) The defendant's name;
c) The name of the case, <u>Allred</u>;
d) The date of each bill;
e) The statement number;
f) The amount of each bill;
g) The dates of any payments received;
h) To which statement each payment was applied;
i) The amount of the payment;
j) The dates of any write-offs;
k) To which statement each write-off was applicable;
l) The amount of each write-off; and
m) The "Grand Total."

In Paragraph 8 of the Complaint, ARCCA alleged the total amount billed to the defendant, the total amount paid to ARCCA by the defendant, the total amount of the write-offs and the net amount of unpaid invoices. In Paragraph 10 of the Complaint, ARCCA alleged that based on the Contract interest accrued on the unpaid invoices at the rate of 1.5% per month on unpaid balances over 45 days. Paragraph 11 provides the total amount of interest that was due as of December 31, 2014. In Paragraph 12, the total amount owed by the defendant to ARCCA as of December 31, 2014, was set forth. Paragraph 16 contained an allegation relating to the attorney's fees for which the defendant is indebted to ARCCA.

9

ARCCA0159

It is respectfully submitted that ARCCA's Complaint is sufficiently clear and detailed to allow the defendant to prepare his defense. The Complaint informs the defendant with accuracy and completeness of the specific basis for which ARCCA's Breach of Contract action was brought so that the defendant may know without question how to formulate his defense.

The defendant has complained that ARCCA's Complaint does not contain:

a)  Actual billing statements;
b)  Support for the billing statements;
c)  Work schedules or calendars for ARCCA's experts; or
d)  An accounting of adjustments for services performed by ARCCA or "point-to-point" standard fees.

All of the detailed information that the defendant has complained is missing from ARCCA's Complaint can be obtained through discovery. See, Commonwealth ex rel. Milk Marketing Board v. Sunnybrook Dairies, Inc., 370 A.2d 765 (Pa. Cmmwlth. Ct. 1977), in which the Court wrote:

> …A Complaint is sufficiently specific if it provides the adverse party with enough facts to enable him to frame a proper answer and prepare a defense. [Citation omitted]. The motion is not available as a tool to compel an opposing party to plead evidence,…

Id. at 768.

It is respectfully submitted that the defendant has been provided with sufficient information in ARCCA's Complaint to be informed of ARCCA's claim against him, to draft an Answer to the Complaint and to prepare his defense. Accordingly, it is submitted that the defendant's Preliminary Objection requesting that the Complaint be dismissed for allegedly failing to be sufficiently specific should be overruled, denied and dismissed. In the alternative, in the event Your Honorable Court holds that this particular Preliminary Objection has merit, ARCCA respectfully requests leave to file an Amended Complaint.

ARCCA0160

D.    ARCCA HAS COMPLIED WITH LAW AND RULE OF COURT AS IT HAS ATTACHED ALL WRITINGS TO THE COMPLAINT ON WHICH ITS CLAIMS AGAINST THE DEFENDANT ARE BASED.

Pa.R.C.P. 1019(i) provides, in part, "when any claim or defense is based on a writing, the pleader shall attach a copy of the writing...." The purpose of the Rule, much like Pa.R.C.P. 1028(a)(3), is to assure that the defendant is fully advised of the claim that is being made against him.

In the defendant's Preliminary Objection based on Pa.R.C.P. 1028(a)(2) and 1019(i), the defendant has complained that the Complaint does not contain as exhibits many of the same documents that are listed above in response to the defendant's Rule 1028(a)(3) Preliminary Objection:

a) Billing statements and support therefor;
b) Authorizations signed by the defendant;
c) Schedules and calendars for ARCCA's experts; and
d) Adjustments for services provided by ARCCA and "point-to-point" standard fees.

However, it is respectfully submitted that the documents listed above are not documents on which ARCCA's claim is based. The listed categories of documents constitute evidence of work performed and the amount charged therefor.

ARCCA's claim is a Breach of Contract action. The Contract on which ARCCA's cause of action is based is attached to the Complaint as Exhibit "A." The Ledger Listing Report which is a detailed summary of the amount the defendant owed to ARCCA as of December 31, 2014, is attached as Exhibit "B." All of the other documents that the defendant has claimed should have been attached to the Complaint are evidentiary in nature and will support or contradict ARCCA's claims vis-à-vis work authorized and performed, the time required to perform the work, the costs

11

ARCCA0161

ARCCA spent out of pocket and other related issues. The documents that ARCCA did attach to the Complaint comply with Rule 1019(i). See, Discover Bank v. Stucka, 33 A.3d 82 (Pa. Super. 2011).

It is respectfully submitted that ARCCA has fully complied with Pa.R.C.P. 1019(i) and that the defendant's Preliminary Objection based on Pa.R.C.P. 1028(a)(2) and 1019(i) should be overruled, denied and dismissed. In the alternative, in the event Your Honorable Court holds that ARCCA's Compliant is missing any required documents, ARCCA respectfully requests leave to file an Amended Complaint.

V.      CONCLUSION

Based on all of the above, it is respectfully submitted that the Bucks County Court of Common Pleas is the appropriate venue for ARCCA's cause of action and that Your Honorable Court has personal jurisdiction over the defendant. Consequently, ARCCA respectfully requests that the defendant's Preliminary Objections based on inappropriate venue and a lack of personal jurisdiction be overruled, denied and dismissed.

It is further submitted that the Complaint is sufficiently specific and has attached to it all required documents. Accordingly, ARCCA respectfully requests that Your Honorable Court dismiss the defendant's Preliminary Objections based on Pa.R.C.P. 1028(a)(3) and 1028(a)(2). In the event, the Court concludes that ARCCA's Complaint should be more specific or contain additional documents as Exhibits, ARCCA requests leave of court to file an Amended Complaint.

12

ARCCA0163

STUCKERT and YATES

By: _Steven H. Sailer_

Steven H. Sailer, Esquire
Attorney for Plaintiff
Attorney I.D. No. 32247
Stuckert and Yates
Two North State Street
Newtown, PA 18940
(215) 968-4700

13

ARCCA0162

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

ARCCA, INC.,                          :    NO. 2015-00078
        Plaintiff            :
                           :    ATTY. NO.
    v.                                :
                           :    IT IS HEREBY CERTIFIED
                           :    THAT THIS IS NOT AN
GERALD L. BURNETT,                    :    ARBITRATION MATTER
        Defendant            :
                           :    CIVIL ACTION

## CERTIFICATE OF SERVICE

Steven H. Sailer, Esquire, being duly sworn according to law, deposes and says that he is the attorney for the plaintiff, ARCCA, Inc., in the above-captioned matter, and that on April 23, 2015, he caused to be mailed, by first class mail, a true and correct copy of the Plaintiff's Brief Contra Defendant's Preliminary Objections, which has been filed in the above-captioned matter, to:

        William B. Callahan, Esquire
        2595 Faust Road
        Gilbertsville, PA 19525

        STUCKERT and YATES

BY: _____
        Steven H. Sailer, Esquire
        Attorney for Plaintiff
        Attorney ID No. 32447
        2 North State Street
        P.O. Box 70
        Newtown, PA 18940
        (215) 968-4700

ARCCA0164

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

ARCCA, INC.,                             :    NO. 2015-00078
          Plaintiff                    :
                                       :    ATTY. NO.
      v.                                 :
                                         :    IT IS HEREBY CERTIFIED
                                       :    THAT THIS IS NOT AN
GERALD L. BURNETT,                       :    ARBITRATION MATTER
          Defendant                    :
                                       :    CIVIL ACTION

PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MEMORANDUM OF LAW TO FURTHER SUPPORT
HIS PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

I.    FACTS

       The basic facts of this case are set forth in the Plaintiff's Brief Contra Defendant's

Preliminary Objections.  These facts are incorporated by reference.

       The defendant has attempted to add more facts to those facts that existed at the time the

defendant's Preliminary Objections were filed.   Specifically, the defendant stated in his

Supplement Memorandum of Law.

> Defendants ARCCA, Markusewski and Benda have filed a Notice of
> Removal, seeking to move the case to the Federal District Court for the
> Western District of Louisiana.  The Louisiana defendants did not attack the
> jurisdiction of Louisiana, and in fact in paragraph 9 of the Notice, stated
> "the United States District Court has jurisdiction of this cause of action
> under 28 USC 1332 and the United States District Court for the Western
> District of Louisiana is the proper Court for removal."

(Defendant's Supplemental Memorandum of Law – second page.  The pages are not numbered).

The defendant then argues that the ARCCA defendants have acquiesced to the jurisdiction of

Louisiana over them by filing the Notice of Removal and because they did not challenge the

Louisiana State court's jurisdiction over them.

Case #: 2015-00078   B09   10866358

Code: 188         Judge:26
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt: Z1266757   5/7/2015 1:40:39 PM

ARCCA0165

II.     HOW THE ISSUES ARE RAISED

The Plaintiff's Memorandum of Law in Response to Defendant's Memorandum of Law to further Support his Preliminary Objections to Plaintiff's Complaint is submitted to further respond to the defendant's Preliminary Objections.

III.    ISSUE

A.      Has ARCCA submitted itself to the personal jurisdiction of either the Louisiana Federal Court or the Louisiana State Court by filing a Notice of Removal?

B.      In light of the forum selection clause contained in the Contract, does the Bucks County Court of Common Pleas have personal jurisdiction over the defendant for the purposes of this lawsuit?

IV.     ARGUMENT

A.      ARCCA HAS NOT SUBMITTED ITSELF TO THE PERSONAL JURISDICTION OF EITHER THE LOUISIANA FEDERAL COURT OR THE LOUISIANA STATE COURT BY FILING A NOTICE OF REMOVAL.

Section 1332 of Title 28 of the United States Code provides for subject matter jurisdiction in the federal courts based on diversity of citizenship.[1] See, Swick v. Benscoter, 462 F. Supp. 24 (E.D. Pa. 1978); Humes v. Eckred Corp., 807 A.2d 290 (Pa. Super. 2002); Trombetta v. Raymond James Financial Services, Inc., 907 A.2d 550 (Pa. Super. 2006). However,

> [t]he power of a federal court entertaining a suit based on diversity of citizenship to exercise in personam jurisdiction over a nonresident defendant turns on two considerations. The law of the state in which a federal court sits must confer in personam jurisdiction over the defendant, and if it does, exercise of jurisdiction under state law must comport with basic due process requirements of the United States Constitution.

---

[1] 28 U.S.C. §1332 provides, inter alia:

    (a) . The district courts shall have the original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between—

        (1)  Citizens of different states....

2

ARCCA0166

Hicks v. Kawasaki Heavy Industries, 452 F. Supp. 130, 133 (M.D. Pa. 1978).

Based on the above, it is clear that ARCCA, by filing a Notice of Removal from Louisiana State Court to Louisiana Federal Court, has not submitted itself to the in personam jurisdiction of the Federal Court. Further, it is clear that the language in the Notice of Removal which is quoted in the defendant's Supplement Memorandum of Law is referring to subject matter jurisdiction and not personal jurisdiction. A federal court's jurisdiction over a case based on diversity of citizenship does not confer personal jurisdiction over the parties. The diversity of citizenship merely creates federal jurisdiction that is, subject matter jurisdiction, over the matter in controversy.

Further, ARCCA did not waive any rights in the Louisiana State Court by not challenging the State Court's personal jurisdiction over ARCCA before the Notice to Remove was filed. The whole purpose of filing a Notice to Remove is to have the entire matter in controversy heard by the Federal Court. The issue of the Louisiana Federal Court's in personam jurisdiction over ARCCA will be raised in the Federal Court.

B.    IN LIGHT OF THE FORUM SELECTION CLAUSE CONTAINED IN THE CONTRACT, THE BUCKS COUNTY COURT OF COMMON PLEAS HAS PERSONAL JURISDICTION OVER THE DEFENDANT FOR THE PURPOSE OF THIS LAWSUIT.

With all due respect, in his Supplemental Memorandum of Law, the defendant has failed to advance any new arguments as to why Your Honorable Court should ignore the forum selection clause contained in the Contract and dismiss the above-captioned case for lack of personal jurisdiction. The Court is respectfully referred to Section III, B. and the entirety of ARCCA's original Brief for ARCCA's argument relating to this issue.

V.    CONCLUSION

Based on all of the above, it is respectfully submitted that ARCCA did not acquiesce or

3

ARCCA0167

submit to the jurisdiction of any Louisiana court, State or Federal. Further, it is submitted that the defendant agreed to the in personam jurisdiction of the Bucks County Court of Common Pleas when he signed the Contract that contained the forum selection clause. Consequently, it is respectfully requested that the defendant's Preliminary Objections be overruled, denied and dismissed.

STUCKERT and YATES

BY: _Steven H Sailer_

Steven H. Sailer, Esquire
Attorney for Plaintiff
Attorney ID No. 32447
2 North State Street
P.O. Box 70
Newtown, PA 18940
(215) 968-4700

4

ARCCA0168

LAW OFFICES OF
WILLIAM B. CALLAHAN
BY:  William B. Callahan
I.D. No. 82881
1800 East High Street, Suite 150
Pottstown, PA  19464
(484) 680-0552

Attorney for Defendant

ARCCA, INC.
   Plaintiff

  v.

GERALD L. BURNETT
   Defendant

: IN THE COURT OF COMMON PLEAS OF
: BUCKS COUNTY PENNSYLVANIA
:
: CIVIL ACTION - LAW
:
: No. 2015-00078
:

## CERTIFICATION OF SERVICE

I certify that I did send a copy of Defendant Gerald L. Burnett's Memorandum of Law In Further

Support of His Preliminary Objections To Plaintiff's Complaint and Reply to Plaintiffs' Brief Contra

Defendant's Preliminary Objections, via first class mail, postage prepaid, to the following:

Steven H. Sailor, Esquire
PO Box 70
Newtown, PA 18940
Attorney for Plaintiff

Dated:  May 1, 2015

William B. Callahan
Attorney for Defendant,
Gerald Burnett

ARCCA0169

# IN THE COURT OF COMMON PLEAS
## BUCKS COUNTY, PENNSYLVANIA
### CIVIL ACTION-LAW

|  |  |
|---|---|
| | No. 2015-00078 |
| ARCCA, INC. | : |
| v. | : |
| GERALD L. BURNETT | : |

## ORDER

**AND NOW,** this _8th_ day of June, 2015, upon consideration of the Preliminary Objections filed by Defendant, Gerald L. Burnett, to the Complaint of Plaintiff, ARRCA, Inc., and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Preliminary Objections are **OVERRULED.**

BY THE COURT:

ALAN M. RUBENSTEIN, J.

**EXHIBIT**

_B-4_

ARCCA0170