UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GERALD L. BURNETT                              CIVIL ACTION NO. 5:15-CV-1214

VERSUS                                         JUDGE ELIZABETH FOOTE

ARCCA INCORPORATED                             MAGISTRATE JUDGE HORNSBY
MICHAEL L. MARKUSEWSKI
AND DR. BRIAN J. BENDA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# PLAINTIFF-GERALD L. BURNETT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, comes the Plaintiff-Gerald L. Burnett, who with respect does object and oppose the Defendants' Motion to Dismiss [Doc. #17] as follows, to-wit:

## I.
### STATEMENT OF APPLICABLE FACTS

1. The Plaintiff herein is Gerald L. Burnett.
2. The Defendants are:
   a. ARCCA Incorporated, a Pennsylvania corporation; and
   b. Michael L. Markusewski; and
   c. Dr. Brian J. Benda.
3. The instant lawsuit was filed by Burnett, in the 26th JDC of Bossier Parish, Louisiana with the Original Petition and the First Amended Petition, [Doc. #1, Attachment #2], which suit was removed to this Honorable Court by Defendants. [Doc#1, Notice of Removal; Doc. #2 Removal Order].
4. The Defendants' Motion to Dismiss was filed 17 July 2015 [Doc. #17] together with their Memorandum in Support of Motion to Dismiss [Doc. #17-1].

## II.
## BURNETT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### A.
### INTRODUCTION

Defendants' Motion to Dismiss [Doc. 17] in this action, incorrectly and inaccurately states that,

> "1. This suit arises from a dispute over the payment by plaintiff Gerald Burnett [Burnett] to defendants ARCCA, Markusewski and Benda for professional engineering services rendered by defendants." [Doc. 17 Motion to Dismiss @ pg. 1].

Further, the Defendants' Memorandum in Support of Motion to Dismiss incorrectly states the same position. [Doc. #17-1 @ pg. 1].

To the contrary, Burnett's instant Louisiana suit [hereinafter sometimes referred to as the "Louisiana litigation"] was removed by Defendants from the 26th JDC, Bossier Parish, Louisiana, Docket #146202, wherein Burnett's Original Petition and the First Amended Petition were filed. [Doc. #1, attachment #2]. Burnett's Bossier Parish, La. lawsuit did not arise from a debt payment dispute over services alleged to have been rendered by ARCCA, as ARCCA inaccurately and incorrectly postulates. Rather a review of Burnett's suit will confirm that the basis of the Bossier Parish lawsuit, is the important case of **Marrogi vs. Howard,** #2001-CQ-1106, 805 So.2d 1118 [La. SCt., 2002], on a certified question accepted by it from the United States Court of Appeal for the Fifth Circuit. The Louisiana Supreme Court was presented with the issue not previously determined in Louisiana or by any other court applying Louisiana law [805 So.2d @1122] as to whether a "retained expert witness who is alleged to have performed litigation support duties deficiently to the detriment of the party who retained that expert" was entitled to witness immunity. In Marrogi, the expert was from Florida, a contract was signed, he did his calculations in Florida and testified in Louisiana, and thereafter alleged witness

4

immunity to Plaintiff's assertions that Howard "was deficient in the performance of his duties to provide litigation services, including formulating opinions and recommendations, as well as giving testimony before or during the trial." 805 So.2d @1128.

The Louisiana Supreme Court held

> "that claims in connection with a retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity. " 805 So.2d @ 1128.

It was further held, that

> "Clearly then, Dr. Marrogi has made the allegation that the defendant was negligent, not in having a particular opinion, but in formulating his opinion, i.e., the defendant was negligent in performing professional services such as calculations upon which his expert opinion testimony would ultimately be based. That defendant Howard's erroneous calculations were, in this case, presented in an affidavit and in deposition testimony, rather than, say a written report, does not change our view that an expert witness hired to perform litigation support services but who performs those services in a negligent manner, cannot hide from civil liability to his client behind the shield of witness immunity." 805 So.2d @ 1133.

The Louisiana Supreme Court answered the certified question by stating,

> "We therefore answer the question certified to us in the negative: Witness immunity or privilege in Louisiana does not bar a claim against a retained expert witness asserted by a party who in prior litigation retained the expert, which claim arises from the expert's allegedly negligent performance of his agreed upon duties to provide litigation support services."

It is in the instant case that Burnett sued ARCCA, Mr. Markushewski and Dr. Benda in Louisiana state court, alleging that as Plaintiff's attorney that he had retained Defendants in the prior suit styled "Paul Day Allred and Jimmy Lou Reeves Allred vs. Parker [Honda/Takata]", Docket #117886, 26th JDC, Bossier Parish, La., which was a products liability lawsuit over the

5

death of their son, Paul Day Allred, Jr. and relied upon <u>Marrogi vs. Howard</u> and the allegations therein.

Burnett did file his Plaintiff's First Amended Petition therein and specifically pled that the ARCCA defendants were actually in Bossier Parish, Louisiana and did testify in Bossier Parish Court. Honda/Takata defendants deposed the ARCCA defendants multiple times, and included the two [2] ARCCA REPORTS, two [2] ARCCA surrogate fit-checks, and the ARCCA opinions expressed therein in writing and in their depositions. Said experts testified at trial. Experts for Honda/Takata including Dr. McNish performed their expert testing and their 'recreating of the ARCCA surrogate fit check' as shown by copies thereof annexed as Exhibits thereto, and in paragraph #30 thereof showed the conclusion by Honda/Takata experts as to the ARCCA experts, that

> "The above photographs show the identical excess "slack" shown in Plaintiff's surrogate study and conclusively establish that the excess slack was generated [by ARCCA] as a result of the **incorrect** measurement of the approximately 64.5 inches of webbing from **the top of the sleeve** rather than from the outboard anchor point, resulting in an additional 8-9 inches of webbing not present at the accident scene". First Amended Petition @ paragraph 30.

Additionally, Honda/Takata's experts confirmed the mistake in calculations by the ARCCA defendants in detail, and reached the conclusion that,

> "III. Conclusion
> Plaintiffs expert's clearly erroneous measurement and failure to document his surrogate study renders the study irrelevant, unreliable and inadmissible. For these reasons, as well as those previously identified in defendants initial motion, defendants respectfully request that this Court exclude all evidence of Plaintiff's surrogate study because it has no probative value, is unreliable, was not conducted under conditions substantially similar to those of the subject accident and is unfairly prejudicial."
> First Amended Petition, paragraph #33.

6

The subsequent civil jury trial, the testimony of ARCCA experts and that of Honda/Takata experts, as well as the quick adverse jury verdict, reflect thereon.  It is further substantiated that Burnett's First Amended Petition was seeking Louisiana Civil Code Art. 2315, tort recovery in damages  and for both fraud and misrepresentation being committed by the ARCCA defendants, that actionable calculation/measurement errors were made, that failure to provide competent litigation support services and including formulating opinions and recommendations and giving testimony before and/or during trial for which they should be held liable,[i.e. professional malpractice] and for civil law fraud in their misrepresentation and/or suppression of the truth and/or their silence and inaction.  First Amended Petition, paragraph #34.

When taken <u>in toto</u> Burnett's allegations constitute   Defendants' professional engineering malpractice tort under LSA-CC Art. 2315  and Defendants' civil law fraud under LSA-CC  Art.1958 et al,   as set forth more fully therein and which is addressed with particularity hereinafter, based upon substantive Louisiana law, as recognized by the United States,  Court of Appeals,  Fifth Circuit and the Louisiana Supreme Court in <u>Marrogi vs. Howard</u>, #2001-CQ-1106, 805 So.2d 1118 [La.SCt., 2002] as to the question certified therein [248 F.3d 382, C.A. 5th, 2001], accepted 794 So.2d 778 [La. SCt., 2001] and remanded consistent therewith.

In stark contrast, Defendants' Motion to Dismiss states that the Pennsylvania suit is a payment dispute/debt collection action [hereinafter sometimes referred to as the "Pennsylvania litigation"] styled " ARCCA, Inc. vs. Gerald L. Burnett, In the Court of Common Pleas of Bucks County Pennsylvania, Civil Action-Law, No. 215-00078".  This Pennsylvania  litigation is on-going and involves purely a payment dispute/debt collection claim by ARCCA and defenses

7

thereto and the amount if any owed by Burnett to ARCCA. This stands in stark contrast to the instant Louisiana litigation hereinabove addressed which is not covered by nor included in the ARCCA letter agreement.

B.
ISSUES

1. Are Defendants' reliance upon the letter agreement of April 2010 to support their Motion to Dismiss misplaced?
2. Are Defendants' reliance upon a purported forum selection clause contained within the letter agreement of April 2010 to support their Motion to Dismiss the instant Louisiana lawsuit misplaced and is the forum selection clause valid and/or applicable in reference to the instant case as applied?
3. Does federal law mandate the enforcement of the ARCCA forum selection clause in the instant case?
4. Is the forum selection clause mandatory or permissive in application to the instant case?
5. Are defendants' reliance upon the Atlantic Marine case [In Re Atlantic Marine Construction Co. vs. U.S. District Court for W. D. of Texas, 571 U.S. ____ 134 S.Ct. 568, 187 L.Ed.2d 487 [2013] misplaced and inapplicable to the instant case?
6. Are defendants' reliance upon the Atlantic Marine Const. Co. prodigy cases misplaced?

C.
BURNETT'S SUGGESTED RESPONSE

1. The ARCCA letter agreement of April 2010 has been misquoted and the contents thereof are not as represented and reliance thereon for the instant Louisiana case is misplaced.
2. The forum selection clause contained in the letter agreement is not mandatory but permissive, and has no application to the instant case. As to the ARCCA letter agreement, the debt collection/payment dispute action is already on-going in Pennsylvania. The concept of Forum Non Conveniens and its attempted application to the instant case is misplaced.
3. In Re Atlantic Marine Const. Co. actually supports Plaintiff and not the Defendants, due to the absence of a valid forum selection clause and/or one that is not applicable to the Louisiana litigation, and because it does not include the Louisiana litigation.
4. The case prodigies from Atlantic Marine Const. Co. do not support Defendants.

8

## D.
## BURNETT'S ARGUMENT

The ARCCA letter agreement:
1. As alleged in his Original Petition, paragraphs #6 and 7. Burnett learned of ARCCA from its web site and contacted them. As his affidavit annexed hereto as Exhibit "    " confirms, he talked via phone with Mr. Steve Dines, ARCCA Business development Manager in Tampa, Florida, and that on or about 12 April 2010, he received from Ms. Vivian Speller a one [1] page ARCCA letter agreement dated 8 April 2010 that was already signed by Sioux M. Klinsky, Chief Operations Officer, ARCCA Incorporated and consist of five [5] paragraphs and attachments thereto, as is more fully shown by the copies thereof, which are annexed hereto and incorporated herein by reference as attached Exhibit "II (a) – (i)".and which were emailed to Burnett in Shreveport, Louisiana.
2. A review of the ARCCA letter agreement confirms that it provides in relevant part in the first paragraph that,
    > "This letter confirms our agreement that Gerald L. Burnett, Esquire on behalf of Gerald L. Burnett Attorney at law has retained ARCCA, Inc. to provide **professional support services** in connection with the Allred vs. Honda/Takata-products litigation."
    > [emphasis added].
3. Exactly what constitutes "professional support services" is nowhere addressed or defined in the letter agreement or what ARCCA was undertaking to do is not setforth therein. Further, Burnett shows that there were no negotiations, that he had no input at all, that no changes were made to the letter agreement, and that no benefit or other consideration was received by him, and that it was essentially 'take it or leave it' by ARCCA, and if so, a retainer of $5,000 was to be paid by Burnett, together with sending the requested materials by ARCCA, which he did on or about 13 April 2010.
4. The reference in the heading of the ARCCA letter agreement to "the Allred vs. Honda/Takata-products litigation" is the 26th JDC, Bossier Parish, Louisiana, styled "Paul Day Allred and Jimmy Lou Reeves Allred vs. Parker [Honda/Takata], Docket #117,886, 26th JCD, Bossier Parish, Louisiana."
5. The second paragraph of the letter agreement simply provides that "ARCCA will provide an initial evaluation and analysis with an oral report…upon receipt of the materials requested [see below]…" This they did, and they were obligated to do no more, nor was Burnett, except as to that which they agreed upon by ARCCA proposals and Burnett's signed authorization subsequent thereto. As to any not authorized by Burnett, and the amount thereof, are presented in the debt collection/payment dispute lawsuit in Pennsylvania and other issues related thereto.

9

6. The third paragraph provides that the ARCCA requested materials are listed as "PAR [Police Accident Report/incident report], medical records pertaining to this subject claimant/plaintiff, color photographs of the subject vehicle/accident site/injured party and witness statements or deposition transcripts for EMT, Police, 1st responders, etc."
7. The fourth paragraph list the attachments and directs that further details "…can be obtained from your Project Manager".
8. The fifth paragraph provides for a retainer payment of $5,000 'which authorizes ARCCA to proceed on the case', and that "you may not identify us as an expert witness to the court or otherwise request work product until this Agreement has been signed and returned to us and you have paid the initial retainer".
9. The Terms and Conditions attachment to the letter agreement provides in part,
    > "The parties agree that any dispute, controversy or claim arising under or in connection with this Contract shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania."

   Burnett shows that the instant Louisiana lawsuit is outside the provisions thereof, is not covered thereby and is based upon Louisiana substantive law as is shown herein.
10. The ARCCA term "professional support services" as contained in the ARCCA letter agreement of April 2010 is never mentioned even a single time, in the Defendants' Motion to Dismiss [Doc. 17] or their Memorandum in Support of Motion to Dismiss [Doc. 17-1]. Rather instead, Defendants make reference to 'professional engineering services rendered by defendants' [Doc. 17. Motion to Dismiss @ paragraph #1], and
    > "Burnett retained ARCCA to provide engineering consulting services in a Louisiana lawsuit. Burnett and ARCCA entered into a written contractual agreement for those services" [Doc. 17, Motion to Dismiss @ paragraph #2.

    Defendants make reference in their Memorandum in Support of Motion to Dismiss that,
    > "this suit arises from a dispute over the payment by plaintiff Gerald Burnett [Burnett] to defendants ARCCA, Markusewski and Benda for professional litigation and expert witness services rendered by defendants." And "Gerald L. Burnett retained ARCCA to provide engineering consulting services in a Louisiana lawsuit." [Memorandum in Support of Motion to Dismiss, @ pg. 1, first sentence and pg. 2 second paragraph, first sentence].
11. The ARCCA billing payment dispute with Burnett, including the amount thereof, the legal obligation therefor and the legal authorization and/or lack thereof, and defenses thereto, is on-going in Pennsylvania., which is separate and distinct from the Louisiana litigation and the causes of action/right of action asserted therein under substantive Louisiana law and as articulated in Marrogi.

<u>The Forum Selection Clause Is Not Valid:</u>

The Forum Selection Clause Of The Arcca Letter Agreement Is Not Valid As To The Instant Litigation And Which Is Outside The Limited Scope Thereof, It Was Not Bargained For Nor Was Consideration Given Therefor And The Debt Collection Lawsuit Pertaining Thereto Is On-Going In Pennsylvania As Provided Therein And Which Is Separate And Distinct From The Instant Louisiana Proceeding

A. The ARCCA letter agreement of 8 April 2010 does not contain a Forum Selection clause.
B. The non signed or initialed ARCCA attachments to the letter agreement were [Terms and Conditions, Rate Sheet, Rate Schedule Sheet and Evidence Storage by ESI]
C. The FSC, if such is present, was not negotiated, it was boilerplate language by ARCCA, no benefits were achieved as a result thereof and it does not incorporate nor apply to the substance of the Louisiana lawsuit. More specifically at unnumbered page two [2] of the Terms and Conditions, it is provided,
"The parties agree that any dispute, controversy or claim arising under or in connection with this Contract shall be decided exclusively by and in the Court of Common Pleas Buck County, Pennsylvania."
D. There was no bargained for consideration/benefit to or by Burnett
E. The instant Louisiana litigation is separate and apart and distinguishable from the debt collection/payment dispute lawsuit in Pennsylvania and is not within the four-corners of the letter agreement, in that the instant lawsuit arises from Louisiana civil code tortious conduct and civil law fraud under the Louisiana Civil Code. It should stand on its own footing in Louisiana.
F. Even if arguendo and to the extent that the FSC of the letter agreement is applicable, it is permissive not mandatory, and not applicable to nor encompasses the Louisiana proceeding. It is inherently unfair, outside the scope, purpose and intent thereof as applied hereto. Further, it is ambiguous, susceptible to multiple interpretations, and is ambiguous as to what ARCCA is seeking to do contractually. As such it is permissive and not mandatory, and should not be enforced.

Different issues are presented in connection with the Defendants' Motion to Dismiss, central to which is their reliance on Atlantic Marine Const. Co. vs. United States District Court for Western District of Texas et al, 571 U.S. _____, 134 S. Ct. 568, 187 L.Ed. 2d 487 (2013), hereinafter referred to as Atlantic Marine Const. Co. , to support the Defendants sole position that the letter agreement attachments, contain a valid Forum Selection Clause which is

11

enforceable, specifically in the instant Louisiana litigation and that Defendants' Motion to Dismiss is presented to this Honorable Court on the basis of FNC seeking dismissal without prejudice.

However, to the contrary, Burnett shows that a unanimous United States Supreme Court, speaking through Justice Alito made it totally clear that the holding and application of Atlantic Marine and the contents thereof apply only if a forum selection clause is valid, which also applies to its case prodigies. It is respectfully submitted that the FSC of the ARCCA letter agreement attachments is not valid and is not applicable to the instant case. Further, Atlantic Marine is a 'transfer case' and not a dismissal case, such that the doctrine of FNC as explained by the Supreme Court in Atlantic Marine must be applied.

More specifically, it was stated and held by the United States Supreme Court, that

> "…When the parties have agreed to a *valid* forum selection clause, a district court should ordinarily *transfer* the case to the forum specified in that clause."5[emphasis added]
> And,
> "5.Our analysis presupposes a contractually *valid* forum selection clause." [emphasis added]. Slip opinion @ pg 14

A. In the instant suit, pending before this Honorable Court, and which the Defendants seek to dismiss, Burnett shows that there is absent a valid Forum Selection Clause, ["FSC"]
B. Encompassed within the ARCCA letter agreement that is applicable to the instant case, for the following non-exclusive reasons:
   1. The one page retainer agreement contains no FSC.
   2. The one page letter agreement is in essence a retainer letter agreement whereby ARCCA agreed to provide 'services'/professional support services in the Allred vs. Honda/Takata case in Louisiana subject thereto.
   3. The one page letter agreement was signed by Sioux M. Klinsky, Chief Operations Officer, ARCCA Incorporated, forwarded to Burnett, and thereafter with no negotiations/benefit, signed by Gerald L. Burnett, and provided that "Further details concerning this particular assignment, including work progress, deliverable requirements and updated budget estimates, can be obtained from your Project Manager". Any work thereunder required specific prior approval by Burnett

12

4. There were no negotiations as to the content thereof nor the specifics of same.
5. No experts were identified, nor was the scope of work stated, nor any details given.
6. Burnett signed only the one page agreement as did ARCCA. No other attachments were signed or initialed by either party. Subsequent "Authorizations" and/or the lack thereof are relevant to the Pennsylvania debt collection lawsuit.
7. The agreement was contingent upon payment of 'the initial $5,000 retainer' and to the delivery of various materials specified by ARCCA on the one page letter agreement by Burnett, which he did as shown more particularly by the attached affidavit and the attachments thereto.
8. The Terms and Conditions document was not signed by any parties.

Atlantic Marine involved a Motion to Transfer from one federal district court to another federal district court as per a FSC that mandated same as to the subject matter of the agreement and the payment dispute over the construction documents. In the instant case, transfer is not sought nor available.

Alternatively, and only if the FSC is held applicable to the ARCCA letter agreement, Burnett shows that there is already pending in Bucks County, Pennsylvania a contested civil lawsuit whereby ARCCA seeks debt collection/payment dispute of monies allegedly due by Burnett for professional services of ARCCA.

In direct and sharp contrast, is the instant Louisiana lawsuit, which does not seek "claim or claims under this Contract" nor for a "dispute, controversy or claim arising under or in connection with the Contract", but rather, seeks damages for professional engineering malpractice tort under La. CC Art. 2315 and civil law fraud under Art. 1958, on the basis of the facts alleged therein and as is more fully shown by the Bossier Parish, Louisiana lawsuit removed by Defendants to this court.

The ARCCA agreement is not applicable to the instant Louisiana legal proceeding, which stands on its own, under substantive Louisiana law of the Civil Code, and which was

expressly recognized and applied in the <u>Marrogi</u> case.  The letter agreement FSC is not valid as to nor does it have application to cause the dismissal of the instant Louisiana lawsuit.

In the United States District Court, Western District of Louisiana, Judge Hicks denied the Defendants' Motion to Dismiss for Improper Venue involving a FSC, and found that the FSC was ambiguous and permissive, thereby resulting in denial.  <u>Pratt Paper [LA], L.L.C. vs. JLM Advanced Technical Services and Travelers Insurance Co</u>., [5:11-CV-01556] [#11-1556, DOC. 62] .

Importantly, Judge Hicks stated,

> "Where a forum selection clause is ambiguous and subject to more than one reasonable interpretation, the clause is properly construed as permissive.  III. Furthermore, the Fifth Circuit has held that where a forum selection clause is subject to opposing, yet reasonable interpretations, it must be construed more strongly against the drafter.  See Keaty, 503 F.2d @ 957."

There can be no dispute but that ARCCA drafted the entire letter agreement including attachments, and therefor under Pratt Paper, it is to be construed more strongly against ARCCA as its drafter.

> "…the specific forum selection clause at issue is ambiguous, making it permissive  rather than mandatory at this state of the litigation."

Judge Hicks cited <u>Bremen and Caldas & Sons, Inc. v. Willingham</u>, 17 F.3d 127 [5th Cir. 1994] citing <u>Kealy v. Freeport Indonesia,Inc</u>., 503 F.2d 955 [5th Cir. 1974] that,

> "the Bremen presumption of validity only applies in mandatory forum selection clauses".

Judge Hicks, also stated,

> "Where a forum selection clause is ambiguous and subject to more than one reasonable interpretation, the clause is properly construed as permissive.  *** Applying these principles, it is clear that the forum selection clause in the contract at issue is permissive.

14

> Judge Hicks further held that the language contained in the contract is "to be construed more strongly against the drafter", there JLM and here ARCCA.

Lastly, Judge Hicks held,

> "However, the forum selection clause contained in the Standard Terms is ambiguous. It is reasonable to interpret the forum selection clause to only mandate use of the Outagami County Court in Appleton Wisconsin to consummate final settlement." [Pratt Paper [La] L.L.C.vs. JLM Advanced Technical Services and Travelers Insurance Company, #5:11-cv-01556-SMH-MLH, Doc # @ pg. 9].

The Motion to Dismiss was appropriately Denied in the Order of 31 January 2013. [Doc. 63]

There was no negotiating, the standard one page ARCCA agreement was presented signed and demanded, furnished and signed, and was silent, vague and ambiguous as to that which ARCCA was doing.

What then precisely does the ARCCA FSC mean?

In Atlantic Marine Const. Co. the General Contractor entered a subcontract for certain construction work for a child-development center at Ft. Hood in the Western District of Texas. Payment disputes arose and the subcontractor filed suit in Texas. The subcontract included a FSC that stated "that all disputes between the parties shall be litigated in the Circuit court for the City of Norfolk Virginia, or the United states District Court for the eastern District of Virginia, Norfolk Division." In Re Atlantic Marine Const. Co,#12-929-571-U.S. 7236, (2013); 701 F.3d 736, 737-735 [CA5 2012].

Thus it was a transfer case from one federal district court to another federal district court.

Importantly, the issue as to a FSC being mandatory or permissive, in post-Atlantic Marine FNC rulings, has been recently addressed and resolved, by opinion of 26 January 2016 of the United States Court of Appeals, for the Fifth Circuit with the panel composed of Circuit

15

Judges Smith, Wiener and Graves, in <u>Weber vs. Pact SPP Technologies, AG</u>, #15-40432, when it held.

> "Therefore, we adopt a mixed standard of review for post-Atlantic Marine FNC rulings involving FSCs. We review the district court's interpretation of the FSC and its assessment of that clause's enforceability *de novo,* then we review for abuse of discretion the court's balancing of the private and public interest factors.
>
> III.
> We first decide de novo, whether the FSC is mandatory or permissive. Our case law recognizes a sharp distinction between mandatory and permissive FSCs. 13 A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal. An FSC is mandatory only if it contains clear language specifying that litigation ***must*** occur in the specified forum- and language merely indicating that the courts of a particular place "***shall*** have jurisdiction" [or similar] is insufficient to make an FSC mandatory. 14" [emphasis added]

The Fifth Circuit Court of Appeals followed its three-step approach under the facts of that case, and upheld the FSC as being mandatory and enforceable, and upheld the district court judgment of dismissal without prejudice. For purposes of the instant case, the use of the word "shall' as explained by the Court of Appeals as opposed to the word "must", makes the FSC permissive, which provides,

> "The parties agree that any dispute, controversy or claim arising under or in connection with this Contract ***shall*** be decided exclusively by and in the Court of Common Pleas in Bucks County, Pennsylvania." [Terms & Conditions, Attached herein as Exhibit "II-(d)"].

16

Thus it is that even if the FSC is valid, which is disputed, the use of the permissive word "shall" makes the FSC permissive and not mandatory, with the result that the case is neither transferred or dismissed.

## E.
## CONCLUSION

It is respectfully shown that the Defendants Motion to Dismiss based upon the permissive FSC of the Pennsylvania letter agreement, and the doctrine of FNC, should be denied and the case proceed forward in Louisiana, for and upon the grounds setforth hereinabove.

        SIMMONS, MORRIS & CARROLL, L.L.C.

        *s/B. Trey Morris*
By: _____
        B. Trey Morris, APLC (#28162) – TA
        509 Milam Street
        Shreveport, LA 71101
        (318) 221-1507 –Telephone
        (318) 221-4560 –Fax
        *btmorris@shreveportlaw.net* –Email

        Attorney for Plaintiff-BURNETT

### CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to <u>All Counsel of Record</u>.

        *s/B. Trey Morris*
        _____
        B. Trey Morris