UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| GERALD L. BURNETT | : | CIVIL ACTION NUMBER 5:15-CV-1214 |
| VERSUS | : | JUDGE ELIZABETH FOOTE |
| ARCCA, INCORPORATED, ET AL | : | MAGISTRATE JUDGE MARK HORNSBY |

**REPLY MEMORANDUM OF DEFENDANTS, ARCCA, INC., MICHAEL L. MARKUSEWSKI AND DR. BRIAN J. BENDA TO PLAINTIFF GERALD L. BURNETT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants ARCCA, Inc., Michael L. Markusewski and Dr. Brian Benda (herinafter referred to collectively as "ARCCA") submit this memorandum to respond to Burnett's opposition to ARRCA's Motion to Dismiss. However, ARCCA also wishes to address the recent holding of the Fifth Circuit in *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 769 (5th Cir. 2016). *Weber* now appears to be the precedential Fifth Circuit authority concerning forum selection clauses, so a discussion of its application to this case is appropriate. The *Weber* holding supports every argument made by ARCCA in this case and contravenes Burnett's opposition arguments. ARCCA also refers the Court to its original Motion and Memorandum (Doc. 17). All arguments made in those filings are incorporated herein.

## I.     *WEBER V. PACT XPP TECHNOLOGIES, AG*

In *Weber*, a German company was sued by its former CEO in The Eastern District of Texas. The employer, PACT, filed a motion to dismiss based on a forum selection clause in Weber's employment contract.  The District Court enforced the FSC, granting the motion to dismiss.  The plaintiff appealed.

The Fifth Circuit began by recognizing the FSC enforcement rules established by the Supreme Court in *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, U.S. 134 S.Ct. 568, 582, 187 L.Ed.2d 487 (2013).  Following those guidelines, the court then addressed the issue of whether the FSC was mandatory or permissive by evaluating its language.[1] The Court noted that, in "past FSC jurisprudence," many courts had defaulted "to general contract principles" or "the federal-general-common-law approach" rather than following the analysis required by *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) and *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941), starting with application of the conflict-of-laws rules of the forum state.  *Id* at 770.[2] The *Weber* court then applied Texas conflict of laws rules to determine that German law should be applied to interpretation of the FSC. *Id.* at 773.

The *Weber* FSC provided, in relevant part, that:

". . . [t]o the extent permitted by law, jurisdiction, venue, courts, and place of performance shall be situated at the corporate seat of PACT AG. (in Germany)" *Id.* at 769. (explanation added)

Applying German law, the *Weber* court found that the FSC was mandatory because it used the word "shall" and conferred exclusive and mandatory jurisdiction in the specified forum. *Id.* at 773 - 776.[3] Next, applying the "strong presumption in favor of enforceability" required by

---

[1] The original FSC in Weber was written in German, so the Court first had to decide the "best available translation."

[2] The Court noted that, in some cases, there is no substantive difference in the potentially applicable laws, but in some, the difference in law can be determinative. As discussed below, there are no determinative differences between the states' laws potentially applicable to this case.

[3] Burnett completely misconstrues the holding of *Weber*, arguing that, ". . . the use of the word 'shall' [sic] as explained by the Court of Appeals [in *Weber*] as opposed to the word "must", makes the FSC permissive . . ." (Doc. 30-2). That analysis is simply incorrect. In fact, the *Weber* court, like all of the other courts cited in ARCCA's original memorandum, found that the FSC was mandatory **because** it used the word "shall" to specify one jurisdiction to the exclusion of all others. *Weber* at 768-769.

*Atlantic Marine,* the court held that the FSC was enforceable. Finally, the court determined that "public-interest factors" did not require the court to ignore the parties' agreement. Based on this analysis, the Fifth Circuit affirmed the District Court's enforcement of the FSC and dismissal of the suit. *Id.* at 775-776.

The *Weber* analysis applies to this case as follows:

1.  This Court, sitting in Louisiana, should apply Louisiana's conflict-of-laws provisions, which are *Louisiana Civil Code* articles 3515–3556.

2.  *Louisiana Civil Code* article 3540 provides that "All other issues of conventional obligations are governed *by the law expressly chosen* or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." See also *NorAm Drilling Co. v. E & PCO Int'l, LLC,* 131 So.3d 926, 929 (La. App. 2 Cir. 2013) (citing *Mobil Exploration & Prod. U.S. v. Certain Underwriters Subscribing to Cover Note 95–3317(A),* 837 So.2d 11 (La. App. 1 Cir. 2002); *Energy Coal, S.p.A. v. CITGO Petroleum Corp.,* 2015 WL 5123867, at *2 (W.D. La. Aug. 31, 2015).

3.  In the ARCCA agreement, the parties expressly chose to have all contractual interpretation issues determined under Pennsylvania law. Accordingly, the interpretation of the FSC should be determined under Pennsylvania law.

4.  Under Pennsylvania law, the FSC is mandatory. Pennsylvania has adopted "the modern trend" of upholding the enforceability of FSCs when the clause is clear and unambiguous. *O'Hara v. First Liberty Ins. Corp.,* 984 A.2d 938, 942 (Pa. Super. 2009). Forum selection clauses in a commercial contract between business entities are **presumptively valid** and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy. *Id.* (citing *Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant Enterprises, LLC,* 915 A.2d 647 (Pa. Super. 2006), *appeal denied,* 597 Pa. 720, 951 A.2d 1166 (2008))  (emphasis added). When a FSC is presumptively valid, the court is "required to give effect to that language." *Id. a*t 942. **Burnett himself admitted that "forum selection clauses are generally valid and enforceable in the Commonwealth of Pennsylvania" in a pleading in the Pennsylvania lawsuit brought by ARCCA to recover the unpaid balance for the services rendered to Burnett.**

(Doc.17-3, P. 249).[4]   The forum selection clause in this case is clear and unambiguous. Under Pennsylvania law, it is presumptively valid and mandatory.

5.   The FSC here is enforceable. There is a "strong presumption in favor of enforceability" required by *Atlantic Marine.* There are no "public-interest factors" that require the Court to ignore the parties' agreement. The FSC is mandatory and must be enforced.

## II.   THE ARCCA AGREEMENT AND FSC ARE VALID AND ENFORCEABLE

Burnett makes several arguments that are, in substance, one argument – that that the ARCCA agreement (or at least the FSC) is not a binding contract.   However, his factual arguments are contradicted by other arguments and statements in his memorandum and by evidence in the record, including his evidence. Burnett's legal arguments are made with virtually no citations to supporting authority, for good reason – they have no support in any law that is even potentially applicable.

First, Burnett argues that there was no written agreement containing a FSC (Doc. 30-2, P. 524-525).   This argument is contradicted by Burnett's other statements – in the very next sentence of his opposition, Burnett admits that the "attachments to the letter agreement" included the Terms and Conditions, with the FSC.

---

[4] The result would be the same under Louisiana law. The Louisiana Supreme Court and appellate Courts have "repeatedly held that that forum selection clause[s] are generally legal and binding in Louisiana, and anyone seeking to set one aside bears a heavy burden of proof." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 148 So.3d 871, 874 and all cases cited at Fn. 11 (La. 7/1/14), *reh'g denied* (Aug. 25, 2014). Further, in *Rimkus,* a case which is factually similar to the case at bar, the Louisiana Supreme Court specifically held that FSCs are not *per se* violative of Louisiana public policy. *Id.* In doing so, *Rimkus* further supports the cases cited above which have generally held that forum selection clauses are mandatory unless enforcement is unreasonable and unjust or against strong public policy.

The argument is also contradicted by the undisputed evidence - the ARCCA agreement contains a cover letter that was countersigned by both parties, which specifically refers to and incorporates several attachments:

> "This agreement is subject to ARCCA's Standard Rate Schedule, Terms and Conditions, and Invoicing Policy (attached), all of which are hereby made a part of this agreement." (Doc. 17-2, P. 225)

The Terms and Conditions start on the very next page of the agreement (Doc. 17-2, P. 226) and include a title specifically referring to Burnett and work on the case in question.

The argument is also refuted by Burnett's own affidavit and supporting documents. He admits receiving the email from Vivian Speller with the ARCCA agreement, including the "attachments," which included the Terms and Conditions and he filed the email with attachments into the record. (Doc. 30-4, P. 551) Ms. Speller's email states that ARCCA's agreement with terms and conditions is attached. Burnett's return letter to Ms. Speller with the signed Agreement and payment absolutely confirms his reading, understanding and acceptance of the entire agreement. (Doc. 30-4, P. 547) Burnett fully admits that he signed the first page of the agreement, which specifically states that the Terms and Conditions from a part of the "Agreement."

Finally, the argument that the Terms and Conditions are not part of his contract with ARCCA has no support in any potentially applicable law. Under the laws of both Pennsylvania and Louisiana, contracts are to be interpreted in accordance with the plain meaning of the language of the contracts and not construed so as to lead to absurd consequences. *Prejean v. Guillory*, 38

So.3d 274, 2010-0740 (La. 7/2/10), rehearing denied 45 So.3d 1035 2010-740 (La. 9/17/10); *LJL Transp., Inc. v. Pilot Air Freight Corp.,* 599 Pa. 546, 962 A.2d 639, 647 (2009).

Under both Pennsylvania and Louisiana law, once Burnett accepted ARCCA's offer, that acceptance included all terms and conditions of the offer. *Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 418–19, 491 A.2d 882, 887 (1985). *Shelter Mut. Ins. Co. v. Rimkus, supra*; *Woods v. Morgan City Lions Club,* 588 So.2d 1196 (La. App. 1 Cir. 1991); *Wise v. Lapworth*, 614 So.2d 728 (La. App. 5 Cir. 1993); *Ceco Corp. v. Mid-Gulf Construction, Inc.*, 396 So.2d 474 (La. App. 4 Cir. 1981); *Harleaux v. Wood*, 542 So.2d 747 (La. App. 4 Cir. 1989).

Burnett also suggests that the ARCCA agreement and/or the FSC are "not valid" because the Terms and Conditions were not "signed or initialed" by either party. (Doc. 30-2, P. 527-528). Again, there is no statutory or jurisprudential support for this argument. Under Pennsylvania law a contract is formed when the parties to it 1) reach a mutual understanding (offer and acceptance), 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity. *See Geisinger Clinic v. DiCuccio,* 414 Pa.Super. 85, 606 A.2d 509, 512 (1992). Consideration consists of a benefit to the promisor or a detriment to the promisee. *See Stelmack v. Glen Alden Coal Co.,* 339 Pa. 410, 14 A.2d 127, 128 (1940). *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003) An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. *See Linnet v. Hitchcock,* 471 A.2d 537, 540 (Pa.Super.1984). *RegScan, Inc. v. Con-Way Transp. Servs., Inc.*, 875 A.2d 332, 336-37 (2005). As a general rule, **signatures** are not required unless such signing is expressly required by law or by the intent of

6

the parties." *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 62-63, 739 A.2d 133, 136 (1999) (citing *L.B. Foster Co. v. Tri–W Construction Co.,* 409 Pa. 318, 186 A.2d 18, 19 (1962); Pennsylvania Law Encyclopedia, Contracts § 29.)[5] Louisiana law is to the same effect – see cases cited in the preceding section.

Burnett also argues that "[t]here was no bargained for consideration/benefit to or by Burnett" for the ARCCA agreement. (Doc. 30-2, P. 524). Burnett's own exhibits – his affidavit and the correspondence between Burnett and ARCCA representatives (Doc. 30-4, P. 551) disprove this argument. These exhibits absolutely confirm Burnett's reading, understanding and acceptance of the entire ARCCA agreement. (Doc. 30-4, P. 547). ARCCA and Burnett reached a mutual understanding and exchanged consideration. Under Pennsylvania and Louisiana law, there was a valid contract between ARCCA and Burnett.

## III.   THE ARCCA AGREEMENT WITH THE FSC APPLIES TO THIS SUIT.

As he did in his Motion to Strike (Doc. 21-1, P. 438-49), Burnett again argues that the Agreement "is not applicable to the instant Louisiana legal proceeding." (Doc. 30-2, P. 526).

As previously briefed by ARCCA (Doc. 25, P.478-81), the Fifth Circuit has rejected identical attempts by litigants to avoid their contractual obligations under FSCs by arguing that their suits were "tort claims" not covered by the contracts at issue. *Ginter v. Belcher, Pendergrast & LaPorte,* 536 F.3d 439 (5th Cir. 2008); *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216 (5th Cir.1998). In forum-selection clauses, the phrase "arising in connection with" has been found to reach "every dispute between the parties having a significant relationship to

---

[5] As discussed in detail in Part I, FSCs in commercial contracts are presumptively valid and enforceable under Pennsylvania law.

the contract and all disputes having their origin or genesis in the contract." *Wellogix, Inc. v. SAP Am., Inc.*, 58 F.Supp.3d 766, 778 (S.D. Tex.2014) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.1999)). In *Ginter*, *supra*, the Fifth Circuit rejected the plaintiffs' argument that their legal malpractice claim was not covered by the contract they had entered with the defendant attorneys. *Id.* at 444-445.

The ARCCA agreement is even broader in scope than the language of the contract in *Ginter.* The forum selection clause in the ARCCA Agreement provides that:

> The parties agree that any dispute, controversy or claim arising under or in connection with this contract shall be decided exclusively by and in the Court of Common Pleas of Bucks County, Pennsylvania. (Doc.17-2, P. 227).

The work performed by ARRCA representatives (all defendants herein) and their dealings with Burnett were performed pursuant to the ARCCA agreement. (Doc. 17-2, Affidavit of Alan Cantor, para. 4-5, P. 223). This suit is clearly a "dispute, controversy or claim arising under or in connection with" the ARCCA agreement. Thus, under the holdings of the Fifth Circuit in *Ginter* and *Marinechase*, and in light of the broad language of the ARCCA contract, the forum selection clause clearly applies to this suit.

## IV.   CONCLUSION

In the ARRCA contract, Burnett agreed to litigate disputes in Pennsylvania in exchange for binding promises for services by the defendants. After he was sued by ARRCA in Pennsylvania for his failure to pay for the contracted services, Burnett ignored his contractual obligation and, in an attempt to forum shop, filed this suit.  In the words of the *Atlantic Marine* court, ***"[t]he interest of justice" is served by holding parties to their bargain."*** The forum

selection clause in the ARRCA agreement is valid and mandatory. This motion should be granted and this suit dismissed, without prejudice to Burnett's rights in the Pennsylvania suit.

Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN
WOODLEY, BYRD & CROMWELL, LLP
400 Texas Street, Suite 400 (71101)
P.O. Box 1786
Shreveport, LA 71166-1786
(318) 221-1800
(318) 226-0390 (fax)
darmand@padwbc.com
tcarter@padwbc.com

BY:  es/ *Donald Armand, Jr.*
          DONALD ARMAND, JR. (#17444) TA
          TREY W. CARTER (#35075)
ATTORNEYS FOR ARCCA, INCORPORATED,
MICHAEL L. MARKUSEWSI and DR. BRIAN J.
BENDA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of March, 2016, a copy of the above and foregoing Reply Memorandum was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

es/ *Donald Armand, Jr.*
DONALD ARMAND, JR.